**CHADBOURNE & PARKE LLP**
Counsel for the Petitioners
1301 Avenue of the Americas
New York, New York 10019
(212) 408-5100
Howard Seife
Andrew Rosenblatt
Eric Daucher

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
In re                                                          :
                                                               :
OAS FINANCE LIMITED                                            :    In a Case Under Chapter 15
                                                               :    of the Bankruptcy Code
                                                               :
Debtor in a Foreign Proceeding.                               :    Case No. 15-
---------------------------------------------------------------- x

## VERIFIED PETITION UNDER CHAPTER 15 OF THE BANKRUPTCY CODE FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING, AND REQUESTING A TEMPORARY RESTRAINING ORDER, A PRELIMINARY INJUNCTION, AND RELATED RELIEF

Marcus Allender Wide and Mark T. McDonald, in their capacities as joint provisional liquidators (the "Petitioners") of OAS Finance Limited (in provisional liquidation) ("OAS Finance"),[1] and as the duly authorized foreign representatives of OAS Finance, as defined in section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"), through their United States counsel, Chadbourne & Parke LLP, file this verified petition (the "Verified Petition") in furtherance of the Official Form Petition filed contemporaneously herewith, pursuant to sections 1504 and 1515 of the Bankruptcy Code, commencing a case under Chapter

---

[1] The Petitioners are also the joint provisional liquidators of OAS Investments Limited (in provisional liquidation) ("OAS Investments"). At this time, the Petitioners are not seeking recognition of a foreign main proceeding on behalf of OAS Investments.

15 of the Bankruptcy Code and seeking recognition of a foreign main proceeding, and requesting a temporary restraining order, a preliminary injunction, and related relief.  In support thereof, the Petitioners respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The Petitioners commenced this Chapter 15 case to facilitate OAS Finance's provisional liquidation proceeding (the "BVI Proceeding"), which is pending before the Eastern Caribbean Supreme Court, High Court of Justice – Commercial Division, British Virgin Islands (the "BVI Court"), prevent attachment of OAS Finance's United States assets (to the extent they exist), protect OAS Finance's rights and claims in the United States, and obtain information that will allow them to properly protect the interests of OAS Finance and its creditors and maximize value.

2.      Prior to the commencement of the BVI Proceeding, OAS Finance was (and remains) subject to bankruptcy proceedings in Brazil.  Renato Fermiano Tavares ("Tavares"), a purported foreign representative of those Brazilian proceedings, commenced Chapter 15 cases in the United States on behalf of the Brazilian Proceeding of OAS Finance and certain of its affiliates (the "Tavares Chapter 15 Cases").  Through the Tavares Chapter 15 Cases, Tavares obtained a limited provisional stay, which halted certain creditor attachment activities with respect to the assets of OAS Finance that are located in the territorial jurisdiction of the United States.

3.      On April 16, 2015, one day after the Tavares Chapter 15 Cases were commenced, and at the behest of creditors, the BVI Court issued an order (the "Provisional Liquidation Order") placing OAS Finance into provisional liquidation and appointing the Petitioners as OAS

Finance's joint provisional liquidators.[2]    In their role as OAS Finance's joint provisional liquidators, and pending the conversion of the BVI Proceeding into a full liquidation proceeding, the Petitioners' paramount responsibility is to protect OAS Finance's assets and the interests of OAS Finance's creditors, and to conduct the investigations required to identify the assets, rights, claims, and other interests that accrue to the benefit of OAS Finance's creditors.  The Petitioners' appointment automatically divested OAS Finance's directors, and Tavares whom those directors appointed, of all authority to act for, or cause actions to be taken on behalf of, OAS Finance. The Petitioners have therefore filed a notice of withdrawal of the petition in the OAS Finance Tavares Chapter 15 case, and have commenced this case in its place.  To ensure that their withdrawal of that petition does not expose OAS Finance's United States assets to further attachment risk, the Petitioners are seeking provisional relief in the form of a substantively identical stay to that imposed in the Tavares Chapter 15 Cases, extending through June 23, 2014 at 10:00 a.m.[3]

    4.    By this Chapter 15 verified petition and the form petition filed herewith (together, the "Petition"), the Petitioners seek recognition of the BVI Proceeding as a foreign main proceeding.    The Petitioners commenced this Chapter 15 case by filing the Petition contemporaneously with, and accompanied by, all certifications, statements, lists and documents required under Chapter 15 and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  As set forth below and in (i) the Declaration of Andrew Thorp, BVI legal counsel to the Petitioners, dated May 18, 2015 (the "Thorp Declaration"), and (ii) the Statement of Foreign

---

[2]    A copy of the Provisional Liquidation Order is attached hereto as Exhibit "B."

[3]    By a separate motion, which is being filed contemporaneously herewith, the Petitioners are also requesting imposition of that limited stay as a temporary restraining order until such time as the Court can hear and consider the Petitioners' request for provisional relief.

Representative as required by section 1515(c) of the Bankruptcy Code accompanying this Verified Petition:

      (a)      A foreign proceeding respecting OAS Finance was duly commenced in the British Virgin Islands (the "BVI");

      (a)      OAS Finance's registered office is located at Trident Chambers, P.O. Box 146, Road Town, Tortola, VG1110, BVI;

      (b)      OAS Finance is incorporated in the BVI;

      (c)      OAS Finance's center of main interests is in the BVI;

      (d)      OAS Finance is eligible to be a debtor under section 109(a) of the Bankruptcy Code;

      (e)      the Petitioners are duly authorized to serve as foreign representatives, as defined by section 101(24) of the Bankruptcy Code, and to petition for relief under Chapter 15 of the Bankruptcy Code; and

      (f)      the Petitioners are entitled to the relief requested.

      5.      The Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code. Moreover, the relief requested by the Petitioners is well within the scope of Chapter 15 of the Bankruptcy Code, which authorizes this Court to (i) recognize a "foreign proceeding" upon the proper commencement of a case under Chapter 15 by a "foreign representative" and (ii) grant preliminary relief, including injunctive relief, prior to recognition where urgently needed to protect the assets of the debtor or the interests of the creditors. Based on the foregoing, the facts described herein, and the arguments set forth in the memorandum of law that is being filed contemporaneously herewith, the Petitioners are entitled to an order granting recognition of the BVI Proceeding under Chapter 15 of the Bankruptcy Code, in substantially the form of the proposed Order Granting Recognition of a Foreign Main Proceeding attached hereto as Exhibit "A" (the "Proposed Recognition Order").

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157 and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (Preska, Loretta C.J.), dated January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

7.     Venue is properly located in this District pursuant to 28 U.S.C. § 1410.

## BACKGROUND

8.     For the reasons set forth below—principally the non-cooperation of OAS Finance's directors—the Petitioners currently possess significantly incomplete information regarding OAS Finance and its affairs.  They have, however, diligently reviewed publicly available information, as well as various statements by the OAS Group, OAS Finance's creditors, and other interested parties.  The statements below represent the Petitioners' current best understanding of OAS Finance's affairs, and are true and correct to the best of Petitioners' knowledge, information and belief.

## II.    The Nature of OAS Finance's Business Prior to its Provisional Liquidation

9.     OAS Finance was incorporated in the BVI on March 22, 2013 under company number 1766299.  OAS Finance's registered agent is Trident Trust Company (B.V.I.) Limited and its registered office is at Trident Chambers, P.O. Box 146 Road Town, Tortola, VG1110, BVI.  OAS Finance's sole member is OAS Investments, which is also a BVI company.

10.    OAS Finance is a member of a group of companies comprised of the Brazilian company OAS S.A. ("OAS") and its direct and indirect subsidiaries, which collectively constitute the "OAS Group."  A corporate organizational chart for the OAS Group, which reflects the structure of the OAS Group after certain restructuring transactions that took place in December 2014, is set forth below:



11.    OAS Finance is a special purpose vehicle, the sole purpose of which was to raise financing through the international capital markets to be loaned to other members of the OAS Group.  The total activities conducted by OAS Finance can thus be summarized as follows.

12.    In 2013 and 2014, OAS Finance issued two series of notes, consisting of (a) certain 8.875% perpetual notes in the aggregate principal amount of US$500 million (the "Perpetual Notes") and (b) certain 8.00% senior notes due 2021 in the aggregate principal amount of US$400 million (the "2021 Notes" and, together with the Perpetual Notes, the "BVI Notes").    All of the BVI Notes were guaranteed by OAS, OAS Investimentos S.A.

("Investimentos") and Construtora OAS S.A. ("Construtora" and, collectively with OAS and Investimentos, the "Guarantors").

13.     The net proceeds of the BVI Notes were lent by OAS Finance to OAS Investments.  As a result, OAS Finance is currently a creditor of OAS Investments.  It appears that OAS Investments' debts to OAS Finance as a result of these loans, together with any related causes of action that OAS Finance may possess, are OAS Finance's only material asset and, being accounts receivable from a BVI-domiciled entity, are located in the BVI.  At present, approximately US$943 million, including interest, is outstanding on the loan.  It further appears that OAS Finance's payment obligations under the BVI Notes, including related indenture trustee expenses, are OAS Finance's only material liability.

14.     Following receipt of the proceeds of the BVI Notes, OAS Investments lent those proceeds forward to other members of the OAS Group, including Construtora and various subsidiaries of Investimentos.[4]

15.     After the BVI Notes were issued and their net proceeds dispersed to other members of the OAS Group, it appears that OAS Finance conducted no business whatsoever.  OAS Finance has no employees.  Indeed, it appears that OAS Finance never had any employees.

## III.    Pre-Liquidation Management of the Company

16.     Prior to the appointment of the Petitioners as joint provisional liquidators for OAS Finance, OAS Finance was not managed in any meaningful sense.  As a special purpose financing vehicle, OAS Finance had no operating business, no tangible assets, no employees, and

---

[4]    Based on the most recently available figures it appears that OAS is indebted to OAS Investments in the amount of approximately US$60 million, Construtora is indebted to OAS Investments in the amount of approximately US$358 million, while certain subsidiaries of Investimentos are collectively indebted to OAS Investments for approximately US$1.207 billion.

no managers.  Indeed, prior to the Petitioners' appointment, the only contractor providing ***any***

services to OAS Finance was Trident Trust Company Ltd., OAS Finance's BVI-based registered

agent.  In essence, prior to the appointment of the Petitioners, OAS Finance was a true shell

company with no significant affairs to manage, in the BVI, Brazil or elsewhere.  The register of

directors for OAS Finance indicates that the directors of OAS Finance were, at the time of the

Petitioners' appointment: (a) Alexandre Louzada Tourinho and (b) Josedir Barreto dos Santos

(the "Directors").  A copy of the Register of Directors for OAS Finance is attached hereto as

Exhibit "C."  However, it does not appear that the Directors had ever taken any steps to manage

OAS Finance.  Moreover, as detailed below, the Petitioners' appointment on April 16, 2015

divested the Directors of all authority over OAS Finance.

IV.    **Events Leading to OAS Finance's Insolvency Proceeding**

17.    In November 2014, Brazilian prosecutors accused the OAS Group of participating

in a corrupt scheme to charge inflated fees on construction contracts involving Petróleo

Brasileiro S.A – Petrobras ("Petrobras"), Brazil's national oil company.  Following those

accusations, a number of OAS Group executives were arrested and apparently criminally

charged in connection with the alleged scheme.  Following these developments, on November

19, 2014, Standard & Poor's downgraded OAS's credit rating from "BB-" to "B+, outlook

negative."  As a result of this downgrade, certain financial creditors of the OAS Group were

apparently permitted to accelerate the principal amounts owed to them.  On November 21, 2014,

Petrobras released a list of 23 firms—including the OAS Group—that were prohibited from

competing for new contracts with Petrobras.

18.    Between December 1, 2014 and December 26, 2014, the OAS Group undertook a

series of transactions that have been alternatively described as (i) an effort "to reduce costs and . . . streamline the OAS Group's corporate structure"[5] and (ii) OAS "plunder[ing] the assets of its two most valuable subsidiaries  . . . to shield those assets from the subsidiaries' creditors."[6] Based on the limited information that they currently possess, the Petitioners have not yet been able to evaluate the propriety of the transactions.  However, it appears to be undisputed that there were, at a minimum, the following three transactions:

19.    First, on December 1, 2014, Construtora (a Guarantor of the BVI Notes) transferred certain assets, purportedly valued at R$301 million (approximately US$100 million) to OAS Engenharia e Construção S.A. ("Engenharia"), which was neither a Guarantor nor obligor with respect to the BVI Notes (the "Construtora-Engenharia Transfer").  It has been alleged that Construtora received no value in exchange for the assets it gave up through the Construtora-Engenharia Transfer.  To the best of the Petitioners' knowledge, the Construtora-Engenharia Transfer was carried out in secret, and was not disclosed to creditors until OAS published the relevant board of director minutes on January 20, 2015.

20.    Second, on December 26, 2014, Investimentos (a Guarantor of the BVI Notes) transferred its 24.4 percent equity stake (the "Invepar Shares") in Investimentos e Participações em Infraestrutura S.A. ("Invepar") to OAS Infraestrutura S.A. ("Infraestrutura"), which, like Engenharia, was neither a Guarantor nor obligor with respect to the BVI Notes (the "Invepar Share Transfer").  The OAS Group has described Invepar as "one of the largest concession

---

[5]    Verified Petition for Recognition of Brazilian Bankruptcy Proceedings and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 1515, 1517, 1520 and 1521 at ¶ 14 n.6, In re OAS S.A., No. 15-10937 (SMB) (Bankr. S.D.N.Y. Apr. 15, 2015), ECF No. 3.

[6]    Complaint and Jury Demand at ¶ 2, Huxley Capital Corp. v. OAS S.A., No. 15 CV 01637 (S.D.N.Y. Mar. 5, 2015), ECF No. 1.

companies in Brazil, comprising 12 public-service concessionaires in the toll road, urban mobility and air transportation industries" and has characterized the Invepar Shares as "one of the OAS Group's most valuable assets."  At the time of the Invepar Share Transfer, the Invepar Shares had a book value of R$1.46 billion (approximately US$487 million), although certain holders of the BVI Notes have alleged that the Invepar Shares were much more valuable.  As with the Construtora-Engenharia Transfer, to the best of the Petitioners' knowledge, the Invepar Share Transfer was carried out in secret, and not disclosed until January 7, 2015 (which, as discussed below, was apparently after payment defaults occurred with respect to certain of the BVI Notes).

21.    Third, also on December 26, 2014, Investimentos was purportedly merged into OAS (the "Investimentos-OAS Merger") (collectively with the Construtora-Engenharia Transfer and the Invepar Share Transfer, the "December 2014 Transactions").[7]  The effect of the Investimentos-OAS Merger, as the Petitioners understand it, was to effectively combine the assets and liabilities of Investimentos with the assets and liabilities of OAS.  The Petitioners understand that, prior to the Investimentos-OAS Merger, the majority of the OAS Group's creditors lacked direct claims against Investimentos.  Holders of BVI Notes, in contrast, already possessed direct claims against both Investimentos and OAS.  It thus appears that the Investimentos-OAS Merger may have substantially diluted potential recoveries to holders of the BVI Notes in the period shortly prior to the OAS Group's commencement of formal insolvency proceedings.  As with the other December 2014 Transactions, the Investimentos-OAS Merger was apparently not promptly disclosed, but was instead disclosed on January 29, 2015 after

---

[7]    The Petitioners understand that the Investimentos-OAS Merger has, as a result of a lawsuit commenced in Brazil, been provisionally suspended.

certain payment defaults had apparently already occurred with respect to certain of the BVI Notes.

22.     As noted above, the Petitioners have not yet been provided with or otherwise obtained sufficient information to determine whether the December 2014 Transactions served a legitimate purpose or whether they were improper transactions designed to frustrate holders of the BVI Notes, as certain creditors have alleged.   In this respect, the Petitioners have thus far been stymied by the failure of the Directors (or the Directors' former agents) to provide them with OAS Finance's books and records, OAS Finance's legal memoranda, or other relevant records to assist the Petitioners' investigation of the purpose of the December 2014 Transactions.

23.     Shortly after the December 2014 Transactions were completed, OAS Finance and the Guarantors apparently failed to make required payments in respect of the BVI Notes.   In particular, under the terms of the indenture governing the 2021 Notes, an interest payment in the amount of US$16 million became due and payable on January 2, 2015.   OAS Finance and the Guarantors failed to make this payment.   Thereafter, on January 26, 2015, OAS Finance and the Guarantors failed to make a scheduled interest payment in the amount of US$11,093,750 in respect of the Perpetual Notes.   The Petitioners understand that during the same period, similar payment failures began occurring across the OAS Group capital structure.   Indeed, during January 2015, the OAS Group formally announced that it would cease making payments to its financial creditors while it worked to develop a "global restructuring plan."

24.     The Petitioners understand that, following these missed payments and the expiration of applicable grace periods, certain holders of BVI Notes and the applicable indenture trustees took action to accelerate and declare immediately due and payable the full amount of principal and interest outstanding on the BVI Notes.   The Petitioners have not yet determined

whether these actions did, in fact, result in acceleration of the BVI Notes.

25.     On February 20, 2015, Brazilian prosecutors filed a complaint against OAS and Construtora, formally seeking to impose fines and a prohibition against those entities entering into contracts with the Brazilian government.

## V.      Commencement of Litigation in the United States

26.     On February 4, 2015, Aurelius Investment, LLC ("Aurelius"), which the Petitioners understand holds a substantial amount of 2021 Notes, commenced litigation (the "State Court Litigation") in the Supreme Court of the State of New York (the "State Court") by filing a verified complaint and an *ex parte* Application for Order of Attachment under Rule 62 of the New York State Civil Practice Law and Rules (the "CPLR") against OAS, OAS Finance, Construtora, and Investimentos (the "State Court Defendants").   Through the State Court Litigation, Aurelius sought, among other things, prejudgment attachment in the amount of $109,933,802.22 on account of principal and interest accrued under the 2021 Notes, including attachment of the State Court Defendants' intangible property.   On February 9, 2015, the State Court issued the requested *ex parte* order of attachment (the "Attachment Order"), pursuant to which the Sheriff of the City of New York was ordered to levy within his jurisdiction on any property of any State Court Defendant.   As a result of this order, which is now being challenged by the State Court Defendants, certain of the State Court Defendants' property has, in fact, been attached and levied.   Aurelius has filed a motion to confirm the Attachment Order, which motion remains pending.

27.     On February 18, 2015, Alden Global Adfero BPI Fund, Ltd., Alden Global Opportunities Master Fund, L.P., Alden Global Value Recovery Master Fund L.P., and Turnpike Limited (collectively, "Alden") filed a similar lawsuit against the State Court Defendants in the State Court.   The Petitioners understand that no assets have yet been attached and levied as a

result of Alden's lawsuit, which is likewise being opposed by the State Court Defendants.

28.    On March 5, 2015, Huxley Capital Corporation ("Huxley"), an affiliate of Aurelius, commenced litigation (the "Huxley Litigation") against OAS, Construtora, Investimentos, Infraestrutura and Engenharia in the United States District Court for the Southern District of New York (the "District Court").  Through the Huxley Litigation, Huxley seeks to unwind, primarily under intentional and constructive fraudulent conveyance theories, the December 2014 Transactions.  OAS Finance is not a defendant in the Huxley Litigation. However, the Huxley Litigation is relevant to OAS Finance's affairs and financial condition as the underlying December 2014 Transactions may have prejudiced OAS Finance and its creditors. Moreover, it is possible that some or all of the causes of action asserted in the Huxley Litigation should properly be asserted by the Petitioners, for the benefit of all of OAS Finance's creditors, rather than by individual creditors such as Huxley.

29.    Finally, on May 12, 2015, Aurelius filed a Petition for Turnover Order Pursuant to CPLR section 6214(d) (the "Turnover Petition").  Aurelius has asserted that the Turnover Petition was filed to prevent the expiration of the levy that it obtained through the Attachment Order.  The Turnover Petition seeks a judgment providing that, subject to satisfaction of certain conditions precedent, the State Court Defendants shall execute any document necessary to effect the payment of debts to one another and the turnover of their intangible property to the Sheriff to satisfy the amount specified in the Attachment Order.

## VI.    Commencement of Bankruptcy Proceedings in Brazil

30.    On March 31, 2015, OAS and nine other companies in the OAS Group (the "Debtors in the Brazilian Proceedings") filed an application for *recuperação judicial* (approximately a "judicial reorganization") under the laws of Brazil (the "Brazilian Proceedings") in the First Bankruptcy and Judicial Reorganization Court of São Paulo (the

"Brazilian Court").  Despite being a BVI special purpose financing vehicle with no assets to reorganize, OAS Finance was included as a debtor in the Brazilian Proceedings.

31.    On April 1, 2015, the Brazilian Court entered an order (the "April 1 Order") approving the continuation of the joint reorganization proceedings for the Debtors in the Brazilian Proceedings.  A copy of the April 1 Order, together with a certified translation from Portuguese to English, is attached hereto as Exhibit "D."  Although three of the debtors in the Brazilian Proceedings—OAS Finance, OAS Investments, and OAS Austria—are non-Brazilian companies, the Brazilian Court concluded that the Brazilian Proceedings could go forward with respect to these companies on the grounds that they "operate exclusively as instruments for acquiring resources abroad, with no operational role."  April 1 Order ¶ at 3329.  Moreover, the Brazilian Court ordered, in the equivalent of a first day bankruptcy hearing, that Debtors in the Brazilian Proceedings be treated as a single economic group.  See id.  Petitioners understand that such treatment maybe akin to substantive consolidation, which would substantially prejudice holders of the BVI Notes by, at a minimum, effectively eliminating the guarantees granted with respect to the BVI Notes.[8]

32.    Under Brazilian law, the Debtors in the Brazilian Proceedings have 60 days from the date the reorganization was admitted to file a plan of reorganization (the "Brazilian Plan"). The Debtors in the Brazilian Proceedings are required to propose a Brazilian Plan not later than May 31, 2015.  Accordingly, the Brazilian Proceedings are moving forward very rapidly.

---

[8]    Petitioners understand that certain creditors including Aurelius unsuccessfully opposed the treatment of the Debtors in the Brazilian Proceedings as a single economic unit.

**VII.    Commencement of Chapter 15 Cases Seeking
        Recognition of Brazilian Proceedings**

33.    On April 2, 2015, pursuant to separate resolutions and powers of attorney signed by representatives of the respective Debtors in the Brazilian Proceedings, Tavares was purportedly appointed as the foreign representative of the Brazilian Proceedings.  Copies of the powers of attorney and resolutions applicable to OAS Finance, together with certified translations from Portuguese to English, are attached hereto as Exhibit "E".  The Brazilian Court had no role in appointing the Purported Brazilian Representative.  Thus, Tavares's status, if any, depended solely on the delegated authority of the various boards of directors of each of the Debtors in the Brazilian Proceedings.

34.    On April 15, 2015, Tavares commenced the Tavares Chapter 15 Cases with respect to the Brazilian Proceedings of OAS, OAS Finance, OAS Austria and Construtora (the "Tavares Chapter 15 Debtors") by filing form Chapter 15 petitions, together with supporting documents, with this Court.  By order of this Court, the Tavares Chapter 15 Cases are being jointly administered under case number 15-10937 (SMB).  In addition to requesting recognition of the Brazilian Proceedings of the Tavares Chapter 15 Debtors, the Purported Foreign Representative requested, as provisional relief, the imposition of the automatic stay with respect to each of the Tavares Chapter 15 Debtors and their property within the territorial jurisdiction of the United States.

35.    Following a hearing on April 17, 2015, this Court agreed to enter a provisional stay, on more limited terms than requested by Tavares, which was initially scheduled to expire on May 1, 2015 (the "Tavares Chapter 15 Injunction").  After negotiations among the parties concerning the specific terms of the Tavares Chapter 15 Injunction, on April 30, 2015, this Court entered an agreed-upon form of order, which extended the Tavares Chapter 15 Injunction

through May 19, 2015 (the date on which recognition of the Brazilian Proceedings is scheduled to be considered).

## VIII.    The Appointment of Joint Provisional Liquidators in the BVI

36.    On April 16, 2015, following the commencement of the Tavares Chapter 15 Cases, a group of creditors of OAS Finance including Aurelius and Alden (the "Applying Creditors") filed an application with the BVI Court requesting that OAS Finance be wound up (i.e., liquidated) and that the Petitioners be immediately appointed as joint provisional liquidators for OAS Finance.  A copy of that application and its supporting papers is attached hereto as Exhibit "F".

37.    On that same day, the BVI Court held a hearing to consider the appointment of the Petitioners as joint provisional liquidators of OAS Finance.  At the conclusion of the hearing, the BVI Court entered the Provisional Liquidation, which placed OAS Finance into provisional liquidation and appointed the Petitioners as joint provisional liquidators of OAS Finance.

38.    The Provisional Liquidation Order was entered on an *ex parte* basis (as is standard with respect to provisional liquidation orders entered on the request of creditors).  Under BVI law, "with effect from the commencement of the liquidation of a company . . . (b) the directors and other officers of the company remain in office, but they cease to have any powers, functions or duties other than those required or permitted under this Part . . . ."  See Insolvency Act 2003 § 175 (the "BVI Act").  The Directors are permitted to challenge and discharge the Provisional Liquidation Order upon 48 hours' notice to both the applying creditors and the JPLs.  See Provisional Liquidation Order ¶ 7.

39.    As detailed below, the Provisional Liquidation Order has been challenged by the Directors and that proceeding remains pending.  In the meantime, the Provisional Liquidation Order has not been stayed by the BVI Court and it remains in full force and effect.

40.    Pursuant to the Provisional Liquidation Order, the JPLs "have the rights and powers of a liquidator to the extent necessary to: a. maintain the value of the assets owned or managed by [OAS Finance]; and b. to carry out the functions for which the Provisional Liquidators were appointed."  Provisional Liquidation Order ¶ 3.  These powers include, without limitation, the authority to:

a. take any appropriate step in the judicial recovery proceedings in Brazil to which the Respondent is a party and in the Chapter 15 proceedings filed in the New York bankruptcy proceedings by the Respondent on 15 April 2015 without further sanction of this Court;

b. apply for the appointment of liquidators and provisional liquidators over OAS Investments Limited without further sanction of this Court;

c. take possession of and protect the company's assets;

d. take possession of the company's books and records including the accounting and statutory records;

e. investigate the affairs of the company in so far as is necessary to protect the assets of the company;

f. investigate any transactions that may result in recovery action being made if a winding-up order is made;

g. commence action for the protection and recovery of company assets;

h. apply to the court for directions;

i. redirect email accounts and/or have such accounts closed;

j. continue to operate or close or redirect company internet sites;

k. have the discretion to retain, pay or dismiss employees;

l. be at liberty to complete or terminate any contracts or transactions entered into by the company;

m. engage any solicitors, other agents and specialists as may be necessary to assist him in the carrying out of his duties; and

n. retain and operate the existing bank accounts of the company and where necessary open new bank accounts,

to the exclusion of the powers of the directors of the Company. Such powers may be exercised jointly and/or severally.

Provisional Liquidation Order ¶¶ 4(a)-(n).  Following a hearing before the BVI Court on May 6, 2015, and in response to objections from the Directors, the BVI Court, without formally amending the Order, directed that the JPLs not take action under subparagraphs 4(i), 4(j) and 4(k) of the Provisional Liquidation Order as being redundant, which the JPLs gave an oral undertaking not to do.  The BVI Court further required that the JPLs seek sanction from the BVI Court before exercising their authority under subparagraph 4(l) of the Provisional Liquidation Order to which the JPLs also gave an oral undertaking not to do without formally amending the Order.  In all other respects the Provisional Liquidation Order remains in full force and effect.

41.    The filing of a Chapter 15 case by the Petitioners for OAS Finance would be considered an action for the protection of OAS Finance's assets within the meaning of subparagraph 4(g) of the Provisional Liquidation Order.  See Provisional Liquidation Order ¶ 4(g); Thorp Declaration ¶ 17.  However, the power to commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the company is contained in paragraph 4 of Schedule 2 to the BVI Act and paragraph 5 of the Provisional Liquidation Order provides that the Petitioners may not exercise any of the powers set out in paragraphs 1 to 4 of Schedule 2 of the BVI Act, except as provided for in paragraphs 4(a) and 4(b) of the Provisional Liquidation Order, without the sanction of the BVI Court.  See Thorp Declaration ¶ 17.  Accordingly, on May 15, 2015, the Petitioners filed with the BVI Court an application for sanction to commence this Chapter 15 case seeking recognition of the BVI Proceeding.  The BVI Court orally granted sanction on May 15, 2015, and issued a written order to that effect on May 18, 2015 (the "Chapter 15 Sanction Order").  See id.  A copy of the Chapter 15 Sanction Order is attached hereto as Exhibit "G."

IX.    **Key Developments in the Provisional Liquidation**

42.    Since their appointment as the joint provisional liquidators of OAS Finance, the Petitioners have been active in the BVI, Brazil and the United States to ensure that the interests of OAS Finance and its creditors are fully protected through the BVI Proceeding.

A.    **Actions in the BVI**

43.    Both of the Petitioners are based in the BVI full time.  Since the Petitioners' appointment on April 16, 2015, all decisions regarding OAS Finance have been made by the Petitioners in the BVI.  This has included numerous meetings in the BVI between the Petitioners to formulate strategy and determine the actions that are necessary to implement that agreed upon strategy.

44.    Moreover, since their appointment, the Petitioners have taken a number of concrete steps to protect OAS Finance's assets by centralizing in the BVI all administration of OAS Finance.

45.    First, on April 16, 2015, the Petitioners contacted the BVI registered agent for OAS Finance and obtained registers of the current and former directors of OAS Finance.  With the information obtained from OAS Finance's registered agent in the BVI, the Petitioners also caused the Directors (as well as OAS Finance's former directors) to be served with notice of the Petitioners' appointment and the suspension of the Directors' powers.  The Petitioners also requested that any of OAS Finance's books and records in the possession of the Directors or OAS Finance's former directors be turned over to the Petitioners.  These books and records have not been provided.  The Petitioners were, however, able to determine that OAS Finance may have held a bank account with Itau BBA Nassau.  On April 22, 2015, the Petitioners sent a letter to Itau BBA Nassau asserting their control over any funds in the account and requesting a current statement for the account.  A copy of that letter is attached hereto as Exhibit "H."

46.     Second, the Petitioners retained BVI, United States and Brazilian counsel to ensure that OAS Finance's interests—and the now central role of the BVI Proceeding—are fully protected in all relevant jurisdictions.   With the assistance of their Brazilian counsel, the Petitioners have worked expeditiously to identify and terminate all outstanding powers of attorney issued on behalf of OAS Finance.   The Petitioners now believe that they have terminated every such power of attorney.   Copies of all such terminations are attached hereto as Exhibit "I."   As a result of these actions, no individual or entity outside of the BVI, except for those attorneys retained by the Petitioners themselves, have any remaining authority to act on behalf of OAS Finance.   Consequently, there can be no argument that OAS Finance's affairs are currently being administered anywhere except in the BVI.

47.     Third, the Petitioners took steps to ensure that Tavares understood that he no longer possessed authority to act on behalf of OAS Finance.   In particular, on April 16, 2015, the Petitioners sent a letter to John K. Cunningham of White & Case, LLP, United States counsel to Tavares, informing Mr. Cunningham that: (a) entry of the Provisional Liquidation Orders divested the Directors and Tavares of all authority to act, or authorize action, on behalf of OAS Finance; (b) such authority vested exclusively with the Petitioners; and (c) consequently, Tavares and his counsel were prohibited from taking any further steps in either the Brazilian Proceedings or the Tavares Chapter 15 Cases.   A copy of that letter is attached hereto as Exhibit "J."   White & Case LLP was further instructed to immediately inform this Court of the appointment of the Petitioners, which it did.

48.     On May 12, 2015, the Petitioners sent a letter to Tavares again informing him that he lacked authority to take any action on behalf of OAS Finance and instructing him to inform this Court that he lacked authorization to seek recognition of the Brazilian Proceedings with

respect to OAS Finance.  A copy of that letter is attached hereto as Exhibit "K."

49.     On May 15, 2015, the Petitioners issued a formal termination of Tavares's power of attorney.  A copy of that termination is attached hereto as Exhibit "L."

50.     Fourth, the Petitioners have worked to ensure that all creditors of OAS Finance understand that OAS Finance's affairs are being administered by the Petitioners in the BVI.  The Petitioners contacted Deutsche Bank Americas, as indenture trustee for the BVI Notes (the "Indenture Trustee"), and informed it of the Petitioners' appointment.  Moreover, since the Petitioners developed an understanding of OAS Finance's major stakeholders, the Petitioners, either directly or through their respective counsel, have been in frequent contact with all active creditor constituencies of OAS Finance.  These constituencies have included, without limitation, the remainder of the OAS Group, the Indenture Trustee, Aurelius, a group of holders of BVI Notes represented by Morgan, Lewis & Bockius LLP, and various individual noteholders.

51.     In addition, the Petitioners have transmitted notices of their appointment and the resulting administration of OAS Finance's affairs in the BVI to the Indenture Trustee, with instructions to forward that notice to the Depository Trust Company ("DTC"), Clearstream and Euroclear, which are in the process of distributing those notices to individual holders of BVI Notes, in accordance with their customary procedures.  Copies of those notices are attached hereto as Exhibit "M."

52.     In further efforts to apprise creditors of the BVI Proceeding and the resulting administration of OAS Finance's affairs in the BVI, the Petitioners have established a website at http://www.oasbvi.com containing information concerning the BVI Proceeding and directing any creditor inquiries to the Petitioners in the BVI.

53.     Moreover, the Petitioners are in the process of soliciting expressions of interest

from holders of BVI Notes to participate in an *ad hoc* committee of noteholders for the purpose

of providing the Petitioners with broad-based creditor perspectives as to how the assets of OAS

Finance can best be protected.

54.    As a result of the Petitioners outreach efforts, creditors can readily ascertain that

OAS Finance's affairs are being managed from the BVI.

55.    Fifth, the Petitioners have already submitted two written reports concerning OAS

Finance's affairs to the BVI Court.   On April 30, 2015, the Petitioners submitted their first

*Report of the Joint Provisional Liquidators* to the BVI Court, which, among other things,

described the steps taken by the Petitioners since their appointment as joint provisional

liquidators and their preliminary findings regarding the financial condition of OAS Finance (the

"First Report").  A copy of the First Report is attached hereto as Exhibit "N."  On May 12, 2015,

the Petitioners submitted their *Second Report of the Joint Provisional Liquidators* to the BVI

Court, which provided updated information concerning the Petitioners' activities, (the "Second

Report").  A copy of the Second Report is attached hereto as Exhibit "O."  As disclosed in the

First Report and the Second Report, because of a lack of cooperation from the OAS Group, the

Directors and Tavares, the Petitioners have thus far been able to obtain only very limited

additional information regarding OAS Finance's affairs.  The Petitioners believe that obtaining

Chapter 15 recognition for the BVI Proceeding, and the resulting discovery powers, will assist

them in obtaining information necessary to make fully informed decisions as to how best to

protect the assets of OAS Finance and the interests of OAS Finance's creditors.

56.    Finally, the Petitioners have taken other customary steps for a foreign

representative, such as establishing a bank account in the BVI in the name of OAS Finance to

facilitate the payment of case professionals, analyzing potential claims that OAS Finance may

possess, and considering the potential tax implication of OAS Finance's liquidation.

**B.**     **Actions in Brazil in Furtherance of the BVI Proceeding**

57.     As noted above, through their Brazilian counsel, the Petitioners submitted a request to the Directors (and OAS Finance's former directors) that such Directors and former directors provide the Petitioners with OAS Finance's books and records.  They also notified the Directors of the suspension of their powers.  To date, none of the Directors or former directors have complied with the request for OAS Finance's books and records or responded to the notice of the suspension of their powers.

58.     As described above, the Brazilian Proceedings currently contemplate the that the Debtors in the Brazilian Proceedings will be treated as treated as a single economic group, which appears likely to substantially prejudice OAS Finance, as well as holders of the BVI Notes. Consequently, on April 28, 2015, the Petitioners caused their Brazilian counsel to file an application with the Brazilian court to have OAS Finance excluded from the Brazilian Proceeding and to instead allow OAS Finance to participate in the Brazilian Proceedings purely as creditors (the "Exclusion Motion").  A copy of the Exclusion Motion, together with a certified translation from Portuguese to English, is attached hereto as Exhibit "P."  In the Exclusion Motion, the Petitioners submitted that OAS Finance does not fit within the definition of a company eligible for restructuring in Brazil it is a funding entity without any active business, employees or hard assets.

59.     In addition, the Petitioners concluded that OAS Finance was wrongfully excluded from the list of creditors in the Brazilian Proceedings, as published in Brazil's *Official Gazette* on April 17, 2015.  Consequently, the Petitioners caused their Brazilian counsel to timely file an objection to the list of creditors.

C.    **Actions in the United States in furtherance of the BVI Proceeding**

60.    As noted above, the Petitioners were appointed on the eve of the first hearing in the Tavares Chapter 15 Cases.  Nevertheless, the Petitioners were able to promptly retain United States counsel to appear during the April 17, 2015 hearing.  During that hearing, the Petitioners informed this Court of their appointment.  The Petitioners likewise informed this Court that their appointment divested the Directors and Tavares (whom the Directors appointed) of all authority to act for, or cause actions to be taken on behalf of, OAS Finance.  The Petitioners also provided the Court with a copy of the Provisional Liquidation Order.

61.    Following the April 17, 2015 hearing, the Petitioners and their U.S. counsel have been in frequent communication with the stakeholders in the Tavares Chapter 15 Cases (including Tavares, through his U.S counsel, and various creditor constituencies).  The focus of these discussions, from the Petitioners' perspective, has been to achieve a result that respects the BVI Proceeding while simultaneously maintaining the limited stay that is currently in place with respect to any U.S. assets that OAS Finance may possess.

62.    In furtherance of these objectives and in light of the Provisional Liquidation Order and the Exclusion Motion, the Petitioners could not permit any further action to be taken in furtherance of the Brazilian Proceeding of OAS Finance.  Ultimately, on May 15, 2015, the Petitioners filed their *Notice of Withdrawal of Petition Commencing OAS Finance Limited Chapter 15 Case and Objection to Recognition of Foreign Proceeding* [D.E. 57] (Bankr. S.D.N.Y. Apr. 17, 2015).

X.    **Challenge to the BVI Proceeding and Current Status**

63.    On April 24, 2015, the Directors filed applications with the BVI Court requesting that the Provisional Liquidation Order be rescinded or modified and that the appointment of the Petitioners as joint provisional liquidators likewise be rescinded or modified (the "<u>Liquidation</u>

Termination Application"). The notice of the Liquidation Termination Application specified that the grounds for the application would be set out in witness statements and other materials to be submitted to the BVI Court in advance of a hearing, which was scheduled for 2:00 p.m. on April 29, 2015. However, the Directors failed to submit any evidence or other materials in support of their applications. The Directors ultimately informed the BVI Court that they would not submit any materials in support of the Liquidation Termination Application, but would instead rely solely on the materials that were submitted to the BVI Court by the Applying Creditors in advance of the initial April 16, 2015 hearing at which the Provisional Liquidation Order was entered.

64. During the April 29, 2015 hearing, the respective BVI counsel for the Petitioners and the Applying Creditors requested that the Liquidation Termination Application be rejected as an abuse of process, or, in the alternative, that the hearing in respect of the Liquidation Termination Application be adjourned, on the basis that the Directors had failed to timely identify the grounds on which the applications should be granted. The BVI Court declined to summarily reject the Liquidation Termination Application or adjourn the hearing and instead heard argument from the Directors' counsel. At the conclusion of the April 29, 2015 hearing the BVI Court scheduled a further hearing for May 6, 2015.

65. During the May 6, 2015 hearing, the BVI Court heard responsive argument primarily from counsel for the Applying Creditors. At the conclusion of that hearing, as noted above, the BVI Court curtailed the Petitioners' authority in certain very limited respects, but otherwise reserved judgment.

66. Further to the May 6, 2015 hearing, the Directors, the Applying Creditors and the Petitioners exchanged additional submissions on May 11 and May 15, 2015.

67.     Petitioners understand that the BVI Court is likely to continue to reserve judgment in respect of the Liquidation Termination Application until such time as a hearing is held regarding the conversion of the BVI Proceeding to a full liquidation proceeding.  That hearing is currently scheduled for May 26, 2015.  However, if a multiday hearing is required, as has been suggested by counsel for the Directors, the hearing may be delayed until October 2015 or later.

## XI.     Connections to the United States

68.     OAS Finance does not have a domicile, residence or place of business in the United States.  However, OAS Finance has property in the United States in the form of funds held in a client trust account with White & Case LLP in New York County, New York.  Additionally, the Petitioners on behalf of OAS Finance have sent by wire transfer funds to an OAS Finance escrow account with Chadbourne & Parke LLP in New York.  Finally, OAS Finance may possess additional property in the United States in the form of intangible property, such as claims and causes of action.

## STATUTORY BASIS FOR RELIEF REQUESTED

69.     The statutory predicates for the relief requested herein are sections 105(a), 1507, 1515, 1517, 1519 and 1520 of the Bankruptcy Code.

70.     Chapter 15 of the Bankruptcy Code was specifically designed to assist foreign representatives such as the Petitioners in the performance of their duties.  One of the primary objectives of Chapter 15 is the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a)(3).

71.     The Verified Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code.  Moreover, the relief requested herein is necessary and is appropriate under Chapter 15 of the Bankruptcy Code.  Granting recognition to the BVI Proceeding and the

relief requested is consistent with the goals of international cooperation and assistance to foreign courts which is embodied in Chapter 15 of the Bankruptcy Code.

72.     The relief sought herein is well within the scope of Chapter 15 and the criteria for recognition under Chapter 15 are satisfied under the facts of this case.  Relief under Chapter 15 of the Bankruptcy Code is necessary to ensure that OAS Finance's assets, rights, and claims are protected and that OAS Finance can ultimately be wound up in an orderly manner that maximizes the value that can be distributed to all of its creditors under the auspices of the BVI Court in the BVI Proceeding.

## **RELIEF REQUESTED**

73.     The Petitioners, as the foreign representatives of OAS Finance, seek entry of the Proposed Order granting the following relief:

     (a)     recognition of the BVI Proceeding as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code;

     (b)     all relief afforded a foreign main proceeding automatically upon recognition pursuant to section 1520 of the Bankruptcy Code;

     (c)     a temporary restraining order and, after notice and a hearing, a preliminary injunction prohibiting further attachment of OAS Finance's assets in the United States, on the same terms as this Court has already approved in connection with the Tavares Chapter 15 Cases, to run through June 23, 2015; and

     (d)     such other and further relief as this Court may deem just and proper.

74.     The Petitioners believe that the BVI Proceeding, with the assistance of this Court, offers the best means of protecting OAS Finance's assets and ultimately liquidating OAS Finance to achieve a global, equitable resolution of OAS Finance's liabilities.  Seeking recognition of the BVI Proceeding as a foreign main proceeding under Chapter 15 is critical to achieving this goal for several reasons.

75.     First, the Petitioners are tasked with taking possession of and protecting the assets

of OAS Finance.  In particular, protecting OAS Finance's assets will require the Petitioners to continue to staunchly defend OAS Finance's rights in the Brazilian Proceedings.  To date, these efforts have been negatively affected by the Petitioners' relative lack of information, and the Directors consistent refusal to provide OAS Finance's books and records as required by the Provisional Liquidation Order.  The discovery powers that will be available to the Petitioners through this Chapter 15 case will correct this lack of information.  Second, if and when the Petitioners determine that recovery actions should be brought in the United States for the benefit of OAS Finance and its creditors, Chapter 15 recognition of the BVI Proceeding will ensure that the Petitioners have access to United States courts pursuant to section 1509(b) of the Bankruptcy Code.  Finally, Chapter 15 relief will enjoin any actions against OAS Finance or any assets (including potentially attachable intangible assets) that it may have in the United States.  If such actions are not stayed, the orderly liquidation of OAS Finance may be jeopardized and the Petitioners may be forced to expend resources unnecessarily to defend actions brought in the United States.  Based on the foregoing, the Petitioners concluded that relief under Chapter 15 is appropriate and necessary to achieve the goals of the BVI Proceeding and therefore commenced this case.

76.    Moreover, the Petitioners are mindful that their decision to withdraw the Tavares Chapter 15 Case of OAS Finance, if not seamlessly matched with entry of provisional relief in connection with the BVI Proceeding, could leave OAS Finance's assets exposed to attachment (which attachment actions, as described in Section V above, are already well underway).  Indeed, it was precisely this exposure that lead this Court to previously grant the Tavares Chapter 15 Injunction.  The underlying circumstances that justified the entry of the Tavares Chapter 15 Injunction continue to exist today, thus warranting the granting of provisional relief matching the

substantive terms of the Tavares Chapter 15 Injunction, and extending through June 23, 2015.

## NOTICE

77.     Pursuant to section 1517(c) of the Bankruptcy Code, a petition for recognition shall be decided at the "earliest possible time."   By Application for Order Limiting Notice, Scheduling Hearing, and Specifying the Form and Manner of Service of Notice, which is being filed contemporaneously herewith, the Petitioners have requested, among other things, that this Court set the date for the hearing (the "Recognition Hearing") on recognition and relief at the earliest possible time after June 23, 2015.

78.     As soon as the Recognition Hearing is scheduled, the Petitioners will cause a copy of the Notice of Filing of Petitions Under Chapter 15 of the United States Bankruptcy Code and Order Scheduling Hearing to Consider Chapter 15 Petitions (the "Notice," and together with the Petition, the "Service Documents") to be sent by first-class mail to (i) the relevant indenture trustees with instructions to forward the Service Documents on behalf of the Petitioners to DTC and to instruct DTC to disseminate the Service Documents to the holders of the BVI Notes according to DTC's customary practices and (ii) on other known creditors and parties in interest located in the United States.[9]  By such notice, all United States parties in interest will be advised of the commencement of the Chapter 15 case, the relief requested by this Verified Petition, the central documents filed with the Court respecting the Chapter 15 cases, as well as the date, place and time of the Recognition Hearing and the date, time and manner for lodging a response or motion respecting this Verified Petition, in accordance with the Bankruptcy Rules and the Local Rules of Bankruptcy Procedure.   The Service Documents shall be sent so as to provide United

---

[9]    Copies of all pleadings will be provided upon request to the Petitioners' counsel.

States parties in interest at least 21 days' notice by mail prior to the Recognition Hearing, as required by Bankruptcy Rule 2002(q).  The Petitioners also shall cause such notice to be published expeditiously in <u>The Wall Street Journal</u> (national edition).

## **CONCLUSION**

WHEREFORE, the Petitioners respectfully requests that this Court: (a) enter a temporary restraining order in substantially the form requested in the motion for temporary restraining order being filed contemporaneously herewith; (b) enter an order in substantially the form of the Proposed Provisional Relief Order; (c) enter an order in substantially the form of the Proposed Recognition Order; and (d) grant the Petitioners such other and further relief as may be just and proper.

Dated:   New York, New York
          May 18, 2015

**CHADBOURNE & PARKE LLP**

By:   <u>*/s/ Andrew Rosenblatt*</u>
       Howard Seife
       Andrew Rosenblatt
       Eric Daucher
       1301 Avenue of the Americas
       New York, New York 10019
       (212) 408-5100

       *Counsel for the Petitioners*

**CHADBOURNE & PARKE LLP**
Counsel for Petitioners
1301 Avenue of the Americas
New York, New York 10019
(212) 408-5215
Howard Seife
Andrew Rosenblatt
Eric Daucher

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------ x
In re                                          :
                                               :
OAS FINANCE LIMITED                            :   In a Case Under Chapter 15
                                               :   of the Bankruptcy Code
                                               :
Debtor in a Foreign Proceeding.                :   Case No. 15-
------------------------------------------------------------ x
```

I, Marcus Allender Wide, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

I am the duly appointed foreign representative of OAS Finance Limited.

I have the full authority to verify this Petition.

I have read the foregoing petition, and I am informed and believe that the factual allegations contained therein are true and accurate.

I hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury under the laws of the United States of America that the information set forth above is, to the best of my knowledge, information and belief, true and correct.

Executed this <u>18</u> day of May, 2015
in <u>Road Town, Tortola, British Virgin Islands</u>


<u>/s/ Marcus Allender Wide</u>
Marcus Allender Wide, Joint Provisional
Liquidator of OAS Finance Limited