**CHADBOURNE & PARKE LLP**
Counsel for the Petitioners
1301 Avenue of the Americas
New York, New York 10019
(212) 408-5100
Howard Seife
Andrew Rosenblatt
Eric Daucher

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
In re                                                            :
                                                                 :
OAS FINANCE LIMITED                                              :    In a Case Under Chapter 15
                                                                 :    of the Bankruptcy Code
                                                                 :
Debtor in a Foreign Proceeding.                                  :    Case No. 15-11304 (SMB)
---------------------------------------------------------------- x

### MEMORANDUM OF LAW IN SUPPORT OF VERIFIED PETITION UNDER CHAPTER 15 OF THE BANKRUPTCY CODE FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING, AND FOR RELATED PROVISIONAL RELIEF

Marcus Allender Wide and Mark T. McDonald, in their capacities as the joint provisional

liquidators (the "Petitioners") of OAS Finance Limited (in provisional liquidation) ("OAS

Finance")[1] and as duly authorized foreign representatives as defined in section 101(24) of title 11

of the United States Code (the "Bankruptcy Code"), through their United States counsel,

Chadbourne & Parke LLP, respectfully submit this Memorandum of Law in support of the

Official Form Petition filed under Chapter 15 of the Bankruptcy Code and the accompanying

Verified Petition pursuant to Chapter 15 of the Bankruptcy Code (together, the "Petition"). The

---

[1]   All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in
      the Verified Petition Under Chapter 15 of the Bankruptcy Code for Recognition of a Foreign Main
      Proceeding, and Requesting a Temporary Restraining Order, a Preliminary Injunction, and Related
      Relief filed contemporaneously herewith in the above-captioned case (the "Verified Petition").

Petitioners seek recognition of the BVI Proceeding (as defined below) as a foreign main proceeding and seek related provisional relief.

## PRELIMINARY STATEMENT

1.      The Petitioners commenced this Chapter 15 case to facilitate OAS Finance's provisional liquidation proceeding (the "BVI Proceeding"), which is pending before the Eastern Caribbean Supreme Court, High Court of Justice – Commercial Division, British Virgin Islands (the "BVI Court"), prevent attachment of OAS Finance's United States assets (to the extent they exist), protect OAS Finance's rights and claims in the United States, and obtain information that will allow them to properly protect the interests of OAS Finance and its creditors and maximize value.

2.      In their role as OAS Finance's joint provisional liquidators, and pending the conversion of the BVI Proceeding into a full liquidation proceeding, the Petitioners' paramount responsibility is to protect OAS Finance's assets and the interests of OAS Finance's creditors, and to conduct the investigations required to identify the assets, rights, claims, and other interests that accrue to the benefit of OAS Finance's creditors.  Since their appointment as joint provisional liquidators, the Petitioners have been actively taking actions in the BVI, Brazil and the United States to ensure that the interests of OAS Finance and its creditors are fully protected.

3.      By the Verified Petition, the Petitioners seek (i) recognition of the BVI Proceeding as a foreign main proceeding, and (ii) provisional relief in the form of a temporary restraining order and, upon notice and a hearing, a preliminary injunction effective through recognition of the BVI Proceeding.[2]

---

[2]      By separate motion, which is being filed contemporaneously herewith, the Petitioners detail the factual and legal basis for granting such provisional relief.

4.      The Verified Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code, and the relief requested therein is well within the scope of Chapter 15 of the Bankruptcy Code, which authorizes this Court to (i) recognize a foreign proceeding upon the proper commencement of a case under Chapter 15 by a foreign representative and (ii) grant assistance in the United States to such foreign representative in connection with such foreign proceeding.

5.      Granting recognition to the BVI Proceeding and the relief requested is consistent with the goals of international cooperation and assistance to foreign courts, embodied in Chapter 15.  Chapter 15 protection will (i) make available to the Petitioners certain discovery powers that will assist the Petitioners in obtaining OAS Finance's books and records, which the Directors have so far refused to provide; (ii) ensure that the Petitioners have access to United States courts pursuant to section 1509(b) of the Bankruptcy Code; and (iii)  enjoin any actions against OAS Finance or any assets (including potentially attachable intangible assets) that it may have in the United States.

6.      Based on the foregoing and the reasons described herein, the Petitioners are entitled to an order granting recognition to the BVI Proceeding as a foreign main proceeding under Chapter 15 of the Bankruptcy Code.

## FACTS

7.      The Court is respectfully referred to the Verified Petition, which contains the relevant facts, all of which are incorporated herein by reference.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the "Amended Standing Order of Reference" of the United States District Court for the

Southern District of New York (Preska, Loretta C.J.), dated January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

9.    Venue is properly located in this District pursuant to 28 U.S.C. § 1410.

## ARGUMENT

I.    **OAS Finance is Eligible to be a Debtor
      under Section 109(a) of the Bankruptcy Code**

10.    OAS Finance is eligible to be a debtor under section 109(a) of the Bankruptcy Code because it possesses property in the United States.  In this Circuit, an entity must be eligible to be a debtor under section 109(a) before its foreign proceeding can be granted recognition under Chapter 15.  See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet), 737 F.3d 238, 247 (2d Cir. 2013).  Section 109(a) states, in relevant part, that "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor under this title."  11 U.S.C. § 109(a).  If a debtor has any property in the United States, section 109(a) is satisfied.  See In re Octaviar Administration Pty Ltd., 511 B.R. 361, 373 (Bankr. S.D.N.Y. 2014).  OAS Finance satisfies section 109(a)'s requirements because it has property in the United States in the form of funds held in a client trust account with White & Case LLP in New York County, New York.  See Verified Petition ¶ 68.    Additionally, the Petitioners on behalf of OAS Finance have sent by wire transfer funds to an OAS Finance escrow account with Chadbourne & Parke LLP in New York.  See id.  Finally, OAS Finance may possess additional property in the United States in the form of intangible property, consisting of claims and causes of action.  See id.  Accordingly, OAS Finance is eligible to be a debtor under Chapter 15.  See In re Octaviar Administration Pty Ltd., 511 B.R. at 373-74 (noting that funds held in a retainer account satisfy section 109(a)); see also 11 U.S.C. § 1502(8).

4

II.   **This Case is Proper under Chapter 15**

11.   Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks assistance in the United States in connection with a foreign proceeding.   See 11 U.S.C. § 1501(b)(l).   This Chapter 15 case was commenced for the purpose of obtaining the assistance of this Court to ensure the assets of OAS Finance and the interests of its creditors are protected pending the effective and economical liquidation of OAS Finance through the BVI Proceeding.

A.   The BVI Proceeding is a Foreign Proceeding

12.   A provisional liquidation proceeding under BVI law is a foreign proceeding entitled to recognition under Chapter 15 of the Bankruptcy Code.   A foreign proceeding has seven elements: "(i) [the existence of] a proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is in a foreign country; (v) that is authorized or conducted under a law related to insolvency or the adjustment of debts; (vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (vii) which proceeding is for the purpose of reorganization or liquidation."   Armada (Singapore) Pte Ltd. v. Shah (In re Ashapura Minechem Ltd.), 480 B.R. 129, 136 (S.D.N.Y. 2012) (quoting In re Betcorp Ltd., 400 B.R. 266, 277 (Bankr. D. Nev. 2009)); see also In re ABC Learning Centres Ltd., 445 B.R. 318 (Bankr. D. Del. 2010), aff'd, RCS Capital Development LLC v. ABC Learning Centres Ltd. (In re ABC Learning Centres Ltd.), No. 11-245-RGA (D. Del. June 18, 2012), aff'd 728 F.3d 301 (3d Cir. 2013) (identifying the same seven elements)); see also 11 U.S.C. § 101(23).

13.   The BVI Proceeding meets each of these requirements and therefore qualifies as a

foreign proceeding.[3]  Indeed, this court has explicitly held that "BVI Liquidation Proceedings are foreign proceedings under section 101(23) of the Code, as they are 'collective judicial or administrative proceeding[s] in a foreign country . . . under a law relating to insolvency . . . in which . . . the assets and affairs of the debtor are subject to control or supervision by a foreign court for the purpose of . . . liquidation.'"  In re Fairfield Sentry Ltd., 440 B.R. 60, 63 (Bankr. S.D.N.Y. 2010) (quoting 11 U.S.C. § 101(23)), aff'd, Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.), 714 F.3d 127 (2d Cir. 2013); see also Order Granting Recognition of a Foreign Main Proceeding and Related Relief, In re Pioneer Freight Futures Co. Ltd., No. 13-12324 (JMP) (Bankr. S.D.N.Y. Apr. 23, 2013), ECF No. 14.

        (i)        *The BVI Proceeding is a "Proceeding"*

14.    "[T]he hallmark of a 'proceeding' is a statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets."  In re Betcorp Ltd., 400 B.R. at 278.  The BVI Proceeding operates under just such a statutory framework.  As described in the Thorp Declaration, the BVI Proceeding is governed by the Insolvency Act 2003 (the "BVI Act").  See Thorp Declaration ¶ 19.  The BVI Act is "the governing law of a corporate insolvency in the BVI."  Id. ¶ 19.  The BVI Act establishes a comprehensive framework that determines how OAS Finance's assets will ultimately be distributed to its creditors.  See id. at ¶¶ 19-22.  Because the BVI Proceeding is operating under the framework created by the BVI Act, it is a "proceeding."

---

[3]    The BVI Proceeding is a provisional liquidation proceeding that is awaiting conversion to a full liquidation proceeding.  The definition of foreign proceeding specifically embraces such an "interim proceeding."  11 U.S.C.§ 101(23) ("The term 'foreign proceeding' means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding . . . .").

*(ii)       The BVI Proceeding is Both Judicial and Administrative in Character*

15.       A proceeding need not be both administrative and judicial in character to be a foreign proceeding—either is sufficient.  See 11 U.S.C. § 101(23).  In this case, however, the BVI Proceeding is both judicial and administrative in character.  A proceeding is administrative in character where it is directed by a party other than the court and judicial in character whenever a "Court exercises its supervisory powers."  In re ABC Learning Centres Ltd., 458 B.R. at 328; see also In re Betcorp Ltd., 400 B.R. at 280-81.

16.       Here, the BVI Proceeding has an administrative character because the Petitioners have broad authority to administer OAS Finance's affairs.  See Thorp Declaration ¶¶ 14-15, 22; Provisional Liquidation Order ¶ 4.  However, the BVI Proceeding is also judicial in character because the Petitioners are officers of the BVI Court and the Petitioners' authority is subject to the BVI Court's supervisory jurisdiction and direction.  See Thorp Declaration ¶¶ 14-15, 17-18. Indeed, BVI law and the Provisional Liquidation Order under which the Petitioners are operating specifically require the Petitioners to obtain sanction from the BVI Court before taking certain action with respect to OAS Finance.  See Thorp Declaration ¶¶ 14-15, 17-18; Provisional Liquidation Order ¶ 5.  Accordingly, the BVI Proceeding is both administrative and judicial in character.

*(iii)      The BVI Proceeding is Collective in Nature*

17.       "A proceeding is collective in nature pursuant to 11 U.S.C. § 101(23) if it 'considers the rights and obligations of all creditors.'"  In re Ashapura Minechem Ltd., No. 11-14668, 2011 WL 5855475, at *3 (Bankr. S.D.N.Y. Nov. 22, 2011), aff'd, 480 B.R. 129 (S.D.N.Y. 2012) (quoting In re Betcorp Ltd., 400 B.R. at 281); see also In re ABC Learning Centres Ltd., 445 B.R at 328 (same).  "The 'collective proceeding' requirement is intended to limit access to Chapter 15 to proceedings which benefit creditors generally and to exclude

7

proceedings which are for the benefit of a single creditor."   8 Collier on Bankruptcy ¶¶ 1501.03[1], [7] (16th ed. Rev. 2013).   "The BVI Proceedings are not for the benefit of any single creditor; rather they operate to resolve and determine the rights of all claimants and stakeholders, i.e., the creditor body as a whole, vis-à-vis OAS Finance." Thorp Declaration ¶ 20 (citing BVI Act § 207).   Indeed, "[a]ny person or entity with a claim . . . against OAS Finance may assert such claim in the BVI Proceeding once it is converted to a full liquidation." Id.   The BVI Proceeding is therefore collective in nature.

(iv)    <i>The BVI Proceeding is Located in a Foreign Country</i>

18.    Virtually all events relevant to the BVI Proceeding have occurred in the BVI—a foreign country.   First, the BVI Proceeding was commenced in the BVI by a group of creditors of OAS Finance filing an application with the BVI Court requesting that OAS Finance be wound up (i.e., liquidated) and that the Petitioners be immediately appointed as joint provisional liquidators for OAS Finance.   See Verified Petition ¶ 36.   That same day, the BVI Court—which is located in the BVI—held a hearing and then placed OAS Finance into provisional liquidation and appointed the Petitioners as OAS Finance's joint provisional liquidators in the BVI.   See id. ¶ 37.   Since the appointment of the Petitioners, the BVI Court has continued to administer the BVI proceeding in the BVI by, among other things, holding a number of hearings  with respect to the BVI Proceeding.   See id. ¶ 63-65.

(v)    <i>The BVI Proceeding is Operating under a Law<br>Relating to Insolvency or the Adjustment of Debt</i>

19.    The BVI Proceeding is operating under the BVI Act.   See Thorp Declaration ¶ 19. The BVI Act governs virtually all aspects of BVI corporate insolvencies and establishes the framework for the principal types of insolvency proceedings available to corporations under BVI law, including arrangements with creditors, administrations, receiverships and liquidations

8

(including provisional liquidations).  See id.  Accordingly, the BVI Act is a law relating to insolvency or the adjustment of debt.

> *(vi)    The BVI Proceeding Subjects OAS Finance's Assets
> and Affairs to a Foreign Court's Control or Supervision*

20.    The BVI Proceeding subjects OAS Finance's assets and affairs to a foreign court's control or supervision.  Upon their appointment as OAS Finance's joint provisional liquidators, the Petitioners were granted the power to, among other things, take possession of and protect OAS Finance's assets, take possession of OAS Finance's books and records, and commence actions for the protection and recovery of OAS Finance's assets.  See Provisional Liquidation Order ¶¶ 4(c), 4(d), 4(g); see also Thorp Declaration at ¶ 14, 22.  However, the Petitioners' right to exercise certain of these powers was conditioned on further sanction (i.e., review and approval) by the BVI Court.  See Provisional Liquidation Order ¶ 5.  Thus, while the Petitioners have broad discretion in managing OAS Finance's assets and affairs, they are ultimately subject to the BVI Court's close supervision and control.  See Thorp Declaration ¶¶ 14-15, 17-18.  Accordingly, the BVI Proceeding subjects OAS Finance's assets and affairs to the control of a foreign court—the BVI Court.

> *(vii)    The BVI Proceeding is for the Purpose of Liquidation*

21.    The BVI Proceeding is for the purpose of liquidation.  The BVI Proceeding is a provisional "liquidation" of OAS Finance, which, as the name suggests, ultimately involves liquidating OAS Finance and distributing its assets ratably to creditors.  See Thorp Declaration at ¶¶ 19-20.  Accordingly, the BVI Proceeding is for the purpose of liquidation.

22.    Because the BVI Proceeding satisfies all seven elements of a "foreign proceeding" as set forth in section 101(23) of the Bankruptcy Code, it is a foreign proceeding entitled to recognition under Chapter 15.

9

B.    This Case Was Commenced by OAS Finance's Foreign Representatives

23.    This Chapter 15 case was commenced by the Petitioners, who are duly appointed and authorized "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code.  That section provides as follows:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).  Given that a foreign proceeding must be for the purpose of "reorganization or liquidation," it is axiomatic that persons appointed specifically to liquidate a company are regularly recognized as foreign representatives.[4]  Provisional liquidators are likewise regularly recognized.  See, e.g., In re Suntech Power Holdings Co., Ltd., 520 B.R. 399 (Bankr. S.D.N.Y. 2014) ("Suntech").

24.    On April 16, 2015, the Petitioners were appointed as the joint provisional liquidators of OAS Finance pursuant to the Provisional Liquidation Order.  See Provisional Liquidation Order ¶ 1.  As a matter of BVI law, and as specifically set forth in the Provisional Liquidation Order, this appointment gave the Petitioners significant authority to administer the liquidation of OAS Finance's affairs through the BVI Proceeding.  See Provisional Liquidation Order; Thorp Declaration ¶¶ 14-16, 22.  Consequently, immediately upon their appointment, the Petitioners qualified as foreign representatives of the BVI Proceeding.

---

[4]    See, e.g., In re SPhinX, Ltd., 351 B.R. 103 (Bankr. S.D.N.Y. 2006), aff'd, Krys v. Official Comm. of Unsecured Creditors of Refco Inc. (In re SPhinX, Ltd.), 371 B.R. 10 (S.D.N.Y. 2007) (recognizing joint liquidators in a voluntary winding-up under Cayman Island law as foreign representatives); In re Britannia Bulk PLC, No. 08-14543 (Bankr. S.D.N.Y. December 10, 2008), ECF No. 11 (recognizing liquidators who were appointed pursuant to the laws of England and Wales, and who were originally appointed as administrators, as foreign representatives).

25.     Moreover, out of an abundance of caution, on May 15, 2015, the Petitioners filed with the BVI Court an application for sanction to commence this Chapter 15 case seeking recognition of the BVI Proceeding.  On May 15, 2015, the BVI Court orally granted sanction and, on May 18, 2015, issued the written Chapter 15 Sanction Order.  The Chapter 15 Sanction Order specifically provides the Petitioners with authority "to file a Petition for Chapter 15 recognition in the United States Bankruptcy Court, Southern District of New York and take appropriate steps in connection therewith including but not limited to the filing of an application for a temporary restraining order."  Chapter 15 Sanction Order.  Accordingly, the Petitioners are duly authorized to act as the foreign representatives of OAS Finance and were entitled to commence this Chapter 15 case.

### III.     This Chapter 15 Case was Properly Commenced

26.     This Chapter 15 case was duly and properly commenced as required by sections 1504 and 1509 of the Bankruptcy Code by filing the Petition, accompanied by all documents and information required by Bankruptcy Code sections 1515(b) and 1515(c).  See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), aff'd, 389 B.R. 325 (S.D.N.Y. 2008) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code.").

### IV.     The BVI Proceeding is a Foreign Main Proceeding

27.     The BVI Proceeding is a "foreign main proceeding."  A foreign proceeding must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has its center of main interests ("COMI").  See 11 U.S.C. § 1517(b)(l).  OAS Finance's COMI is located in the BVI, where the BVI Proceeding is occurring.  Accordingly, the BVI Proceeding must be recognized as a foreign main proceeding.

11

A.    OAS Finance's COMI is Presumptively in the BVI

28.    A company's COMI is presumed to be wherever the company's registered office is located.  See 11 U.S.C. § 1516(c); see also In re Fairfield Sentry Ltd., 714 F.3d at 133 (finding that the Bankruptcy Code establishes a presumption that the COMI is at the debtor's registered office); Suntech, 520 B.R. at 416.  Here, OAS Finance's registered office is located in the BVI.  See Verified Petition at ¶¶ 4(b); 9.  Accordingly, OAS Finance's COMI is presumed to be in the BVI.  There is no reason for the Court to reject that presumption in this case.

B.    No Evidence Demonstrates that OAS Finance's COMI was Ever Outside the BVI

29.    The location of a foreign debtor's COMI must be "ascertainable by third parties." In re Fairfield Sentry Ltd., 714 F.3d at 137.  Several factors are relevant to this analysis, including "the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes."  Id.  In this case, none of the factors cited by the Second Circuit would allow third parties to ascertain a non-BVI COMI for OAS Finance.

30.    OAS Finance is a special purpose vehicle, the sole purpose of which was to raise financing through the international capital markets to be loaned to other members of the OAS Group.  See Verified Petition ¶ 11.  The BVI Notes issued by OAS Finance—which are OAS Finance's only significant liability—are governed by New York law and were sold to creditors throughout the world.  See id. ¶ 12.  The proceeds of the BVI Notes were loaned to OAS Investments, another BVI entity.  See id. ¶ 13.  The receivable created as result of the loan is OAS Finance's only significant asset, see id., and is located, as a matter of law, in the BVI.  See In re Bd. of Dirs. Hopewell Int'l Ins. Ltd., 238 B.R. 25, 48 (Bankr. S.D.N.Y. 1999) ("The

location of intangible personal property interests such as accounts receivable is the situs of the account debtor or the party whose obligation it is to perform under the contract.").

31.    After the BVI Notes were issued and their net proceeds dispersed to OAS Investments (and ultimately on to other members of the OAS Group), it appears that OAS Finance conducted no business whatsoever.  See Verified Petition ¶ 15.  OAS Finance has no employees.  See id.  Indeed, it appears that OAS Finance never had any employees.  See id.

32.    Nor was OAS Finance "managed" outside the BVI.  See Verified Petition ¶ 16. As a special purpose financing vehicle, OAS Finance had no operating business, no tangible assets, no employees, and no managers.  See id.  Indeed, prior to the Petitioners' appointment, the only contractor providing *any* services to OAS Finance was Trident Trust Company Ltd., OAS Finance's BVI-based registered agent.  See id.  In essence, prior to the appointment of the Petitioners, OAS Finance was a true shell company with no significant affairs to manage, in the BVI, Brazil or elsewhere.  See id..

33.    OAS Finance did have directors located in Brazil.  See Verified Petition ¶ 16. However, the Second Circuit has rejected the contention that the location of a foreign company's directors is dispositive as to COMI.  See In re Fairfield Sentry Ltd., 714 F.3d at 137.  Moreover, it does not appear that the Directors ever took any steps to manage OAS Finance (from Brazil or anywhere else).  See Verified Petition ¶ 16.  However, the idea that the location of a financing vehicle's directors would allow third parties to ascertain that company's COMI is without merit. That is particularly true where, as here, a third party could only ascertain with any certainty the identities and location of the Brazilian directors of OAS Finance by consulting OAS Finance's official register of directors, which was held in the BVI by Trident Trust Company Ltd., a BVI entity.  In short, there is no evidence to rebut the presumption that OAS Finance's COMI is in

the BVI.

      C.     The Petitioners' Liquidation Activities
           Confirm That OAS Finance's COMI Remains in the BVI

34.     A "debtor's COMI should be determined based on its activities at or around the time the Chapter 15 petition is filed, as the statutory text suggests." In re Fairfield Sentry Ltd., 714 F.3d at 137; see also Suntech, 520 B.R. at 416 (citing In re Fairfield Sentry Ltd., 714 F.3d at 137) (COMI location to be determined as of Chapter 15 petition date). A "court may also look at the time period between the initiation of the foreign liquidation proceeding and the filing of the Chapter 15 petition." Suntech, 520 B.R. at 416 (quoting In re Fairfield Sentry Ltd., 714 F.3d at 137). Moreover, "liquidation activities and administrative functions, may be considered in the COMI analysis." In re Fairfield Sentry Ltd., 714 F.3d at 137; see also Suntech, 520 B.R. at 416 (citing In re Fairfield Sentry Ltd., 714 F.3d at 137) ("COMI analysis permits consideration of any relevant activities, including liquidation activities and administrative functions."). Here, as of the date on which this case was commenced, all of OAS Finance's activities were directed and controlled from the BVI by the Petitioners. See Verified Petition ¶¶ 3, 16, 40, 42-62; Provisional Liquidation Order ¶¶ 1-4; Thorp Declaration ¶ 31.

35.     This Court's recent decision in Suntech is particularly instructive and strongly supports a finding that OAS Finance's COMI is located in the BVI. See Suntech, 520 B.R. 399. In Suntech, this Court determined that a company's COMI could be found to be located in an offshore jurisdiction—even where the company had conducted no activity in that jurisdiction prior to the commencement of insolvency proceedings—based solely on the activities of provisional liquidators between the time of their appointment and the commencement of a chapter 15 case. See id.

36.     Suntech Power Holdings Co. Ltd. ("Suntech Power"), the debtor in the Suntech

14

Case, was the Cayman Islands-incorporated parent company of a multi-national group of corporations involved in the solar energy business. See Suntech 520 B.R. at 413. Similar to the facts of this case, Suntech Power's principal liability was a series of notes governed by New York law. See id. at 405. Suntech Power maintained its principal executive offices in Wuxi, China, and managed its global business from that location. See id. at 416. Despite being incorporated in the Cayman Island, neither Suntech Power nor any of its subsidiaries or affiliates conducted any business in the jurisdiction. See id. at 404. Nevertheless, when Suntech Power became embroiled in litigation (including litigation in the United States) and it became necessary to restructure its debts, Suntech Power commenced provisional liquidation proceedings in the Cayman Islands rather than attempting to restructure in China (where it was indisputably managed from) or the United States (where its principal debt was issued). See id. at 406.

37.     Little over three months later, Suntech Power's joint provisional liquidators sought recognition in the United States of the Cayman Island provisional liquidation proceeding as a foreign main proceeding. See id. at 410. This Court determined that, as of the time the provisional liquidation proceedings were commenced, Suntech Power's COMI was not in the Cayman Islands. See Suntech, 520 B.R. at 416.

38.     However, this did not prevent the court from ultimately recognizing the Cayman Islands foreign proceeding as a foreign main proceeding. As the court noted, the test is the location of the company's COMI *at the time of the commencement of the chapter 15 case,* not when the foreign proceeding is filed. See id. The court noted that the Cayman Islands provisional liquidation had shifted the duties and responsibilities for running Suntech Power's business from management (based in China) to the provisional liquidators (based in the Cayman Islands). The order appointing the joint provisional liquidators authorized them to take

possession of Suntech Power's property and take all actions on behalf of Suntech Power. See id. at 417  Moreover, the provisional liquidators took steps to centralize the administration of the foreign proceeding in the Cayman Islands, including changing the company's address, transferring corporate records, opening a bank account and even appointing a Cayman Island-based director and holding a board meeting in the Cayman Islands. See id. at 418. They also had various company records for Suntech sent to them in the Cayman Islands. See id. Ultimately, the Court concluded that the combination of the provisional liquidator's appointment order and their subsequent actions to centralize Suntech Power's affairs in the Cayman Islands shifted the company's COMI to the Cayman Islands and justified recognition of the Cayman Islands provisional liquidation as a foreign main proceeding. See id. at 417-20.

39.     Here, the Petitioners' appointment as joint provisional liquidators for OAS Finance and their activities in the period leading up to, and at the time of, the commencement of this Chapter 15 case makes clear that the OAS Finance's COMI has remained in the BVI.

            (i)     OAS Finance's Nerve Center is in the BVI

40.     First, OAS Finance's "nerve center" now exists and is in the BVI. Upon the appointment of the Petitioners as OAS Finance's joint provisional liquidators, the Directors ceased to have any authority to manage. See Verified Petition ¶ 40 (quoting Provisional Liquidation Order ¶ 4); Thorp Declaration ¶¶ 31-32. All decisions regarding OAS Finance have been made by the Petitioners in the BVI. See id. This has involved numerous meetings in the BVI between the Petitioners to formulate strategy and determine the actions that are necessary to implement that agreed upon strategy on behalf of OAS Finance and for the benefit of its creditors. See id.

41.     This complete removal of power from the (already inactive) Directors and transfer of that power to the active, BVI-based Petitioners eliminates any doubt that OAS Finance's

16

COMI is in the BVI.  Indeed, the facts of this case are significantly more compelling than those of Suntech where, even after Cayman Islands joint provisional liquidators were appointed, daily management of Suntech Power remained with the company's board in China, subject to the joint provisional liquidators' supervision and control.  See Suntech, 520 B.R. at 417.

       *(ii)     OAS Finance's Liquidation Activities are Administered from the BVI*

42.     Since their appointment, the Petitioners have done everything reasonably possible to assert their control of OAS Finance's affairs and centralize control of the company in the BVI.  As set forth in greater detail in paragraphs 42-62 of the Verified Petition, these activities have included:

- Promptly informing the Directors of the suspension of their powers (Verified Petition ¶ 45);

- Requesting OAS Finance's books and records (Verified Petition ¶ 45);

- Identifying OAS Finance's bank account and asserting control over it (Verified Petition ¶ 45);

- Retaining counsel in the BVI, the United States and Brazil to protect and advance OAS Finance's interests (Verified Petition ¶ 46);

- Terminating outstanding powers of attorney, including of the Directors (Verified Petition ¶ 46);

- Informing Tavares that he was divested of authority, instructing him to refrain from further action on behalf of OAS Finance, and formally terminating his power of attorney (Verified Petition ¶¶ 47-49);

- Informing OAS Finance's creditors of their appointment, and consulting with all of OAS Finance's significant stakeholders (Verified Petition ¶¶ 50-51);

- Establishing a website (http://www.oasbvi.com) to provide information to creditors regarding OAS Finance and the BVI Proceeding (Verified Petition ¶ 52);

- Soliciting expressions of interest in participating in a BVI-based *ad hoc* creditor committee for OAS Finance (Verified Petition ¶ 53);

- Investigating the affairs of OAS Finance and submitting two separate reports regarding those investigations to the BVI Court (Verified Petition ¶ 55);

- Establishing a bank account in the name of OAS Finance in the BVI (Verified Petition ¶ 56);

- Investigating potential claims OAS Finance may possess (Verified Petition ¶ 56);

- Investigating the tax implications of the BVI Proceeding (Verified Petition ¶ 56);

- Instructing Brazilian counsel to file an application to effectively remove OAS Finance as a debtor in the Brazilian Proceeding and instead allow OAS Finance to participate as a creditor (Verified Petition ¶ 57);

- Instructing Brazilian counsel to object to the list of creditors filed in the Brazilian Proceedings, which improperly failed to treat OAS Finance as a creditor (Verified Petition ¶ 59); and

- Participating in the Tavares Chapter 15 Cases and ultimately filing a notice of withdrawal of the petition commencing the Tavares Chapter 15 Case pertaining to OAS Finance (Verified Petition ¶¶ 60-62)

(iii)    *Creditor Expectations Show that OAS Finance's COMI is in the BVI*

43.    Finally, recognizing the BVI as OAS Finance's COMI is proper in light of creditors' expectations at the time this Chapter 15 case was filed.  As discussed in more detail in the Verified Petition, creditors of OAS Finance were the ones that applied for the commencement of the BVI Proceeding, notwithstanding that OAS had already filed applications for OAS Finance's liabilities to be addressed in the Brazilian Proceedings.  The Applying Creditors' applications for the provisional liquidation of OAS Finance in the BVI, as opposed to Brazil, demonstrates that the BVI is the jurisdiction that is "ascertainable by third parties" as OAS Finance's COMI.  See Bear Stearns, 374 B.R. at 130.  Because the evidence establishes that OAS Finance's COMI is located in the BVI, the BVI Proceeding should be recognized as a foreign main proceeding.

## V.    The Requested Relief Relating to Recognition Should be Granted

44.    An order recognizing a foreign proceeding shall be entered if all of the requirements for recognition have been met.  See 11 U.S.C. § 1517.  As set forth above: (i) the

18

BVI Proceeding is a foreign main proceeding; (ii) the Petitioners are OAS Finance's foreign representatives; and (iii) the Petition satisfies the requirements of section 1515 of the Bankruptcy Code.   Therefore, this Court should enter an order recognizing the BVI Proceeding as a foreign main proceeding.   The legislative history to Chapter 15 provides that:

> The decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code. The requirements of [section 1517], which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition.

H.R. Rep. 109-31, pt. 1 (2005).   Thus, recognition under sections 1517(a) and (b) of the Bankruptcy Code is mandatory where, as here, a Chapter 15 petition meets the statutory requirements.

45.   Moreover, recognition of the BVI Proceedings as foreign proceedings would not be inconsistent with section 1506 of the Bankruptcy Code.   That section provides that nothing in Chapter 15 shall prevent the Court from refusing to take an action otherwise required by Chapter 15 if such action would be manifestly contrary to the public policy of the United States.[5] See 11 U.S.C. § 1506.

46.   One of the fundamental goals of the Bankruptcy Code is the centralization of disputes involving the debtor.   See, e.g., Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code 'provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy

---

[5]   "[Section 1506] follows the Model Law article 5 exactly, is standard in UNCITRAL texts, and has been *narrowly interpreted on a consistent basis in courts around the world*.   The word 'manifestly' in international usage restricts the public policy exception to *the most fundamental policies of the United States*."   In re Fairfield Sentry Ltd., 714 F.3d at 139 (quoting H.R. Rep. 109-31 pt. 1 (2005)) (emphasis and alteration in original).

Court . . . .'"").  Indeed, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction." Cornfeld v. Investors Overseas Servs., Ltd., 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (recognizing that a Canadian liquidation proceeding would not violate the laws or public policy of New York or the United States).  The BVI Proceeding (once confirmed as a full liquidation), like a case under chapter 7 of the Bankruptcy Code, will provide a centralized process to (i) assert and resolve claims against an estate and (ii) make distributions to creditors.  See Thorp Declaration at ¶20.  Recognizing the BVI Proceeding and staying the already pending litigation against OAS Finance (see Verified Petition ¶¶ 26-29) as well as any additional potential actions against OAS Finance in the United States would assist in the centralization of disputes in a single jurisdiction.[6]  That result is demonstrably consistent with the public policy of the United States.  See Cornfeld, 471 F. Supp. at 1259.

47.    Further, recognition of the BVI Proceeding would be consistent with the purpose of Chapter 15 and its predicate, the UNCITRAL Model Law on Cross-Border Insolvency. Section 1501 of the Bankruptcy Code provides, in pertinent part that:

> The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of -

---

[6]    The fact that OAS Finance is currently also identified as a debtor in the Brazilian Proceedings does not change this analysis.  The Petitioners are trying to arrange the orderly liquidation of OAS Finance in the BVI Proceeding, and have applied for OAS Finance to be treated as a creditor, rather than a debtor, in the Brazilian Proceeding.  See Verified Petition ¶ 58.  Absent entry of the requested relief in this case, the Petitioners will be forced to engage in litigation in the United States as well, making an already complex situation even more so.

(1)    cooperation between -

* * *

(B)    the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;

* * *

(3)    fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;

(4)    protection and maximization of the value of the debtor's assets.

11 U.S.C. § 1501.

48.    Granting recognition to the BVI Proceeding and granting OAS Finance and the Petitioners the relief provided upon recognition of a foreign main proceeding pursuant to section 1520 of the Bankruptcy Code is consistent with, and critical to effectuate, the objectives of Chapter 15 for multiple reasons.  First, the Petitioners are tasked with taking possession of and protecting the assets of OAS Finance.  In particular, protecting OAS Finance's assets will require the Petitioners to continue to staunchly defend OAS Finance's rights in the Brazilian Proceedings.  To date, these efforts have been negatively affected by the Petitioners' relative lack of information, and the Directors consistent refusal to provide OAS Finance's books and records as required by the Provisional Liquidation Order.  The discovery powers that will be available to the Petitioners through this Chapter 15 case will correct this lack of information.

49.    Second, if and when the Petitioners determine that recovery actions should be brought in the United States for the benefit of OAS Finance and its creditors, Chapter 15 recognition of the BVI Proceeding will ensure that the Petitioners have access to United States courts pursuant to section 1509(b) of the Bankruptcy Code.

50.    Finally, Chapter 15 relief will enjoin any actions against OAS Finance or any

assets (including potentially attachable intangible assets) that it may have in the United States.  If such actions are not stayed, the orderly liquidation of OAS Finance may be jeopardized and the Petitioners may be forced to expend resources unnecessarily to defend actions brought in the United States.  Based on the foregoing, the Petitioners concluded that relief under Chapter 15 is appropriate and necessary to achieve the goals of the BVI Proceeding and therefore commenced this case.

## CONCLUSION

For the foregoing reasons, the Petitioners respectfully request that this Court grant the relief requested.

Dated:   New York, New York
         May 18, 2015

**CHADBOURNE & PARKE LLP**

By:   _/s/ Andrew Rosenblatt_
      Howard Seife
      Andrew Rosenblatt
      Eric Daucher
      1301 Avenue of the Americas
      New York, New York 10019
      (212) 408-5100

      _Counsel for the Petitioners_