<table>
<tr><td>

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Gregory M. Starner
Mark P. Franke

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
John K. Cunningham
Richard S. Kebrdle (*pro hac vice* pending)

</td><td>

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Susheel Kirpalani
Michael Carlinsky
Benjamin Finestone

</td></tr>
</table>

*Attorneys for OAS S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Case No. 15-11304 (SMB) |
| OAS FINANCE LIMITED (in provisional | ) | |
| liquidation) | ) | |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | Chapter 15 |
| | ) | |

1

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 5

BACKGROUND ...................................................................................................... 7

   I.   OAS FINANCE AND THE OAS GROUP ..................................................... 7

   II.   CENTER OF MAIN INTERESTS ................................................................. 8

   III.  THE NOTES ISSUED BY OAS FINANCE .................................................. 11

   IV.  EVENTS PRECIPITATING COMMENCEMENT OF THE BRAZILIAN
   BANKRUPTCY PROCEEDINGS ..................................................................... 12

   V.   CREDITOR ACTIONS AGAINST OAS FINANCE AND THE OAS GROUP .......... 13

   VI.  DEBTOR-INITIATED BANKRUPTCY PROCEEDINGS ............................... 17

   VII. CREDITOR-INITIATED BANKRUPTCY PROCEEDINGS ....................... 20

   VIII. ATTEMPTS BY THE JPLS TO DISRUPT THE RESTRUCTURING OF THE OAS
   GROUP ......................................................................................................... 25

OBJECTION ........................................................................................................... 35

   I. THE JPL CHAPTER 15 PETITION SHOULD BE DENIED BECAUSE IT IS PREMISED
   UPON AURELIUS AND ALDEN'S ATTEMPTS TO MANIPULATE THE COMI OF OAS
   FINANCE ..................................................................................................... .35

   III.THE JPL PETITION VIOLATES THE STATED PURPOSE OF CHAPTER 15 ........... 50

CONCLUSION ........................................................................................................ 55

2

# TABLE OF AUTHORITIES

## CASES

Alden Global Adfero BPI Fund, Ltd., et al. v. OAS Finance Ltd., et al., Index No. 650480/2015 (Sup. Ct. NY Cnty. filed Feb. 18, 2015) ....................................................................15, 16, 51

Aurelius Investment, LLC v. OAS Finance, et al., Index No. 650312/2015 (Sup. Ct. NY Cnty. filed Feb. 4, 2015) ....................................................................................................14, 51

Bondi v. Bank of Am., N.A. (In re Eurofood IFSC Ltd.), Case 341/04, 2006 WL 1142304 ..........37

Collins v. Oilsands Quest Inc., 484 B.R. 593 (S.D.N.Y. 2012)........................................................37

Huxley Capital Corp. v. OAS S.A., et al., Case No. 15-cv-01637 (GHW) (S.D.N.Y. filed Mar. 5, 2015) ...................................................................................................................................16, 17

In re Basis Yield, 381 B.R. 37 (Bankr. S.D.N.Y. 2008)...................................................................38

In re Bear Stearns High Grade Structured Credit Strategies Master Fund. Ltd., 389 B.R. 325 (Bankr. S.D.N.Y. 2008) ..........................................................................................................38

In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122 (Bankr. S.D.N.Y. 2007) ..........................................................................................................36

In re Daewoo Logistics Corp., 461 B.R. 175 (Bankr. S.D.N.Y. 2011) ............................................50

In re OAS S.A., et al., No. 15-10937 (SMB) (Bankr. S.D.N.Y. May 4, 2015) ................................18

In re Oversight & Control Comm'n of Avanzit, S.A., 385 B.R. 525 (Bankr. S.D.N.Y. 2008)........51

In re Raytech Corp., 222 B.R. 19 (Bankr. D. Conn. 1998)..............................................................53

In re SPhinX Ltd., 351 B.R. 103 (Bankr. S.D.N.Y. 2006), aff'd., 371 B.R. 10 (S.D.N.Y. 2007)....38

In re Stanford Int'l Bank Ltd., [2010] EWCA (Civ) 137, [53]-[56] (Eng.).....................................37

In re Suntech, Case No. 14-10383 (SMB) ........................................................................................45

In re Suntech Power Co., Ltd., 520 B.R. 399 (Bankr. S.D.N.Y. 2014) ..................................... passim

In re Tri-Cont'l Exch. Ltd., 349 B.R. 627 (Bankr. E.D. Cal. 2006) .................................................37

Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.), 714 F.3d 127 (2d Cir. 2013) ....37

Phoenix Four Inc. v. Strategic Res. Corp., 446 F. Supp. 2d 205 (S.D.N.Y. 2006)......................... 38

Americas 9352028

## STATUTES AND RULES

11 U.S.C. § 1501 ................................................................................................5, 40, 50

11 U.S.C. § 1502 ................................................................................................18

11 U.S.C. § 1508 ................................................................................................39

11 U.S.C. § 1515 ................................................................................................4

11 U.S.C. § 1516 ................................................................................................7

11 U.S.C. § 1517 ................................................................................................35

11 U.S.C. § 1519 ................................................................................................18, 22

Americas 9352028

## THE OAS GROUP'S OBJECTION TO PETITION FOR RECOGNITION

OAS S.A. ("OAS" and, collectively with its subsidiaries, the "OAS Group"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the petition for recognition [Docket No. 2] (the "JPL Petition") in the above-captioned chapter 15 case (the "JPL Chapter 15 Case") filed by joint provisional liquidators Marcus Allender Wide and Mark T. McDonald (the "JPLs") with respect to the provisional liquidation proceeding (the "BVI Provisional Liquidation") of OAS Finance Limited ("OAS Finance") proceeding in the British Virgin Islands (the "BVI") before the Eastern Caribbean Supreme Court, High Court of Justice – Commercial Division, British Virgin Islands (the "BVI Court"). In support of this Objection, OAS respectfully submits as follows:

### PRELIMINARY STATEMENT

1.      As set forth in section 1501 of title 11 of the United States Code (the "Bankruptcy Code"):

> The purpose of [chapter 15] is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of (1) cooperation between [U.S. and foreign courts]; (2) greater legal certainty for trade and investment; (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor; (4) protection and maximization of the value of the debtor's assets; and (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501.

2.      The BVI Provisional Liquidation is the antithesis to the above-stated purposes and goals of chapter 15. It represents a brazen collateral attack on the pending reorganization proceedings of the OAS Group (including OAS Finance) in Brazil (the "Brazilian

5

Bankruptcy Proceedings") by two noteholders of OAS Finance—Aurelius and Alden. The

Brazilian Bankruptcy Proceedings represent the true foreign main proceeding of OAS Finance,

entitled to all of the protections of chapter 15 consistent with Congress's stated purposes above.

    3.  The Second Circuit and this Court have warned of possible manipulation

of a foreign debtor's "center of main interests" (or "COMI") as an obvious abuse of chapter

15. Here, the record is replete with evidence of COMI manipulation in connection with the filing

and prosecution of the BVI Provisional Liquidation:

- On February 3, 2015, Aurelius issued a notice of acceleration against OAS Finance;

- In February and March 2015, Aurelius and Alden commenced attachment and other enforcement proceedings in state and federal court in New York against OAS Finance and other OAS Group entities;

- On March 31, 2015, the OAS Group (including OAS Finance) commenced the Brazilian Bankruptcy Proceedings by filing voluntary petitions to reorganize—not liquidate—the businesses of the OAS Group under the protections of Brazilian bankruptcy law;

- Within days after commencement of the Brazilian Bankruptcy Proceedings, Aurelius and Alden conspired with the JPLs to orchestrate and fund liquidation proceedings to be commenced involuntarily by Aurelius and Alden against OAS Finance;

- On April 15, 2015, Renato Tavares ("Mr. Tavares"), as the foreign representative of OAS Finance and three other OAS Group debtors (OAS S.A., Construtora OAS S.A., and OAS Investments GmbH) filed chapter 15 petitions (the "Brazilian Debtors Chapter 15 Petitions") with this Court for recognition of the Brazilian Bankruptcy Proceedings with respect to such entities, thereby commencing their chapter 15 cases (the "Brazilian Debtors Chapter 15 Cases");

- One day later, on April 16, 2015, Aurelius and Alden commenced the BVI Provision Liquidation for OAS Finance in the BVI ███████ to torpedo the pending chapter 15 petition for recognition of the Brazilian Bankruptcy Proceedings with respect to OAS Finance (the "OAS Finance Chapter 15 Petition") and to undermine the Brazilian Bankruptcy Proceedings for the OAS Group.

Americas 93520028

4.      As set forth fully below, there can be no better set of facts and circumstances to find COMI manipulation by Aurelius and Alden and to deny recognition of the BVI Liquidation Proceedings.  Although the presumptive COMI of OAS Finance is BVI by virtue of its registered office being located there (see 11 USC § 1516(c)), the actual COMI of OAS Finance is Brazil.  There is no dispute that OAS Finance is an offshore special purpose financing vehicle for the OAS Group.  Its sole purpose was to issue notes to fund the OAS Group's operations.  At the time of the filing of the Brazilian Debtors Chapter 15 Cases with this Court on April 15, 2015, it was reorganizing in Brazil and seeking to restructure the notes in the Brazilian Bankruptcy Proceedings.  Those reorganization efforts and proceedings continue in Brazil, notwithstanding the subsequent commencement by Aurelius and Alden of the BVI Provisional Liquidation for OAS Finance.

5.      In sum, COMI for OAS Finance is Brazil—not the BVI—and the JPLS' petition for recognition of the BVI Liquidation Proceeding should be denied.

## BACKGROUND

### I.      OAS Finance and the OAS Group

6.      The OAS Group, which includes OAS Finance, comprises one of Brazil's largest engineering and construction companies, with projects and equity investments located in and outside Brazil for both public and private clients.  See Offering Memorandum for the 2021 Notes at 5-7, attached hereto as Exhibit "A"; see also Offering Memorandum for the Perpetual Notes, attached hereto as Exhibit "B."  It employs, directly or indirectly, over 100,000 people across a range of services such as public concessions, construction, engineering, planning, execution and works management for the transportation, power, sanitation, infrastructure and real estate industries, providing services in 22 countries in Latin America, the Caribbean and Africa.  See Offering Memorandum for the 2021 Notes at 107.  Its principal operating activities

7

Americas 9352028

are organized into two major divisions: *engineering*, which engages in heavy civil engineering and construction projects, and *investments*, which is focused on private investments in infrastructure and public and private services concessions.  Id. at 5-7.

       7.      OAS Finance is a wholly owned subsidiary of OAS Investments Limited (a BVI entity) and, as admitted by the JPLs, functions strictly as a special-purpose financing vehicle for the OAS Group.  JPL Petition at ¶16.  OAS Investments Limited is wholly owned by OAS.  JPL Petition at ¶ 10.  OAS Finance is incorporated in the BVI and maintains its registered office at Trident Trust Company (B.V.I.) Limited, Trident Chambers, P.O. Box 146, Road Town, Tortola, British Virgin Islands.  JPL Petition at ¶ 9.

## II.    Center of Main Interests

       8.      From its inception, OAS Finance operated solely as a vehicle for raising funds in the international capital markets for the OAS Group.  ▮▮▮▮▮ ▮▮▮▮▮, OAS Finance is an indirectly wholly owned subsidiary of OAS S.A. ▮▮▮ ▮▮▮▮▮.  Accordingly, it is operationally and functionally centered at the OAS Group's headquarters in São Paulo, Brazil.  ▮▮▮▮▮

8



9

Americas 9352028

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

████████████████

      11.     Notwithstanding recent attempts by the JPLs to relocate OAS Finance's

COMI to the BVI, OAS Finance remains a shell subsidiary of the OAS Group with its COMI

located alongside those of its OAS Group affiliates in São Paulo, Brazil. ████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

████████████████

      12.     Under BVI law, OAS Finance is merely in <u>provisional</u> liquidation, with no

final "winding-up" order, upon which statutory liquidation commences, entered by the BVI

Court.  Lowe Decl. ¶ 31. ████████████████████████████████████

███████████████████████████████████████████████

10



13.    As described further below, the OAS Directors have been and continue to be engaged in a vigorous defense of OAS Finance against the manipulative, disruptive and value-destroying actions of the JPLs. The OAS Directors, who maintain residuary authority over OAS Finance to challenge the appointment of the JPLs, Lowe Decl. ¶ 31, continue to reside in Brazil, and to prosecute all reorganization efforts and coordinate their defense of OAS Finance from the OAS Group's headquarters in São Paulo, Brazil.

### III.    The Notes Issued by OAS Finance

14.    OAS Finance's narrow function in the OAS Group was confined to the issuance and servicing of two series of notes governed by New York law (together, the "Notes"). JPL Petition at ¶¶ 11-12. Specifically, OAS Finance issued (i) certain 8.875% perpetual notes (the "Perpetual Notes") in the aggregate principal amount of US$500,000,000 and (ii) certain 8.00% senior notes due in 2021 (the "2021 Notes") in the aggregate principal amount of US$400,000,000. Id. at ¶ 12. Both series of Notes were guaranteed by OAS Group entities Construtora OAS S.A. ("Construtora OAS") and OAS.[1] See generally 2021 Indenture; Perpetuals Indenture. The Notes are general, unsecured obligations of OAS Finance and each of the guarantees rank pari passu with other unsecured obligations of the guarantors. See generally

---

[1]    The Notes were originally also guaranteed by OAS Investimentos S.A. To reduce costs and in an effort to streamline the OAS Group's corporate structure, OAS Investimentos S.A. was merged into OAS on December 26, 2014 (the "Merger"). On March 5, 2015, Aurelius and Alden (each as defined below) filed an action in Brazil seeking annulment of the Merger. As of the date hereof, the effects of the Merger have been stayed. The OAS Group maintains that the Merger was legally and properly consummated and continues to defend it accordingly.

Americas 9352028

id. As detailed below, the offering memoranda governing the Notes make clear that they constitute debt of a Brazilian company.

### IV.    Events Precipitating Commencement of the Brazilian Bankruptcy Proceedings

15.    Despite the OAS Group's prominent position in Brazil's construction and engineering market, ripple effects from the investigation into state-controlled oil giant Petrobras and adverse economic conditions have impaired its financial position.

16.    Since early 2014, the Brazilian oil company Petrobras has been under official investigation as a consequence of an ongoing Brazilian federal government-led anti-corruption case involving most of Brazil's largest construction companies and at least fourteen suppliers. On November 21, 2014, Petrobras released a list of 23 firms – including OAS – that were temporarily blocked from competing for new contracts with Petrobras, leading Standard & Poor's to downgrade OAS to 'B+' from 'BB-'. See Standard & Poor's Ratings Direct Report dated November 19, 2015 at 2, a copy of which is attached hereto as "Exhibit "F."

17.    These events, together with the general slowdown in the Brazilian economy, have led to a decrease in cash generation, while poorer credit ratings have made it extremely difficult and expensive for the OAS Group to finance its projects, the magnitude of which requires large amounts of capital to fund and operate. Meanwhile, the decline in value of the Brazilian Real relative to other currencies (including the U.S. dollar) has further decreased the OAS Group's ability to service its existing debt.

18.    As a result, in January of 2015 the OAS Group announced that it would cease making payments to its financial creditors while it worked to propose a global restructuring plan to its creditors. Since that time, the OAS Group has engaged with its major financial

Americas 9352028

creditors, seeking to find solutions mutually beneficial to the OAS Group, its employees, creditors and other stakeholders.

19.    Although most creditors have continued to work together with OAS to find consensual solutions to preserve enterprise value, and substantial progress has been made, a few creditors have sought individual remedies.  Prior to the commencement of the Brazilian Bankruptcy Proceedings, numerous collection and attachment actions in various stages of litigation were ongoing in Brazil and the United States, placing at risk key assets of the OAS Group.  The continuation and growing number of these actions and resulting attachments made it increasingly difficult for the OAS Group to continue business operations, rendering urgent the need for a consensual and globally coordinated solution to its financial difficulties.

### V.      Creditor Actions Against OAS Finance and the OAS Group

20.    Since early 2015, Aurelius Investment, LLC (with its affiliates, "Aurelius") and Alden Global Adfero BPI Fund, Ltd. (with its affiliates, "Alden") have adopted increasingly litigious tactics against OAS Finance and other members of the OAS Group.

21.    On January 2, 2015, OAS Finance failed to make a scheduled interest payment on the 2021 Notes.  On February 3, 2015, after the obligation had remained unpaid for precisely 30 days, Aurelius, a purported holder of 2021 Notes, delivered a "Notice of Acceleration" to OAS Finance and the guarantors of the 2021 Notes at the OAS Group's São Paulo headquarters.  See Notice of Acceleration, a copy of which is attached hereto as Exhibit "G."  Aurelius claimed to hold over 25% of the 2021 Notes and purported to declare the full outstanding balance of the Notes immediately due and payable.  Id.

22.    The next day, on February 4, 2015, unbeknownst to the OAS Group or any other noteholder, Aurelius commenced litigation (the "Aurelius Action") by filing a verified

13

complaint and an ex parte Application for Order of Attachment under Rule 62 of the New York

State Civil Practice Law and Rules against OAS Finance, OAS, Construtora OAS, and OAS

Investimentos S.A. (together, the "State Actions Defendants") in the Supreme Court of the State

of New York, County of New York (the "New York State Court").[2] See Complaint, Aurelius

Investment, LLC v. OAS Finance, et al., Index No. 650312/2015 (Sup. Ct. NY Cnty. filed Feb.

4, 2015) [Docket No. 2], attached hereto as Exhibit "H"; Memorandum of Law in Support of

Plaintiff's Ex Parte Application for Order of Attachment, Aurelius Investment, LLC v. OAS

Finance, et al., Index No. 650312/2015 (Sup. Ct. NY Cnty. filed Feb. 4, 2015) [Docket No. 10]

("Ex Parte Attachment Brief"), attached hereto as Exhibit "I."

23.     Aurelius sought, on an ex parte basis, prejudgment attachment in the

amount of $109,933,802.22 for alleged principal and accrued interest due under the 2021 Notes.

Ex Parte Attachment Brief at 7.  Notably, and based upon inapposite law, Aurelius argued that

the New York State Court had jurisdiction to, and should, attach not only the State Actions

Defendants' property within New York state, but also all of their intangible property, wherever

located.  Id. at 11-17.  Aurelius asserted that its proposed attachment was needed because "(a)

defendants are foreign corporations without domicile or residence in New York, (b) many of the

assets sought to be attached are liquid in nature . . . and (c) defendants are in acute financial

distress that draws into question whether any potential judgment would be paid unless secured . .

. ." Id. at 7.

24.     On February 9, 2015, the New York State Court issued the requested ex

parte order of attachment.  Ex Parte Order of Attachment, Aurelius Investment, LLC v. OAS

Finance, et al., Index No. 650312/2015 (Sup. Ct. NY Cnty. filed Feb. 4, 2015) [Docket No. 5],

---

[2]      In addition to this lawsuit, Aurelius is also fully participating in the Brazilian Bankruptcy Proceedings and
has filed papers, including appeals, with the Brazilian Bankruptcy Court seeking various forms of relief.

14

attached hereto as Exhibit "J." The Sheriff of the City of New York was ordered to levy within

his jurisdiction any property of any State Actions Defendant to secure and satisfy the sum. Id. at

2. The State Actions Defendants were also prohibited from "selling, assigning, transferring or

paying over to any person other than the Sheriff" any property or debt covered by the order. Id.

at 4.

        25.     On February 18, 2015, a nearly-identical lawsuit (the "Alden Action" and,

together with the Aurelius Action, the "State Actions") was filed against the State Action

Defendants by Alden. See Complaint, Alden Global Adfero BPI Fund, Ltd., et al. v. OAS

Finance Ltd., et al., Index No. 650480/2015 (Sup. Ct. NY Cnty. filed Feb. 18, 2015) [Docket No.

2], attached hereto as Exhibit "K." Alden is represented by the same law firm representing

Aurelius, relies on the same alleged default and acceleration as Aurelius, and has moved for an

order of attachment identical to that sought by Aurelius (other than the sum sought to be

attached). See id.; Memorandum of Law in Support of Plaintiffs' Motion for Order of

Attachment on Notice, Alden Global Adfero BPI Fund, Ltd., et al. v. OAS Finance Ltd., et al.,

Index No. 650480/2015 (Sup. Ct. NY Cnty. filed Feb. 18, 2015) [Docket No. 15], attached

hereto as Exhibit "L."

        26.     The State Actions have both been assigned to Justice Lawrence K. Marks

and are proceeding on the same schedule. May 4 Hr'g Transcript, attached hereto as Exhibit

"M." A hearing on the attachment motions took place on May 4, 2015. Judge Marks did not

rule on the attachment motions at the hearing, but noted that he was inclined to deny such

motions and indicated a desire to see how things would unfold in the pending bankruptcy

proceedings. Id. at 57:11-58:7. These attachment motions are still pending.[3]

---

[3]    Aurelius and Alden have also moved for summary judgment in the State Actions. Plaintiff's Memorandum
of Law in Support of Motion for Summary Judgment, Aurelius Investment, LLC v. OAS Finance, et al., Index No.

Americas 9352028

27.    Aurelius, through its affiliate Huxley Capital Corporation ("Huxley"), filed an additional action against certain of OAS Finance's affiliates in the United States District Court for the Southern District of New York on March 5, 2015 (the "Huxley Action" and, together with the State Actions, the "U.S. Actions"). Complaint, Huxley Capital Corp. v. OAS S.A., et al., Case No. 15-cv-01637 (GHW) (S.D.N.Y. filed Mar. 5, 2015) [Docket No. 1], attached hereto as Exhibit "P." The Huxley Action seeks to set aside as alleged fraudulent conveyances the following corporate actions (the "Contested Transactions"), all of which took place in Brazil between Brazilian OAS Group entities: (1) the transfer of assets from Construtora OAS to OAS Engenharia e Construção S.A. on December 1, 2014; (2) the transfer of shares in Investimentos e Participações em Infraestrutura S.A. from OAS Investimentos to OAS Infraestrutura S.A. on December 26, 2014; and (3) the December 26, 2014 Merger. Id. at ¶¶ 8-10. The Huxley Action was assigned to Judge Gregory H. Woods.

28.    In the course of the Huxley Action, Huxley has requested extensive discovery from the OAS Group, with primary focus on all documents related to the Contested Transactions. Plaintiff's First Set of Document Requests to Defendants ("Huxley Document Requests"), attached hereto as Exhibit "Q" (served April 27, 2015). Huxley further requested, and the court denied, an extraordinarily expedited schedule which would have required the OAS Group to respond to Huxley's voluminous discovery requests by May 18, 2015—the day before this Court's recognition hearing on the chapter 15 proceedings filed by OAS Finance and certain of its affiliates with respect to their Brazilian Bankruptcy Proceedings (as detailed below). See

---

650312/2015 (Sup. Ct. NY Cnty. filed Feb. 4, 2015) [Docket No. 76], attached hereto as Exhibit "N"; Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment, Alden Global Adfero BPI Fund, Ltd., et al. v. OAS Finance Ltd., et al., Index No. 650480/2015 (Sup. Ct. NY Cnty. filed Feb. 18, 2015) [Docket No. 62], attached hereto as Exhibit "O." These motions have been fully briefed and oral argument was scheduled for June 8, 2015. On June 2, 2015, Judge Marks adjourned oral argument on the pending summary judgment motions. No new date for the oral argument has been scheduled.

Americas 9352028

Letter to Judge Woods re: Discovery Dispute, Huxley Capital Corp. v. OAS, S.A., et al., Case

No. 15-cv-01637 (GHW) (S.D.N.Y. filed May 6, 2015) [Docket No. 21], attached hereto as

Exhibit "R"; Order Denying Expedited Discovery, Huxley Capital Corp. v. OAS, S.A., et al.,

Case No. 15-cv-01637 (GHW) (S.D.N.Y. filed Mar. 5, 2015) [Docket No. 22], attached hereto as

Exhibit "S."

### VI.    Debtor-Initiated Bankruptcy Proceedings

#### i.    The Brazilian Bankruptcy Proceedings

29.    In light of the foregoing and other litigation, and in an effort to concentrate

their reorganization efforts into a single, central forum, several entities within the OAS Group

(the "Brazilian Debtors") commenced the Brazilian Bankruptcy Proceedings on March 31, 2015

in the First Specialized Bankruptcy Court of São Paulo (the "Brazilian Bankruptcy Court")

pursuant to Brazilian Federal Law No. 11.101 of February 9, 2005 (the "Brazilian Bankruptcy

Law"). On April 1, 2015, the Brazilian Bankruptcy Court issued a decision and order (the

"Approval Order") approving the continuation of the Brazilian Bankruptcy Proceedings. A copy

of the Approval Order from the electronic judicial files of the Brazilian Bankruptcy Court, and a

certified translation thereof from Portuguese into English, is attached hereto as Exhibit "T."

30.    In issuing its order, the Brazilian Bankruptcy Court determined that all of

the subsidiaries of OAS included in the joint petition for relief under the Brazilian Bankruptcy

Law were part of the Brazilian OAS Group, were fully controlled by parent company OAS, and

"operate exclusively as instruments for acquiring resources abroad, with no operational role."

Approval Order at 3329. The court expressly found that OAS Finance, although organized under

the laws of and maintaining its registered office in a foreign jurisdiction, had its "principal center

of activities (COMI – Center of Main Interest)" in Brazil. Id.

17

*ii.   The Brazilian Debtors Chapter 15 Cases*

31.    On April 15, 2015, Mr. Tavares, as the duly authorized foreign
representative of the Brazilian Debtors, commenced the Brazilian Debtors Chapter 15 Cases by
filing the Brazilian Debtors Chapter 15 Petitions for the Brazilian Bankruptcy Proceedings
involving OAS Finance, OAS, Construtora OAS and OAS Investments GmbH.  Mr. Tavares also
filed a Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code (the
"April 15 Provisional Relief Motion").  Mr. Tavares sought from this Court, among other relief,
(i) recognition of the Brazilian Bankruptcy Proceedings as foreign main proceedings, as that term
is defined in section 1502(4) of the Bankruptcy Code, and (ii) provisional relief under section
1519 of the Bankruptcy Code imposing the section 362 stay for the purpose of maintaining the
status quo until the Court ruled on recognition.

32.    Following a hearing on April 17, 2015 (the "April 17 Provisional Relief
Hearing"), this Court enjoined all creditors, including Aurelius and Alden, from, among other
things, taking any action to seize, attach, obtain or perfect any lien or other security interest in, or
otherwise to improve their claims against, or interfere with, any property of the Brazilian Debtors
lying within the territorial jurisdiction of the United States.  This relief was formalized in an
order granted by the Court on April 30, 2015.

33.    On April 24, 2015, Aurelius and Alden filed a set of document requests
(the "April 24 Document Requests"), attached hereto as Exhibit "U," in connection with the
Brazilian Debtors Chapter 15 Petitions.  As co-counsel to Mr. Tavares informed this Court by
letter dated May 14, 2015, these requests were intended to gain information that concerned the
Contested Transactions subject to the Huxley Action.  May 14, 2015 Letter to Chambers, Case
No. 15-10937 (SMB) [Docket No. 52], attached hereto as Exhibit "V."  Indeed, the April 24

18

Document Requests made use of language directly corresponding and overlapping with discovery requests in the Huxley Action. See, e.g., Huxley Document Requests.

34.    Following a hearing on these discovery requests on May 7, 2015 (the "May 7 Discovery Hearing"), Mr. Tavares turned over certain of the requested documents to Aurelius and Alden. Mr. Tavares also made the production available to the JPLs' counsel, Chadbourne & Parke LLP, on an "attorneys' eyes only" basis. Notably, however, the Court directed that Mr. Tavares need not, and accordingly Mr. Tavares did not, produce documents pursuant to the majority of requests issued by Aurelius and Alden, including their inappropriate requests for documents related not to the Brazilian Debtors Chapter 15 Cases but rather to the U.S. Actions. See Letter of Susheel Kirpalani, Ex. B, In re OAS S.A., et al., No. 15-10937 (SMB) (Bankr. S.D.N.Y. May 4, 2015) (showing approximately 30 categories of document requests that were related to the Contested Transactions and not to chapter 15 recognition), a copy of which is attached hereto as Exhibit "W."

35.    On May 19, 2015, the Court held a hearing (the "Recognition Hearing") concerning the Brazilian Debtors Chapter 15 Petitions in respect of OAS, Construtora OAS and OAS Investments GmbH. The Court ordered that proposed findings of fact and conclusions of law be submitted, and the parties did so on June 4, 2015. As discussed further below, the JPLs have attempted to "withdraw" OAS Finance from the Brazilian Debtors Chapter 15 Cases, to which the Court expressed skepticism, see June 4 Hr'g Transcript at 48:11-12 ("I'm just saying procedurally even when people are clearly in charge in other chapters, you can't simply withdraw the petition.") and Mr. Tavares has maintained is improper.

19

VII.        **Creditor-Initiated Bankruptcy Proceedings**

36.        Since early 2015, Aurelius and Alden have continued to employ aggressive tactics against OAS Finance and other members of the OAS Group, including the filing of multiple actions seeking largely similar relief from different courts in Brazil, the United States, and the BVI.  The latest in this ongoing barrage of lawsuits features attempts by Aurelius and Alden to hijack OAS Finance and sabotage an orderly reorganization of the OAS Group (including OAS Finance) and the Brazilian Debtors Chapter 15 Cases.



38.        On April 16, 2015, just one day after the filing of the Brazilian Debtors Chapter 15 Petitions, Aurelius and Alden commenced the BVI Provisional Liquidation ███████ ███████████████████████████████ requesting from the BVI Court the immediate appointment of provisional liquidators in respect of OAS Finance and affiliate OAS Investments Limited on an ex parte basis. ████████████████████████████ JPL Petition at ¶ 36.

20



39.

Based upon evidence that

included many inaccurate and misleading statements submitted by Aurelius and Alden on an ex

parte basis, the BVI Court on that same day, April 16, 2015, entered an order (the "Provisional

Liquidation Order") appointing the JPLs. In obtaining that order, Aurelius and Alden made

numerous misrepresentations by oral and written submission to the BVI Court:[4]

- the Brazilian Debtors have applied for and obtained substantive consolidation (which is not true);[5]

- substantive consolidation in the Brazilian Bankruptcy Proceedings is a violation of Brazilian law (which is not true);[6]

- directors and executives of the OAS Group implicated in the Petrobras scandal remain in control of the OAS Group (which is not true);[7]

- the only material assets of OAS Finance are alleged intercompany claims against OAS Investments Limited and such alleged assets are the only source of repayment of obligations under the Notes (a fact belied by the offering memoranda for the Notes and joint, several and unconditional guarantees under the Notes' indentures that show that the creditworthiness relied upon by creditors of OAS Finance was that of OAS and its operating subsidiaries, where all value available to satisfy claims of OAS Finance lies);[8] and

---

[4]    See Affidavit of Eleanor Chan (the "Chan Affidavit") attached hereto as Exhibit "Y" and Affidavit of Brazilian counsel to Aurelius and Alden (the "Carpenter Affidavit") attached hereto as Exhibit "Z."

[5]    See Chan Affidavit at ¶ 67; Carpenter Affidavit at ¶ 21.

[6]    See Chan Affidavit at ¶ 65; Carpenter Affidavit at ¶ 21.

[7]    See Chan Affidavit at ¶ 78; Note of Ex Parte Hearing at 5.

[8]    See, e.g., Offering Memorandum for the 2021 Notes at 42 ("We are organized under the laws of Brazil and a majority of our assets are located in Brazil. . . ."); id. at 111 ("We have not included any financial statements of

21

Americas 93352028

- immediate relief was required because the OAS Group could use the Brazilian Debtors Chapter 15 Cases to stay actions in the BVI (which is beyond the scope of relief requested by Mr. Tavares or available under sections 1519 and 1520, which is limited to the territorial jurisdiction of the United States).[9]



41.    On April 30, 2015, the JPLs followed in the footsteps of Aurelius and Alden by submitting to the BVI Court a report (the "First JPL Report") with similarly misleading statements of facts, including, among others:

- the Brazilian Debtors have placed all of their assets and liabilities into a "single pot, regardless of prior rights" (in substance incorrectly claiming again that the Brazilian Debtors have been substantively consolidated in Brazil, which they have not);[10]

- there is no basis in Brazilian law for the acceptance of OAS Finance and OAS Investments Limited as debtors in the Brazilian Bankruptcy Proceedings (which is not true, as nothing under Brazilian law prohibits bankruptcy proceedings of

---

OAS Finance Limited in this offering memorandum."); <u>id.</u> at 121 ("As of the Closing Date, the Subsidiary Guarantors are the following Subsidiaries of the Company:  Construtora OAS Ltda. and OAS Investimentos S.A. As of and for the three-month period ended March 31, 2014, the Company and the Subsidiary Guarantors generated 91.2% of the Company's consolidated net revenue and  71.5% of the Company's consolidated combined total assets."); <u>id.</u> at  ii ("In this offering memorandum, except where otherwise specified or the context otherwise requires, "we," "us," "our," "OAS," "OAS Group" and the "Company" refer to OAS S.A. and its subsidiaries. References to the "issuer" are to OAS Finance Limited.""); <u>see also</u> Offering Memorandum for the Perpetual Notes at 41, 109, 119, and ii (containing identical or nearly identical statements).

[9]    Indeed, in the Provisional Relief Motion, Mr. Tavares only sought relief within the territorial jurisdiction of the United States, Provisional Relief Motion ¶ 11.a., so it is unclear on what good faith basis Aurelius and Alden made such an assertion.

[10]    <u>Id.</u> at ¶ 7.b.

Americas 9352028

foreign debtors in Brazil, and in fact there is precedent for such proceedings in Brazil);[11] and

- the expected recoveries for the creditors of OAS Finance will be 0.01% (incorrect and based on a recovery analysis that ignores the joint, several and unconditional guarantees of OAS and its operating subsidiaries).

A copy of the First JPL Report is attached hereto as Exhibit "AA."

42.    On April 24, 2015, BVI counsel for the OAS Directors and the board of directors of OAS Investments Limited submitted papers to the BVI Court (the "BVI Termination Application") challenging (i) the propriety of the appointment of the JPLs and (ii) the unusual and impermissible scope of the powers granted to them by the BVI Court, and on April 29, 2015, made oral submissions regarding the same. A copy of the BVI Termination Application is attached hereto as Exhibit "BB." On May 6, 2015, BVI counsel for Aurelius and Alden appeared and made oral and written submission to the BVI Court in response. In its written submissions, counsel for Aurelius and Alden continued to mislead the BVI Court, reiterating the baseless claims that (i) the Brazilian Debtors have been substantively consolidated, (ii) applicable Brazilian law prevents OAS Finance and OAS Investments Limited from being accepted as debtors in the Brazilian Bankruptcy Proceedings, and (iii) OAS Finance had suddenly become massively insolvent. May 6 Written Submissions of Aurelius and Alden at ¶ 84, a copy of which is attached hereto as Exhibit "CC." On May 15, 2015, the JPLs and the OAS Directors filed their final papers with respect to the BVI Termination Application, followed only by the submission of additional expert evidence by the OAS Directors on June 2, 2015. It is unknown when the BVI Court will rule on the BVI Termination Application.

43.    In addition, the OAS Directors submitted an application (the "BVI Stay Application") seeking, among other things, (i) a stay on the JPLs' powers and (ii) an order

---

[11]    Id. at ¶ 8.

Americas 93520/28

recognizing the Brazilian Bankruptcy Proceedings as the main proceedings entitled to assistance

as a matter of comity. A copy of the BVI Stay Application is attached hereto as Exhibit "DD."

A hearing on the BVI Stay Application is set to commence on July 7, 2015.

44.    The BVI Court further entered an ex parte order on Monday, May 18,

2015, authorizing the JPLs to file a chapter 15 petition in this Court seeking recognition of the

BVI Provisional Liquidation. JPL Petition at ¶ 41. On May 21, 2015, the OAS Directors filed

an application (the "Variance Application") with the BVI Court seeking to vary or rescind this ex

parte order. A copy of the Variance Application is attached hereto as Exhibit "EE." In

obtaining this authority, the JPLs again moved on an ex parte basis, appearing before the BVI

Court on the afternoon of Friday, May 15, 2015, without providing prior notice to any party,

arguing to the BVI Court that emergency relief was required so that the JPLs could protect the

interests of OAS Finance. This alleged "emergency" was that the provisional stay order

protecting OAS Finance and its affiliated chapter 15 debtors would expire at the recognition

hearing date of May 19, 2015 and that the JPLs had just been surprised to learn from U.S.

counsel that Mr. Tavares earlier that day had informed this Court that it would not be pursuing

the OAS Finance Chapter 15 Petition. Significantly, however, the JPLs' counsel failed to inform

the BVI Court that this "emergency" was one of the JPLs' own making. After discussing a

consensual resolution with Mr. Tavares's counsel to support the OAS Finance Chapter 15

Petition, without prejudice, for over a week, the JPLs suddenly decided that they could not ever

support the OAS Finance Chapter 15 Petition and had to file their own.

24

46.    Since their appointment, the JPLs have ineffectively plotted to shift the location of OAS Finance's administration to the BVI, including:

- purporting (but failing, under BVI Law, see Lowe Decl. ¶ 36) to suspend the power of the OAS Directors such that the entity would then be controlled solely from the BVI;

- attempting to move OAS Finance's books and records to the BVI;

- asserting control over the foreign bank account(s) of OAS Finance; and

- establishing the first and only BVI bank account in OAS Finance's name.

JPL Petition at ¶¶ 45, 56.

**VIII.    Attempts by the JPLs to Disrupt the Restructuring of the OAS Group**

47.    The JPLs have consistently acted to disrupt, derail, and undo progress in the centralized restructuring efforts of the OAS Group, adopting positions suspiciously similar to those of Aurelius and Alden.

48.    In the April 17 Provisional Relief Hearing before this Court, counsel for the JPLs opposed the status quo stay requested. April 17 Provisional Relief Hearing Transcript at 36:15-24, attached hereto as Exhibit "FF"; ████████████ Understandably, this Court and certain other creditors questioned such a position, as the goal of any fiduciary for OAS Finance should be to preserve the status quo in the United States to protect assets from the opportunistic efforts by Aurelius and Alden and others to seize assets the JPLs purport to be seeking to protect. April 17 Hr'g Transcript at 48:16-25 (counsel for the Ad Hoc Group commenting on the seeming absurdity that the JPLs would oppose a stay that does nothing but preserve the status quo, which would seem to advance the JPLs' stated objectives); id. at 38:1-2

25

Americas 9352028

(the Court asking counsel to the JPL: "[Y]ou want Alden and Aurelius to seize OAS Finance's

assets?").



Americas 93520128



52.     The JPLs assert that Mr. Tavares no longer has the authority to petition on

behalf of OAS Finance—an assertion entirely contrary to BVI law, <u>see</u> Lowe Decl. ¶ 36—

Americas 93520/28



56.    On April 28, 2015 the JPLs attempted to exclude OAS Finance and OAS

Investments Limited from the ongoing Brazilian Bankruptcy Proceedings, a strategy which, if

successful, would have disrupted a productive restructuring well underway in Brazil. ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In an order firmly denying the

"inappropriate" request (the "Reaffirmation Order"), the Brazilian Bankruptcy Court noted that

under Brazilian Bankruptcy Law, a debtor may only withdraw from an ongoing, judicially-

supervised proceeding with the authorization of its creditors.  Reaffirmation Order at 17668.  A

copy of the Reaffirmation Order from the electronic judicial files of the Brazilian Bankruptcy

Court, together with a certified English translation thereof, is attached hereto as Exhibit "JJ."

Further, the Brazilian Bankruptcy Court found that reorganization had been properly commenced

in Brazil and that the JPLs, who were not appointed at the time, therefore "must respect" the

Brazilian Bankruptcy Proceedings.  Id.  It reiterated that "applying the general principles of the

UNCITRAL model law, there is no doubt that the COMI (Center of Main Interests) is Brazil."

Americas 9352028

<u>Id.</u> 

57.    On or around May 10, 2015, Mr. Tavares proposed to the JPLs that they

agree to support the continuance of the temporary stay set in place by this Court on April 17,

2015, while holding the Brazilian Debtors Chapter 15 Cases in abeyance with respect to OAS

Finance pending the resolution of the OAS Directors' challenges to the JPLs' appointment in the

BVI.  Although they had previously instructed their counsel to maintain the status quo to extend

the TRO protecting OAS Finance's U.S. assets, <u>see</u> Second JPL Report (as defined below) at

¶ 22, the JPLs refused, stating that they wanted to avoid the "perception" that they would not be

controlling the entity.  Apparently, however, the JPLs either did not care about the risks of such

refusal or welcomed such risks to the extent they would further the interests of Aurelius and

Alden (and, perhaps, Aurelius and Alden's bankrolling of their fees), including the risk that there

might be no foreign main proceeding recognized if the JPLs pursued their own chapter 15 case.

In fact, this Court has already made clear its growing concerns regarding the JPLs' ability to

obtain foreign main recognition of the BVI Provisional Liquidation.  June 4 Hr'g Transc. at 23:6-

7 ("THE COURT: . . . there's a serious question about whether the BVI proceeding should be

recognized as a main . . . proceeding.")

58.    On May 15, 2015, the JPLs, still in purported control of OAS Finance and

having failed in their attempt to derail the Brazilian Bankruptcy Proceedings, attempted next to

Americas 9352028

withdraw OAS Finance from the Brazilian Debtors Chapter 15 Cases, without specific authority

from the BVI Court to do so. The JPLs, while ignoring the Brazilian Bankruptcy Proceedings

with respect to OAS Finance where it is an integral part of a centralized and orderly restructuring

of the OAS Group, told the Court that it must permit the withdrawal based upon "principles of

comity." See Notice of Withdrawal of Petition Commencing OAS Finance Limited Chapter 15

Case and Objection to Recognition of Purported Foreign Proceeding [OAS Finance Chapter 15

Case Docket No. 57] (the "Withdrawal Notice") at ¶¶ 1, 4, 18.

       59.     Three days later, on May 18, 2015, the JPLs filed the JPL Petition seeking

recognition of the BVI Provisional Liquidation as a foreign main proceeding, thus commencing

the JPL Chapter 15 Case. The JPLs also sought provisional relief similar to that sought in the

Brazilian Debtors Chapter 15 Cases, although tellingly, this time Aurelius and Alden did not

oppose such relief.

       60.     Consistent with the interests of Aurelius and Alden, the JPLs quickly used

the chapter 15 platform to file a Bankruptcy Rule 2004 discovery request (the "Rule 2004

Document Request"), seeking on shortened notice the unusual measure of compelling White &

Case, as U.S. counsel to Mr. Tavares, to turn over an extraordinary range of documents related to

OAS Finance and its affiliates. See Motion for Leave to Conduct Discovery Pursuant to 11

U.S.C. §§ 105(a), 1519(a)(4) and 1521(a)(4) and Rule 2004 of the Federal Rules of Bankruptcy

Procedure [Docket No. 21]. Notably, the JPLs requested documentation from OAS Finance on

the same Contested Transactions that Huxley, and then Aurelius and Alden, had already sought

and failed to obtain from this Court in the Brazilian Debtors Chapter 15 Cases. Id., Ex. B. The

Court declined to allow the JPLs to launch their fishing expedition, refusing to compel White &

Case to comply with the JPLs' exceedingly broad discovery requests, while also asking counsel

for the JPLs no less than four times why the JPLs sought discovery in the United States

regarding transactions related to Brazilian entities that occurred in Brazil, instead of in Brazil as

was proper. June 6 Hr'g Transcript at 4:20-21; 5:13-16; 6:6-7; 7:7-12. The JPLs, undeterred,

proceeded to file additional discovery requests on June 10, 2015, this time in the form of Rule

30(b)(6) document requests. Rule 26 and Rule 34 document requests. Foreign Representatives'

First Request for Production of Documents Directed to OAS S.A. and Construtora OAS S.A., a

copy of which is attached hereto as Exhibit "LL."

61.    Throughout this forum-hopping circus, the JPLs have taken inconsistent

positions before the multiple courts involved. In their second report to the BVI Court (the

"Second JPL Report"), attached hereto as Exhibit "MM," filed on May 12, 2015 (and not served

on the OAS Group's BVI counsel until May 15, 2015), the JPLs represented to the BVI Court

that they had instructed their U.S. counsel to cooperate with Mr. Tavares, and had actually

agreed to support the stay requested in the April 15 Provisional Relief Motion and refrain from

filing their own chapter 15 petition because this would "maintain the status quo, and not commit

[the JPLs] to the considerable expense of [filing a new chapter 15 petition]." Second JPL Report

at ¶ 22.

62.    Apparently, the JPLs now find the considerable expense of a new chapter

15 tolerable—perhaps because Aurelius is footing the bill. To justify their changes in position to

the BVI Court, whose authorization the JPLs required to commence the JPL Chapter 15 Case,

the JPLs again misled the BVI Court (and again on an ex parte basis), stating inaccurately that

Mr. Tavares's counsel intended to cause a gap in stay protection thus necessitating

commencement of another chapter 15 case. In a letter to the BVI Court (the "Harneys Letter")

submitted by the JPLs' BVI counsel on May 14, 2015, the JPLs represented to the BVI Court as

follows:

> An urgent situation has arisen which requires the JPLs to file a
> Petition for Chapter 15 relief . . . . There was a chambers hearing
> this morning in New York . . . at which it was confirmed the
> existing Petition . . . of the Company may be withdrawn at a . . .
> hearing listed for next Tuesday.  In any event, come 5pm next
> Tuesday the existing temporary restraining order (the TRO)
> expires irrespective of whether the Petition is withdrawn.  As a
> result, the Company will be exposed and vulnerable to the claims
> on its assets in New York.  To counter this, the JPLs are keen to
> file their own Chapter 15 Petition prior to the TRO lapsing.

Harneys Letter at 1, a copy of which is attached hereto as Exhibit "NN."  The JPLs, however, did

not inform the BVI Court that it was the JPLs who intended to withdraw the OAS Finance

Chapter 15 Petition, which the JPLs purported to do by filing their Withdrawal Notice on May

15, 2015.  See Notice of Withdrawal of Petition Commencing OAS Finance Limited Chapter 15

Case and Objection to Recognition of Purported Foreign Proceeding, Case No. 15-10937

[Docket No. 57].  In addition, the JPLs failed to mention to the Court that they had clearly

intended to bring about this situation by revoking Mr. Tavares' authority on the day before they

attended Court ex parte and by directing him not to pursue recognition or to take further action in

OAS Finance's chapter 15 case.  Thus, the JPLs manufactured an emergency and then ran to the

BVI Court without notice, failed to explain the full facts and claimed they needed urgent ex parte

relief.

      63.     Further, the JPLs failed to disclose to the BVI Court that counsel to Mr.

Tavares had proposed to the JPLs that they agree to an extension of the then-in-force provisional

relief order obtained by Mr. Tavares on April 17, 2015 in exchange for Mr. Tavares's

commitment to not go forward with the OAS Finance Chapter 15 Petition until the ongoing

litigation in the BVI Provisional Liquidation had been resolved.  Id. at ¶ 9.  Counsel also made

32

clear that Mr. Tavares was willing to agree to the reservation of the JPLs' "rights to take any action in the event that their powers were confirmed by permanent order of the BVI Court." Id. at ¶ 9. Therefore, there was no emergent need to file the JPL Petition, given an alternative cost-effective and efficient path forward that would have preserved the JPLs' rights while granting OAS Finance the protection the JPLs indicated could only be obtained by commencing this case. Thus, ostensibly, this case is nothing more than an attempt by the JPLs to assert improper control over OAS Finance's cross-border insolvency in support of Aurelius and Aldens' opportunistic aims.



Americas 9352028



34

Americas 9352028



**OBJECTION**

I.      **The JPL Chapter 15 Petition Should be Denied because It is Premised upon Aurelius and Alden's Attempts to Manipulate the COMI of OAS Finance**

68.     The JPLs incorrectly assert that the BVI Provisional Liquidation should be recognized as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code because, as of the date of filing the JPL Petition, OAS Finance's COMI was in the BVI.  JPL Petition at ¶ 4.  As explained below, however, OAS Finance's COMI was and still is in

35

Brazil. In accordance with Second Circuit authority, the court should disregard the transparent

attempts by the JPLs and their sponsor (Aurelius and Alden) to shift the actual COMI of OAS

Finance from Brazil to the BVI. The BVI Liquidation Proceeding is the product of clear COMI

manipulation and is not entitled to recognition.[12]

### i.    OAS Finance's COMI has Always Been and Remains in Brazil

69.    Although the Bankruptcy Code neither defines nor provides a conclusive

test for determining the location of a debtor's COMI, it does establish a rebuttable presumption

that a debtor's "registered office" is its COMI. See 11 U.S.C. § 1516(c). "'Registered office' is

the term used in the Model Law to refer to the place of incorporation or the equivalent for an

entity that is not a natural person." H. REP. NO. 109-31, pt. 1, at 113 (2005). This rule is

"designed to make recognition as simple and expedient as possible" in cases where the facts are

not controversial rather than to establish a conclusive presumption. H. REP. NO. 109-31, pt. 1, at

112-13 (2005). Thus, the court in In re Bear Stearns observed that:

> This presumption permits and encourages fast action in cases
> where speed may be essential, while leaving the debtor's true
> "center" open to dispute in cases where the facts are more
> doubtful. . . . This presumption is *not a preferred alternative where
> there is a separation between a corporation's jurisdiction of
> incorporation and its real seat.* Chapter 15 changed the Model
> Law standard that established the presumption in "the absence of
> proof to the contrary," to a presumption in "the absence of
> evidence to the contrary." The legislative history explains that the
> word "proof" was changed to "evidence" to make it clearer using
> United States terminology that the ultimate burden is on the
> foreign representative. . . . Whatever may be the proper
> interpretation of the EU Regulation, *the Model Law and Chapter
> 15 give limited weight to the presumption of jurisdiction of
> incorporation as the COMI.*

In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122, 128

(Bankr. S.D.N.Y. 2007) (internal citations omitted) (emphasis added); see also In re Tri-Cont'l

---

[12]    The JPLs have not sought foreign non-main recognition.

36

Exch. Ltd., 349 B.R. 627, 635 (Bankr. E.D. Cal. 2006) (similar view).  Accordingly, where any

"evidence to the contrary" is presented, the presumption has no role to play.  Collins v. Oilsands

Quest Inc., 484 B.R. 593, 595 (S.D.N.Y. 2012).

       70.    The Court of Appeals for the Second Circuit has held that "[t]he relevant

principle [to determine a debtor's COMI] is that the COMI lies where the debtor conducts its

regular business, so that the place is ascertainable by third parties. . . .  Among other factors that

may be considered are the location of headquarters, decision-makers, assets, creditors, and the

law applicable to most disputes."  Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry

Ltd.), 714 F.3d 127, 130 (2d Cir. 2013); see also Bondi v. Bank of Am., N.A. (In re Eurofood

IFSC Ltd.), Case 341/04, 2006 WL 1142304 at [33] (E.C.J. May 2, 2006) (stating that the center

of a debtor's main interests must be identified with criteria that are: (1) objective and

(2) ascertainable by third parties, and that the statutory presumption that it be identified with the

debtor's registered office could be rebutted if such criteria allowed for the establishment that the

debtor's registered office was nothing more than a "letterbox" company not carrying out any

business in the location in which its registered office is situated); In re Stanford Int'l Bank Ltd.,

[2010] EWCA (Civ) 137, [53]-[56] (Eng.) (following Eurofood and holding that the presumption

that registered office is COMI can be rebutted only by factors that are objective and ascertainable

by third parties, and noting that such factors must be in the public domain, that a third party

would learn such facts in the course of dealing with the company and that any matters that

"would need to be obtained by enquiry were irrelevant to determining COMI").

       71.    Two tests are commonly employed to determine a corporation's principal

place of business (i.e., the "nerve center" and "place of operations" tests):

> The "nerve center" test defines the principal place of business as
> the nerve center from which a corporation radiates out to its

37

> constituent parts and from which its officers direct, control and
> coordinate all activities without regard to locale, in the furtherance
> of the corporate objective. Under this test, courts focus on those
> factors that identify the place where the corporation's overall
> policy originates. The other test has been labeled the "place of
> operations" or "locus of operations" test. There, the effort is to
> identify the place in which a corporation conducts its principal
> operations. Courts generally apply the "nerve center" test when a
> corporation's operations are geographically widespread, and the
> "locus of operations" test when a corporation is centralized.

Phoenix Four Inc. v. Strategic Res. Corp., 446 F. Supp. 2d 205, 214-15 (S.D.N.Y. 2006) (internal

citations and quotations omitted). Further, "the case law makes it clear that judges should not be

straightjacketed by the formal requirements of each test, but rather should adapt the tests to the

facts of each case. A flexible approach is appropriate where the facts do not fall neatly within

the parameters of either the 'nerve center' or the 'locus of operations' analysis." Id. Several

courts have noted in considering the location of those who actually manage the debtor that such

location "conceivably could be the headquarters of a holding company." See, e.g., In re Bear

Stearns High Grade Structured Credit Strategies Master Fund. Ltd., 389 B.R. 325, 336 (Bankr.

S.D.N.Y. 2008); In re Basis Yield, 381 B.R. 37, 47 (Bankr. S.D.N.Y. 2008); In re SPhinX Ltd.,

351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), aff'd., 371 B.R. 10 (S.D.N.Y. 2007).

72.    Under either test and applying the factors espoused by the Second Circuit

in Fairfield, the COMI of OAS Finance is in Brazil. With the exception of the *de minimis*

activities conducted by the JPLs, all operations, management, and all other functions of OAS

Finance have been directed exclusively from OAS Group headquarters in São Paulo, Brazil,

where the shareholders and OAS Directors reside. ███████████████████████████████

███████. Even after the appointment of the JPLs, corporate actions of OAS Finance

continue in Brazil. For example, the directors of OAS Financing are still directing the defense

38

against the JPLs' appointment and the prosecution of its Brazilian Bankruptcy Case from OAS

Group headquarters in São Paulo, Brazil.

73.    As recognized by the JPLs, OAS Finance operated strictly as a shell or

"letterbox" company for the OAS Group, with the sole function of financing and issuing the

Notes. JPL Petition at ¶ 16 ("OAS Finance was a true shell company . . . ."). While OAS

Finance maintains its registered office in the BVI (as required under local law), it conducted no

business, owned no assets and had no employees in the BVI. It had no suppliers in the BVI, and

the only contractor providing OAS Finance with ongoing services in the BVI was its domicile

agent, Trident Trust Company Ltd. Additionally, all decisions concerning its sole business

activity (the Notes) were made exclusively in Brazil, and substantially all negotiations regarding

the Brazilian Bankruptcy Proceedings—including the restructuring of the Notes—have occurred

in and have been directed from Brazil. OAS Finance does not have obligations owing to any

creditors located in the BVI, except to the extent that any beneficial holders of the Notes happen

to be from the BVI.

74.    Additionally, in determining COMI, as with all matters involving the

interpretation of chapter 15, a court should "consider [Chapter 15's] international origin, and the

need to promote an application of [chapter 15] that is consistent with the application of similar

statutes adopted by foreign jurisdictions." 11 U.S.C. § 1508. In that regard, it is important to

note that the Brazilian Bankruptcy Court confirmed in its Approval Order and recently reiterated

in the Reaffirmation Order (which was entered after the JPLs were appointed in the BVI) that the

COMI of OAS Finance is and always has been in Brazil. Approval Order at 3329; Reaffirmation

Order at 17668. The Brazilian Bankruptcy Court justified finding COMI in Brazil for each of

the Brazilian Debtors, including OAS Finance, with the rationale that the objectives of

insolvency law could be better achieved by reorganizing a particular debtor under the same restructuring regime as its debtor affiliates who are part of the same economic group. Approval Order at 3329. This reasoning aligns with the chapter 15 goals of a "fair and efficient administration of cross-border insolvencies," protection of interests of "all creditors and other interested entities, including the debtor," protection and maximization of value, and "facilitation of the rescue of financially troubled businesses." 11 U.S.C. § 1501(a)(3)(5). Where the "financially troubled business" is spread among multiple, economically integrated legal entities, as is the case with respect to the OAS Group, it makes sense to restructure them together, as is commonly done in chapter 11 cases involving related entities. Even the JPLs recognize that OAS Finance's purported principal asset, alleged receivables against affiliate OAS Investments Limited, are subject to the Brazilian Bankruptcy Proceedings. JPL Petition at ¶ 13, 59 (explaining that the JPLs took action to ensure that intercompany payables owed to OAS Finance against affiliate OAS Investments Limited were included in the Brazilian Bankruptcy Proceedings).

75.    Perhaps most significantly, all purchasers of the Notes were notified and had the reasonable expectation as creditors that OAS Finance's COMI is in Brazil. The offering memoranda for the Notes show that the OAS Group, which includes OAS Finance, was principally located in and headquartered in Brazil. In fact, the first page of each offering memorandum clearly states that the joint and several guarantors of the Notes—the entities (unlike the shell issuer) that actually own the assets providing the credit support for the Notes-- are incorporated in Brazil. See Offering Memorandum for the 2021 Notes; Offering Memorandum for the Perpetual Notes. Further, each offering memorandum clearly provides that:

40

- "we," "us," and "our," as used in the memorandum, reference OAS and its subsidiaries (which includes OAS Finance), thereby making it clear that OAS Finance is part of the OAS Group, which is managed and located in Brazil, <u>see</u> Offering Memorandum for the 2021 Notes at ii ("'[W]e,' 'us,' [and] 'our,' . . . refer to OAS S.A. and its subsidiaries."); Offering Memorandum for the Perpetual Notes at ii (same);

- OAS Finance is a special purpose vehicle and is wholly owned by the OAS Group, <u>see</u> Offering Memorandum for the 2021 Notes at 111 ("OAS Finance Limited is a special purpose finance company and our wholly-owned subsidiary . . . ."); Offering Memorandum for the Perpetual Notes at 109 (same);

- all of the OAS Directors reside in Brazil and conduct all their business from Brazil; <u>see</u> Offering Memorandum for the 2021 Notes at 42 ("The issuer has been organized under the laws of British Virgin Islands. All of its directors and our officers and certain advisors named herein reside in Brazil. Substantially all of its assets and those of these other persons are located outside the United States."); Offering Memorandum for the Perpetual Notes at 41 (same); and

- all of the directors and executive officers for each of the guarantors of the Notes reside in Brazil; <u>see</u> Offering Memorandum for the 2021 Notes at 42 ("[The Guarantors] are organized under the laws of Brazil and a majority of our assets are located in Brazil. In addition, each of [the Guarantors'] controlling shareholders, all of our executive officers and certain advisors named herein reside in Brazil."); Offering Memorandum for the Perpetual Notes at 41 (same).

76.    Further, the offering memoranda for the Notes fully informed prospective noteholders that any potential reorganization of OAS Finance and/or the guarantors of the Notes would be in Brazil: "If we are unable to pay our indebtedness, including our obligations under the guarantees, then we may become subject to bankruptcy proceedings in Brazil." Offering Memorandum for the 2021 Notes at 43; Offering Memorandum for the Perpetual Notes at 42. That OAS Finance's interests lay centrally in Brazil is repeatedly iterated in the offering memoranda, and consequently creditors have always been on clear notice that COMI is in Brazil.

77.    Lastly, the indentures governing the Notes (the "Indentures") also make clear that OAS Finance's COMI is in Brazil. The notice provisions of the Indentures require that any notices concerning the Notes be sent to the OAS Group's headquarters in Brazil, not to the

letterbox in the BVI. See 2021 Indenture § 13.01(1)(a); Perpetual Indenture § 12.01(1)(a). In

fact, Aurelius sent its February 3, 2015 notice of acceleration regarding the 2021 Notes to the

OAS Group's headquarters in São Paulo—not to the BVI address of OAS Finance. See Notice

of Acceleration at 1. The Indentures also allow for the issuer to be replaced by certain entities of

the OAS Group under certain conditions without the consent of any holder of the Notes—with

the consequence that OAS Finance could be replaced as issuer by a company organized under

the laws of Brazil or any other jurisdiction other than the BVI. See 2021 Indenture § 4.27;

Perpetual Indenture § 4.22. Therefore, the JPLs cannot credibly claim that any holders of the

Notes believed repayment of the Notes was based on the assets or creditworthiness of OAS

Finance in the BVI.[13] Rather, the offering memorandum for the Notes makes clear such

payments would come from assets and creditworthiness of the OAS Group in Brazil. In short,

the BVI is not—and has never been—the actual COMI for OAS Finance. Rather, the actual

COMI for OAS Finance remains in Brazil.

ii.    **Aurelius and Alden and the JPLs Should Not be Permitted to Manipulate OAS Finance's COMI through the BVI Provisional Liquidation**

78.    The appointment of the JPLs and their subsequent activities have not

moved the COMI of OAS Finance for purposes of chapter 15 recognition. The unprecedented

installment of the JPLs and all their actions taken thus far are part of a calculated attempt by

Aurelius and Alden to torpedo the OAS Finance Chapter 15 Petition and shift OAS Finance's

COMI from Brazil to the BVI. Indeed, in arguing that the Court must confine its COMI analysis

to the filing date of the JPL Chapter 15 Case, the JPLs do not even try to hide their blatant

manipulation of COMI. They admit that "[s]ince their appointment, the Petitioners have done

---

[13]    Similarly disingenuous is the JPLs' argument that Aurelius' decision to seek liquidation in the BVI rather
than Brazil is proof that OAS Finance's creditors consider its COMI to be in the BVI. Memo of Law at ¶ 43.

42

everything reasonably possible to assert their control of OAS Finance's affairs and centralize

control of the company in the BVI." JPL Petition at ¶ 44. These steps include attempts:

- the purported suspension the power of the OAS Directors such that OAS Finance would be controlled solely from the BVI;

- attempting to move OAS Finance's minimal books and records to the BVI;

- the assertion of control over the foreign bank account(s) of OAS Finance; and

- the establishment a new bank account in the BVI in OAS Finance's name.

JPL Petition at ¶ 45, 56. All of these actions were taken, undoubtedly at the bidding of Aurelius

and Alden, not to protect the assets of OAS Finance, but with ulterior motive of supporting the

JPLs' position that "there can be no argument that OAS Finance's affairs are currently being

administered anywhere except in the BVI." Id. at ¶ 46; see also Memo of Law at ¶ 41 ("This

complete removal of power from the . . . Directors and transfer of that power to the . . .

Petitioners eliminates any doubt that OAS Finance's COMI is in the BVI.").

       79.     Ironically, however, the very cases that the JPLs rely upon for their

argument that the COMI analysis must be limited to the date of the chapter 15 petition

specifically recognize that the court should consider prepetition actions to ensure COMI was not

manipulated. Specifically, as stated by the Second Circuit in Fairfield:

> a debtor's COMI should be determined based on its activities ***at or
> around the time*** the Chapter 15 petition is filed . . . . But . . . a
> court may consider the period between the commencement of the
> foreign insolvency proceeding and the filing of the chapter 15
> petition to ensure that a debtor has not manipulated its COMI in
> bad faith.

713 F.3d at 137 (emphasis added); see also In re Suntech Power Co., Ltd., 520 B.R. 399, 416

(Bankr. S.D.N.Y. 2014) (same).

Americas 93520/28

80.     Indeed, this Court has already stated its concerns about COMI in the present case. See June 6 Hr'g Transcript at 23:6-8 (noting that the COMI issue is a "serious question" and "substantial question" to be resolved).  As this Court further noted, the question of manipulation is properly presented to this Court and does not depend on the outcome of the BVI Court's ongoing inquiry into whether the JPLs were improperly appointed. See id. at 35: 22-25 (THE COURT:  "I don't think there's anything inconsistent with concluding that the JPLs are appointed and they are the JPLs and they representatives [sic] of Finance but yet finding that there's a manipulation of COMI.").  In light of the foregoing, the Court has already acknowledged the precedent of Fairfield and Suntech with regard to scrutinizing the actions of the JPLs and others for indications of COMI manipulation. Id. at 32: 6-9 ("[Y]ou go back a little bit in time before the commencement of the foreign proceeding because there may be documents relevant to the manipulation of COMI which led up to the foreign proceeding in the first place.").

81.     ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████    Indeed, the JPLs admit that they took such actions as opening a bank account in OAS Finance's name and purporting (incorrectly) to divest the OAS Directors of control in order to "centralize control of the company in the BVI," JPL Petition at ¶ 44, and to preclude any argument "that OAS Finance's affairs are currently being administered anywhere except in the BVI." Id. at 46.

82.     The actions of the JPLs are the product of COMI manipulation instituted by Aurelius and Alden and, indeed, are part of a larger litigation strategy employed by Aurelius and Alden to further their individual interests to the detriment of the OAS Group, their creditors

44

and other Noteholders.  As such, these actions should be ignored for purposes of determining the COMI of OAS Finance

83.    Finally, although the JPLs rely heavily on <u>Suntech</u> to support their assertion that COMI now properly lies in the BVI, the key facts and circumstances of the present case are completely distinguishable.  In <u>Suntech</u>, a chapter 15 petition for recognition of a foreign main proceeding was objected to by a former competitor and contingent creditor of a Cayman Islands debtor in a Cayman Islands liquidation on the basis that the debtor had intentionally manipulated its COMI to garner chapter 15 recognition of that liquidation as a foreign main proceeding.  <u>Suntech</u>, 520 B.R. at 403-04; Objection of the Solyndra Residual Trust to Chapter 15 Petition of Suntech Power at ¶¶ 8-10, 22, <u>In re Suntech</u>, Case No. 14-10383 (SMB) [Docket No. 22].  The <u>Suntech</u> debtor had filed its chapter 15 case approximately three months after beginning its liquidation, which had been commenced in accordance with a settlement agreement with noteholders to withdraw an involuntary chapter 7 proceeding filed in New York and reorganize the company in the Cayman Islands.  <u>Suntech</u>, 520 B.R. at 405-10.  A contingent creditor, however, argued that the debtor's COMI was in China up until the Cayman liquidation, and that the actions taken upon commencement of that liquidation, which included changing the debtor's formal address, moving its principal offices, bringing its stock certificates and shareholder registries to the Cayman Islands, and centralizing management in the Cayman Islands, were an attempt to move COMI from China to the Cayman Islands.  <u>Id.</u> at 418.

84.    The <u>Suntech</u> Court found that these actions did not constitute COMI manipulation because they were "consistent with the [liquidators'] duties" and, accordingly, the liquidators "would have taken these actions even if they had never intended to file a chapter 15 case."  <u>Id.</u> at 419-20.  Further, it noted that the debtor and its largest creditor group in negotiations

45

deliberately had chosen the Cayman Islands as the forum most convenient to all parties. Id. at 418-19.

85.    The present case differs from Suntech in all relevant respects. Unlike the objection to recognition raised in Suntech, the OAS Group's objection is not premised solely on certain centralizing actions taken by the liquidators to assist in their proceedings; rather, the OAS Group asserts that the entire BVI liquidation proceeding was commenced by Aurelius and Alden to manipulate COMI for purposes of thwarting a chapter 15 case (and a plenary case it was intended to support) already filed. Therefore, whether the actions taken by the JPLs were completely consistent with their duties (which, as the evidence demonstrates, they were not) is not determinative. Alden and Aurelius were not fulfilling a duty when they petitioned to commence the BVI Provisional Liquidation. To the contrary, they sought to torpedo the OAS Finance Chapter 15 Petition, derail a centralized restructuring in Brazil and bolster their position in U.S. litigation unrelated, and in fact debilitative, to the restructuring process. Any actions taken by the JPLs in the course of their duties in the BVI Provisional Liquidation were the result of, if not part of, a coordinated attempt to replace existing, centralized proceedings with proceedings more favorable to Aurelius and Alden—a blatant example of manipulation.

86.    Additionally, Suntech featured a chapter 15 petition filed three months after liquidation proceedings had commenced in the Cayman Islands, making it unlikely that the liquidation proceeding was part of a calculated plan to gain control over related litigation (and indeed, no such allegations were made). The accelerated timeline in the present case, on the other hand, which this Court has already emphasized, see June 4 Hr'g Transcript at 32:23-24 (THE COURT: "all of this has erupted in a relatively short time."), is evidence of that very calculation. As is the timing of the liquidation application—Aurelius and Alden petitioned for

46

appointment of the JPLs just <u>one day</u> after commencement of the Brazilian Debtors Chapter 15

Cases.  In fact, Aurelius and Alden made clear to the BVI Court that they filed this request in

response to the Brazilian Debtors Chapter 15 Petitions.  Note of Ex Parte Hearing at 5 ("It is

important to explain . . . the . . . urgency [of commencing the BVI Provisional Liquidation].  This

is in large part is because of the chapter 15 filing . . . . [Aurelius and Alden] are concerned

because [Aurelius and Alden] are in New York, [the chapter 15] may be an attempt to stop

proceedings being brought in the BVI.")[14]  A copy of the Note of Ex Parte Hearing is attached

hereto as Exhibit "WW."

87.    Moreover, in <u>Suntech</u>, both the debtor and its liquidators supported the

reorganization proceedings in the Cayman Islands and the U.S., while the objecting party was a

former competitor and merely contingent claimholder of the debtor litigating against it in a

separate matter.  <u>Suntech</u>, 520 B.R. at 405.  The debtor and its noteholders chose the Cayman

Islands as the place most convenient to them for an orderly restructuring.  <u>Id.</u> at 418 ("The

Debtor was incorporated in the Cayman Islands and the Cayman Islands employed a predictable,

flexible and cost effective method for dealing with restructuring.").  Here, this case features a

competing chapter 15 case spearheaded by creditors openly seeking to disrupt orderly

---

[14]    Notably, Mr. Tavares did not seek any relief outside of the territorial jurisdiction of the United States in the Brazilian Debtors Chapter 15 Cases.  Nor could he, as this Court recognized on April 17, 2015.  April 17, 2015 Hr'g Transc. at 56:17-18 ("THE COURT: . . . any injunction would be limited to the territory of the United States.").

47

proceedings and to pursue litigation claims they have lodged in several different countries to gain

an advantage over other creditors—all in contravention of the stated purposes of chapter 15.  See

11 U.S.C. § 1501 ("The purpose of this chapter is . . . to provide . . . fair and efficient

administration of cross-border insolvencies that protects the interests of all creditors . . . .").  The

JPL Petition is designed to interrupt an orderly restructuring process already begun in Brazil and

to gain leverage in related litigation—not, as was the case in Suntech, to achieve an orderly

insolvency proceeding pursuant to a consensual settlement among the debtor and creditors

holding approximately half of the outstanding claims against it.  Suntech, 520 B.R. at

405.  In Suntech, the choice to proceed in the Cayman Islands, and to commence an auxiliary

chapter 15 proceeding, was made as the result of discussions between the debtor and its creditors

for the convenience and benefit of those parties—indeed, the chapter 15 petition itself was the

result of a settlement between the debtor and certain creditors.  Suntech, 520 B.R. at 410.  In

contrast, the BVI Provisional Liquidation is opposed by the entire OAS Group, as well as by

OAS Finance's own OAS Directors, and is being used as an offensive tool to disrupt existing

restructuring proceedings.

       88.     In short, given obvious attempts of Aurelius and Alden and the JPLs to

manipulate COMI through the commencement of the BVI liquidation, the Court should disregard

all recent developments in the BVI in conducting its COMI analysis for OAS Finance and find

that COMI remains in Brazil.

### iii.    The BVI Provisional Liquidation Has Not Shifted OAS Finance's COMI Away from Brazil

       89.     Even if the Court does not disregard recent developments in the BVI as

blatant attempts to manipulate COMI, OAS Finance's COMI has not shifted from Brazil.

Contrary to the JPLs' assertion that they have "divested the Directors of all authority over [OAS

48

Finance]," JPL Petition at ¶ 16, that "no individual or entity outside of the BVI . . . have [sic] any remaining authority to act on behalf of OAS Finance," JPL Petition at ¶ 46, and that they, the JPLs, "<u>are</u> OAS Finance," June 6 Hr'g Transcript at 7:3 (emphasis added), the OAS Directors retain meaningful power with respect to OAS Finance. Lowe Decl., ¶ 36. They have, under BVI law, sufficient authority to challenge on behalf of OAS Finance—and indeed are challenging, from Brazil—the merely <u>provisional</u> appointment of the JPLs.

90.     Under applicable BVI law, the OAS Directors retain the authority to challenge the appointment of the JPLs and actions taken by the JPLs since their appointment. Lowe Decl., ¶ 37. They further hold residuary authority to prosecute the Brazilian Bankruptcy Proceedings in respect of OAS Finance, to prosecute the OAS Finance Chapter 15 Petition, and to delegate the authority for both to Mr. Tavares as they see fit. <u>Id.</u> at ¶ 38.

91.     In accordance with this long-established common law, the OAS Directors continue to exercise authority to protect the interests of OAS Finance—and they do so from Brazil, as they have always done. The OAS Directors still reside and perform all duties related to OAS Finance in Brazil, and have mounted a vigorous defense of OAS Finance and OAS Investments before the BVI Court. They have filed the BVI Termination Application, the BVI Stay Application and the Variance Application in the BVI, as detailed above. These applications seek the termination of the BVI Provisional Liquidation and discharge of the JPLs, a stay on the powers of the JPLs and the recognition of, and extension of comity to, the Brazilian Bankruptcy Proceedings and the variance or rescission of the ex parte order granting the JPLs authority to commence this case. All strategy decisions and all directions related to the BVI defense have emanated from Brazil.

Americas 9352028

92.     Additionally, the OAS Directors continue to monitor and support the prosecution efforts of the OAS Group regarding OAS Finance's participation in the Brazilian Debtors Chapter 15 Cases, which Mr. Tavares, with the support of the OAS Group and the OAS Directors, continues to prosecute from Brazil.  Accordingly, while the question of the JPLs' authority with respect to OAS Finance is still emphatically in dispute, significant management, decision-making, and strategic activity concerning OAS Finance remains in Brazil.

93.     For all the reasons set forth above, the COMI of OAS Finance remains in Brazil—not in the BVI.  COMI has not shifted away from Brazil simply because opportunistic creditors were able to convince the BVI Court to appoint the JPLs on an interim basis.  The restructuring activities of OAS Finance in its main Brazilian proceeding continue to be managed and directed from the OAS Group's headquarters in São Paulo Brazil by the OAS Directors pursuant to their residuary authority.  Accordingly, the BVI Provisional Liquidation fails to meet the criteria of a foreign main proceeding set forth in the Bankruptcy Code, and the JPL Petition for recognition of such provisional liquidation should be denied.

**II.      The JPL Petition Violates the Stated Purpose of Chapter 15**

94.     The purpose of chapter 15 is to facilitate "cooperation between . . . courts of the United States and . . . courts . . . of foreign countries involved in cross-border insolvency cases . . . [as well as] fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested parties, including the debtor." 11 U.S.C. § 1501; see In re Daewoo Logistics Corp., 461 B.R. 175, 178 (Bankr. S.D.N.Y. 2011) (stating that chapter 15's "intended purpose is to promote cooperation between United States and foreign courts in the efficient administration of cross-border insolvencies") (internal citation omitted); In

50

re Oversight & Control Comm'n of Avanzit, S.A., 385 B.R. 525, 533 (Bankr. S.D.N.Y. 2008) (same).

95.    In stark contrast to the intended purpose of chapter 15, the JPL Petition is intended merely to further the efforts of Aurelius and Alden to disrupt coordinated international proceedings and frustrate, delay, and otherwise make less efficient the ongoing, orderly reorganization of OAS Finance and its affiliates in Brazil.  The JPLs were appointed at the request and act at the direction of Aurelius and Alden, creditors seeking a tactical advantage in ongoing U.S. Actions against OAS Finance which sought to grant them an advantage over other creditors.  See Alden Global Adfero BPI Fund, Ltd., et al. v. OAS Finance Ltd., et al., Index No. 650480/2015 (Sup. Ct. NY Cnty. filed Feb. 18, 2015); Aurelius Investment, LLC v. OAS Finance Ltd., et al., Index No. 650312/2015 (Sup. Ct. NY Cnty. filed Feb. 4, 2015).  Once in purported control of OAS Finance, the JPLs' first affirmative action in the United States was their unsuccessful attempt to withdraw OAS Finance from the Brazilian Debtors Chapter 15 Cases, a proceeding which Aurelius and Alden had already vociferously opposed.  See Notice of Withdrawal of Petition Commencing OAS Finance Limited Chapter 15 Case and Objection to Recognition of Purported Foreign Proceeding, Case No. 15-10937 [Docket No. 57]; Objection of Alden and Aurelius to Petition for Recognition, Case No. 15-10937 [Docket No. 60].



Americas 9352028



97.    Further evidence of the JPLs' suspect motivation lies in the history of

discovery requests submitted by Aurelius and Alden in the U.S. Actions, and those submitted by

the JPLs in the present case. As noted, after the failed attempt by Aurelius affiliate Huxley to

compel on an expedited schedule certain of OAS Finance's affiliates to produce documents

concerning the Contested Transactions in the Huxley Action, Aurelius attempted to use the

bankruptcy forum to compel productions of the same materials. See Noteholder's First Set of

Document Requests, Case No. 15-10937. Importantly, the JPLs requested the very same

documentation in their Rule 2004 Document Request. See Motion for Leave to Conduct

Discovery [Docket No. 21]. Such coordination is indicative of attempts by Aurelius and Alden,

through the JPLs, to leverage the chapter 15 process into a forum for launching discovery

requests already rejected in two separate U.S. proceedings concerning a dispute that should be

addressed by foreign courts. See June 6 Hr'g Transcript at 1:15-18 ("I kind of get the feeling

that this Court in the middle [sic] of what is essentially a discovery dispute between the BVI

liquidators and . . . the Brazilian debtors."). Indeed, the JPLs have openly admitted that getting

discovery against OAS Finance and certain of its affiliates is one of its purposes in filing the

present case. See Memo of Law at ¶ 5 ("Chapter 15 protection will (i) make available to the

52

Petitioners certain discovery powers . . . .") and ¶ 48 (referencing "discovery powers that will be available to the Petitioners through this Chapter 15 case").  As the Court correctly observed, these discovery requests are hardly relevant to the issues before it, see June 6 Hr'g Transcript at 22:20-22 ("None of this discovery relates to the issue that's . . . before me initially at least; that is recognition of the BVI provision [sic] as a . . . foreign main proceeding."), further suggesting the improper use of chapter 15 to fuel separate litigation.

98.    In addition to the suspect motives behind the JPL Petition, the consequence of recognition here would be to disrupt an orderly restructuring already well underway in Brazil, the severing of coordinated proceedings among affiliated entities, and the disregard of principles of comity.  As detailed exhaustively above, OAS Finance is part of the Brazil-controlled, -owned, and -centered OAS Group.  It functions only as a cog in the OAS Group wheel and has no independent function.  It is thus both logical and efficient that its restructuring proceed in Brazil as part and parcel of the larger restructuring of the OAS Group. As the Brazilian Bankruptcy Court explained:

> all the [Brazilian Debtors] act systemically and are members of the same economic group.  In this sense, the preservation of the corporate and economic benefits derived from a healthy business activity (which is the objective of this case) will be better achieved if the situation is confronted globally, by considering the companies as members of the same economic group, rather than individually.

Approval Order at 3329.  Segregating the case of OAS Finance from the cases of its affiliates will only breed inefficiency and unequal results in the form of parallel proceedings in different jurisdictions and under different laws—the very result chapter 15 seeks to avoid.  Indeed, the common-sense notion that the cases of affiliated debtors should proceed in the same forum is well-recognized.  See In re Raytech Corp., 222 B.R. 19, 24 (Bankr. D. Conn. 1998) ("There is no question that the [these affiliates] should be administered in the same district.  To rule otherwise

53

would invite not only the possibility of redundant litigation and inconsistent decisions, but also the attendant waste of resources and increased administrative expenses that would reduce the property available for distribution to creditors.").

       99.      Finally, recognition of the BVI Provisional Liquidation as a foreign main proceeding sends the message that the disregard of international principles of comity is rewarded in the U.S. bankruptcy courts. Approving the chapter 15 maneuvers attempted by Aurelius and Alden only draws a roadmap for future creditors seeking to derail the foreign proceedings of debtors with COMI outside their jurisdiction of incorporation. Accordingly, the Court should deny the JPL Petition, as to do otherwise would clearly undermine the stated purpose of chapter 15.

Americas 9352028

## CONCLUSION

WHEREFORE, OAS respectfully requests that the Court deny the JPL Petition.

Dated: New York, New York
June 21, 2015

WHITE & CASE LLP

By: */s/ John K. Cunningham*
Gregory M. Starner
Kimberly A. Haviv
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

– and –

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
John K. Cunningham
Richard S. Kebrdle (*pro hac vice* pending)

– and –

QUINN EMANUEL
URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Susheel Kirpalani
Michael Carlinsky
Benjamin Finestone

*Attorneys for OAS S.A*

Americas 9352028