**CHADBOURNE & PARKE LLP**
Counsel for the Joint Provisional Liquidators
1301 Avenue of the Americas
New York, New York 10019
(212) 408-5100
Howard Seife
Andrew Rosenblatt
Marc D. Ashley
Eric Daucher

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------ x
                                                             :
In re                                                        :
                                                             :
OAS FINANCE LIMITED,                                         :   In a Case Under Chapter 15
                                                             :   of the Bankruptcy Code
                                                             :
Debtor in a Foreign Proceeding.                              :   Case No. 15-11304
------------------------------------------------------------ x
```

**JOINT PROVISIONAL LIQUIDATORS'**
**REPLY TO OBJECTION TO RECOGNITION**

# TABLE OF CONTENTS

                                                                                    Page

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ................................................................................................... 3

    I.    OAS Finance Limited (in provisional liquidation) ................................. 3

    II.   Pre-Appointment Communications ........................................................ 5

    III.  Appointment of the Joint Provisional Liquidators ................................. 7

    IV.  Steps Taken in Furtherance of the Provisional Liquidation Order ......... 7

    V.   Filing of the Petition .......................................................................... 11

ARGUMENT ....................................................................................................... 13

    I.    Finance's Center of Main Interests is in the British Virgin Islands ...... 13

        A.   Finance's COMI is Determined as of the Date this
           Chapter 15 Case was Commenced ........................................... 14

        B.   The OAS Group has Not Rebutted the Presumption
           that Finance's COMI is in the BVI ........................................... 15

        C.   Objective, Readily Ascertainable Facts Confirm that
           Finance's COMI is in the BVI ................................................ 17

           i.    All Fairfield Factors Point to the BVI or Away from Brazil ........ 17

           ii.   Finance's COMI is Not in Brazil ................................................. 24

               (a)   The Objection Improperly Conflates
                    the OAS Group's Actions with Finance's Actions ........... 25

               (b)   The Directors Retain No Authority to Attempt to
                    Reorganize Finance in Brazil ........................................... 27

    II.   Finance's COMI was Not Manipulated, in Bad Faith or Otherwise .... 30

        A.   JPLs' Centralization of Control of Finance in the BVI was a Standard
           Practice Done in Accordance with the Provisional Liquidation Order ..... 30

B.    The Objection is a Poorly Disguised Attack on the BVI Court ................ 31

C.    The OAS Group's Outrageous Allegations that the JPLs
Act as Aurelius's Puppets are Patently False ........................................... 32

III.    Public Policy Supports Recognition of the BVI Proceeding ............................... 37

CONCLUSION .................................................................................................................... 39

## TABLE OF AUTHORITIES

Page(s)

**Cases**

In re ABC Learning Centres Ltd.,
   728 F.3d 301 (3d Cir. 2013).................................................................................................14

In re Bd. of Dirs. Hopewell Int'l Ins. Ltd.,
   238 B.R. 25 (Bankr. S.D.N.Y. 1999).........................................................................21, 28, 32

In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,
   374 B.R. 122 (Bankr. S.D.N.Y. 2007).................................................................................21

In re Betcorp Ltd.,
   400 B.R. 266 (Bankr. D. Nev. 2009).....................................................................................15

Bickerton v. Bozel S.A. (In re Bozel S.A.),
   434 B.R. 108 (Bankr. S.D.N.Y. 2010)..............................................................................14, 39

In re C.W. Mining Co.,
   636 F.3d 1257 (10th Cir. 2011).............................................................................................38

In re Cozumel Caribe, S.A. de C.V.,
   508 B.R. 330 (Bankr. S.D.N.Y. 2014)..............................................................................28, 32

Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet),
   737 F.3d 238 (2d Cir. 2013)..................................................................................................13

Edgar v. MITE Corp.,
   457 U.S. 624 (1982).............................................................................................................23

In re Gerova Fin. Grp., Ltd.,
   482 B.R. 86 (Bankr. S.D.N.Y. 2012).............................................................................28, 32, 38

In re Global Ocean Carriers Ltd.,
   251 B.R. 31 (Bankr. D. Del. 2000).......................................................................................25

In re Maudslay Sons & Field
   [1990] 1 Ch. 602 (Eng.).......................................................................................................13

In re Millard,
   501 B.R. 644 (Bankr. S.D.N.Y. 2013)..............................................................................14, 37

In re Millennium Global Emerging Credit Master Fund Ltd.,
   458 B.R. 63 (Bankr. S.D.N.Y. 2011)....................................................................................15

Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.),
   714 F.3d 127 (2d. Cir. 2013).............................................................................. *passim*

Object Design Inc. v. Object Design Australia Pty. Ltd.
   (1997) 77 FCR 60 (Austl.) ...........................................................................................28

In re Rede Energia S.A.,
   515 B.R. 69 (Bankr. S.D.N.Y. 2014) ..................................................................28, 32, 37

In re Suntech Power Holdings Co., Ltd.,
   520 B.R. 399 (Bankr. S.D.N.Y. 2014) ............................................................... *passim*

In re Tribune Co.,
   464 B.R. 126 (Bankr. D. Del. 2011) ...........................................................................25

**Statutes**

11 U.S.C. § 101(23) .......................................................................................................14

11 U.S.C. § 303 .............................................................................................................38

11 U.S.C. § 1501(a)(3)...................................................................................................38

11 U.S.C. § 1501(b)(1) ..................................................................................................39

11 U.S.C. § 1502(1).......................................................................................................25

11 U.S.C. § 1516(c)........................................................................................................15

11 U.S.C. § 1517(a) .......................................................................................................13

11 U.S.C. § 1525 ...........................................................................................................39

11 U.S.C. § 1526 ...........................................................................................................39

11 U.S.C. § 1527 ...........................................................................................................39

11 U.S.C. § 1530 ...........................................................................................................38

**Other Authorities**

H.R. Rep. No. 95-595 (1977)........................................................................................38

H.R. Rep. No. 109-31 (2005)........................................................................................25

S. Rep. No. 95-989 (1979) ...........................................................................................38

Marcus Allender Wide and Mark T. McDonald, in their capacities as the joint provisional

liquidators (the "JPLs") of OAS Finance Limited (in provisional liquidation) ("Finance")[1] and as

duly authorized foreign representatives as defined in section 101(24) of title 11 of the United

States Code (the "Bankruptcy Code"), through their United States counsel, Chadbourne & Parke

LLP, respectfully submit this reply (the "Reply") to the OAS Group's objection (the

"Objection") to the Official Form Petition filed under Chapter 15 of the Bankruptcy Code in the

above-captioned case and the accompanying Verified Petition pursuant to Chapter 15 of the

Bankruptcy Code (together, the "Petition").  In support hereof, the JPLs respectfully state as

follows:

## PRELIMINARY STATEMENT

1.    The Objection is long on invective, yet remarkably short on relevant argument.

As the OAS Group itself urged in the Tavares Chapter 15 Cases, obtaining Chapter 15

recognition of a foreign proceeding is a formulaic, "check-the-box" exercise.  Recognition is

mandatory where a petition in support of recognition meets the straightforward requirements of

Bankruptcy Code section 1517 and the foreign debtor has property in the United States.  The *sole*

exception is where recognition would be manifestly contrary to United States public policy—a

standard met in only the most extreme cases, and which the OAS Group could not and has not

even attempted to argue applies here.

2.    There is no dispute that: (a) the BVI Proceeding is a foreign proceeding; (b) the

JPLs are duly-authorized foreign representatives; (c) the Petition meets the procedural

requirements of Bankruptcy Code section 1515; or (d) Finance has property in the U.S. and is

---

[1]  All capitalized terms used but not defined herein shall have the meanings ascribed to such
terms in the Verified Petition Under Chapter 15 of the Bankruptcy Code for Recognition of a
Foreign Main Proceeding, and Requesting a Temporary Restraining Order, a Preliminary
Injunction, and Related Relief [Docket No. 2] (the "Verified Petition").

thus eligible to be a debtor.  The OAS Group's *sole* objection is that Finance's center of main interests ("COMI") should not be found to be in the BVI, either because it is in Brazil or because it is only in the BVI as a result of bad-faith manipulation.  Neither assertion has any merit.

3.      When the BVI Court appointed the JPLs, it explicitly transferred all power to act on behalf of Finance from Finance's Directors to the JPLs, leaving the Directors with only a narrow residual authority to challenge the provisional liquidation.  The BVI Court instructed the JPLs, as officers of the BVI Court, to assume control of Finance's assets, and protect those assets for the benefit of Finance's creditors.  The JPLs at all times have acted on the BVI Court's instructions and, in the course of protecting Finance's assets from the continuing interference of the Directors and Tavares, have fully centralized control of Finance in the BVI.  From an operational standpoint, this was a relatively straightforward process because Finance, as a special purpose offshore financing vehicle, had no ongoing business activities and minimal connections outside the BVI to begin with.

4.      Apparently furious at the BVI Court's temerity in ordering that Finance—a BVI Company whose credit documents made clear that it would be subject to BVI insolvency law and whose only significant asset is likewise governed by BVI law—be placed into provisional liquidation in the BVI, the OAS Group has accused all involved of nefariously conspiring to manipulate Finance's COMI.  These allegations are meritless.  If the OAS Group takes issue with the Provisional Liquidation Order, its remedy is to challenge that order in the BVI (which it is doing), not ask this Court to second-guess the BVI Court.  As for the JPLs' conduct, their comprehensive disclosure leaves no doubt that the JPLs have at all times acted in accordance with the Provisional Liquidation Order, to further the BVI Proceeding, and to advance the collective interests of Finance's creditors.  Their behavior is the antithesis of bad-faith COMI

manipulation.

5.      When stripped of artifice and bluster, the OAS Group's objection amounts to a single contention: that creditors commencing an involuntary insolvency proceeding against a company in its jurisdiction of incorporation is a bad-faith manipulation of COMI if the company's indirect equity holders would rather subject it to insolvency proceedings elsewhere. That proposition, which essentially indicts the BVI Court (which issued the Provisional Liquidation Order) and its officers in a conspiracy against Finance, its creditors and the OAS Group, is utterly bereft of legal support and must be rejected. Accordingly, the BVI Proceeding should be granted recognition under Chapter 15 as a foreign main proceeding.

## BACKGROUND

I.    **OAS Finance Limited (in provisional liquidation)**

6.      The OAS Group asserts that Finance, as an indirect wholly owned subsidiary of OAS S.A., was operationally and functionally centered at the OAS Group's headquarters in São Paulo, Brazil. (Objection at ¶ 8.) ███████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████ The issue in this case, however, is the COMI of *Finance*, not the COMI of the OAS Group.

7.      Finance was incorporated in the BVI on March 22, 2013 under company number 176299. (█████)[2]  Finance's registered agent is Trident Trust Company (B.V.I.) Limited ("Trident")—a BVI company—and its registered office is at Trident Chambers, P.O. Box 146 Road Town, Tortola, VG1110, BVI. (█████)  Finance's sole member is OAS Investments

---

[2]  Except as otherwise specified, all citations to "Ex." refer to the exhibits to the Reply Declaration of Andrew Rosenblatt, which is being filed contemporaneously herewith.

3

Limited (in provisional liquidation) ("<u>Investments</u>"), which is also a BVI company. (████; Ex. 4, JPL_0003868; Ex. 5, JPL_0004228.)

8.      Finance is a shell or "letterbox" company formed specifically to access capital markets *outside of Brazil* and raise money ██████████████████████████████ ██████. (Verified Petition ¶¶ 11, 15-16; Objection ¶ 73; ███████) Finance has no employees, operating business, officers, or physical office. (Verified Petition ¶¶ 15-16.) Finance's only activity was issuing the BVI Notes in the total principal amount of $900 million (Verified Petition ¶¶ 12-13), which occurred on April 25, 2013 (Ex. 4, JPL_0003743) and July 2, 2014. (Ex. 5, JPL_0004105.) The net proceeds of the BVI Notes were lent by Finance to Investments. (Verified Petition ¶ 13.) ██████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
█████████████████

9.      Noticeably absent from the approximately 10,000 pages of documents produced to the JPLs is any meaningful connection between Finance and Brazil during the relevant period.
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

4



10.    Finally, the BVI Notes offering memoranda and indentures contain explicit statements that creditors would reasonably rely on to conclude that Finance's COMI is in the BVI. For example, the offering memoranda contain lengthy discussions of risks regarding the enforceability of judgments in the BVI. (Ex. 4, JPL_0003749-50; Ex. 5, JPL_0004111-12.) Most tellingly, the BVI Notes Indentures explicitly contemplate that BVI law would govern insolvency proceedings for Finance. (Ex. 33, JPL_0002109; Ex.34, 2.)

## II.    Pre-Appointment Communications



[REDACTED]

13.    Nevertheless, the OAS Group demanded production of all communications concerning the appointment of the JPLs on the theory that such communications would show bad-faith COMI manipulation or other nefarious conduct.  (Hr'g Tr. 36: 13-25 (Bankr. S.D.N.Y. June 4, 2015).)  In response, the JPLs have produced over 5,500 pages of documents, including *all* communications between the JPLs and Aurelius, Alden, or their counsel.  Not a single such document even remotely supports the OAS Group's theory or reflects a plan or intention to manipulate COMI.  Nor is there evidence of bad faith on the part of the JPLs.  [REDACTED]

[REDACTED]

14.    In short, absent is any evidence to support the OAS Group's theory of a grand conspiracy to manipulate COMI and "torpedo" the Brazilian Proceeding.[3]  Rather the documents reflect absolutely standard interactions between proposed provisional liquidators and the creditors seeking their appointment, [REDACTED]

[REDACTED]

---

[3] The OAS Group repeatedly mischaracterizes e-mails as suggesting that the JPLs conspired with Aurelius in [REDACTED] in the BVI to "torpedo" the Tavares Chapter 15 Case regarding Finance.  (Objection ¶¶ 3, [REDACTED])  However, a [REDACTED] [REDACTED]  Furthermore, as discussed below, the OAS Group's challenges to the Provisional Liquidation Order should be brought in the BVI, not here.

III.    **Appointment of the Joint Provisional Liquidators**

15.     On April 16, 2015, Aurelius and Alden filed the application to appoint provisional

liquidators.  (Verified Petition ¶ 36.)   That same day, following a hearing to consider the

application, the BVI Court entered the Provisional Liquidation Order.[4]  (Provisional Liquidation

Order ¶ 1.)  ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

16.     The Provisional Liquidation Order charges the JPLs to act in the interests of

Finance's creditors and to protect Finance's assets.  (Provisional Liquidation Order ¶ 3.)  As this

Court previously observed, the Provisional Liquidation Order grants the JPLs broad authority to

meet those goals, including the exclusive power to take all appropriate steps in the Tavares

Chapter 15 Cases *and* the Brazilian Proceeding (and all related proceedings).   (Provisional

Liquidation Order ¶ 4(a) (all powers granted "to the exclusion of the powers of the directors of

the Company."); Hr'g Tr. 65:18-25, In re OAS S.A., No. 15-10937-smb (Bankr. S.D.N.Y. Apr.

17, 2015) (hereinafter, "Apr. 17 Tr.").)  All powers granted to the JPLs were specifically stripped

from the Directors.  (Provisional Liquidation Order ¶ 4.; ████████████████████████████

█████████)

IV.    **Steps Taken in Furtherance of the Provisional Liquidation Order**

17.     Following their appointment, the JPLs immediately began to take steps pursuant

to the Provisional Liquidation Order and in accordance with their duties and obligations as joint

provisional liquidators to inform parties of their appointment.  (████████████████ Verified

Petition ¶ 44.)  ████████████████████████████████████████████████████████████

---

[4]  Contemporaneously, the JPLs were also appointed as the joint provisional liquidators for
Investments.



18.    Because Tavares and his counsel failed to properly acknowledge the curtailment of their authority, the JPLs appeared through U.S. counsel at a hearing held on April 17 in the Tavares Chapter 15 Cases (the "April 17 Hearing"), to object to Tavares acting on behalf of Finance.    (Apr. 17 Tr. 37:3-13.)    Nevertheless, the JPLs acknowledged the conceptual desirability of the provisional injunctive relief sought by Tavares, and did not oppose the granting of such relief to the other debtors in the Tavares Chapter 15 Cases. (Id.)    Following the April 17 Hearing, this Court ultimately entered a limited stay, running through May 19, 2015, on terms that were negotiated among all the parties, including the JPLs.    (Order Granting Provisional Relief, In re OAS S.A., No. 15-10937-smb (Bankr. S.D.N.Y. Apr. 30, 2015), ECF No. 33.)

19.    Thereafter, the JPLs continued to take steps to implement the Provisional Liquidation Order and protect Finance's assets.    Because the JPLs understood that Finance's chief asset was a receivable, it was critical for them to develop a full understanding of that



receivable, and how it could be impaired by actions of the OAS Group. ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████

    20.    Additionally, the JPLs undertook extensive work to contact, inform, and liaise with Finance's creditors. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████ The JPLs also established a website, www.oasbvi.com, to reach additional creditors and provide them with information regarding the provisional liquidation.  (██████)

    21.    ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████



The JPLs also sought to prevent the OAS Group's improper interference with control of Finance by, among other things, identifying and terminating all outstanding powers of attorney issued on behalf of Finance (Verified Petition ¶ 46, Ex. I, Ex. L;                            ), again informing Tavares that he lacked authority to take any action on behalf of Finance (Verified Petition ¶ 48, Ex. K.), and, due to Tavares's continued contempt of the Provisional Liquidation Order, filing a notice with this Court indicating that the Tavares Chapter 15 Case for Finance could not proceed. (Notice of Withdrawal of Petition Commencing OAS Finance Limited Chapter 15 Case and Objection to Recognition of Foreign Proceeding, In re OAS S.A., No. 15-10937-smb (Bankr. S.D.N.Y. May 15, 2015), ECF No. 57.)

22.     Finally, the JPLs undertook a number of other standard provisional liquidation activities, including opening a BVI bank account for Finance                            and researching, drafting and submitting to the BVI Court written reports concerning Finance's affairs. (Verified Petition ¶ 55, Ex. N, Ex. O.)

23.

Indeed, as of the filing of the Second Report on May 12, 2015, the

JPLs had not yet determined whether they would commence this case.  (Verified Petition Ex. O.)

V.    **Filing of the Petition**

24.    On May 15, 2015, in accordance with the Provisional Liquidation Order, the JPLs

filed with the BVI Court an application for sanction to commence this Chapter 15 case seeking

recognition of the BVI Proceeding.  (Verified Petition ¶ 41.)  The BVI Court orally granted

sanction on May 15, 2015, and issued a written order to that effect on May 18, 2015.  (Verified

Petition ¶ 41, Ex. G.)

25.    With regard to the temporary restraining order, the OAS Group has distorted the

facts and characterized the then-imminent lapsing of the temporary restraining order in the

Tavares Chapter 15 Cases as an emergency of the JPLs' own making.  (Objection ¶ 44.)  Such

characterization could not be farther from the truth.

And indeed the risk was real as the temporary restraining order in

the Tavares Chapter 15 *did* lapse pursuant to its terms on May 19, 2015 at 5:00 p.m.  (Hr'g Tr.

186:20-187:7, In re OAS S.A., No. 15-10937-smb (Bankr. S.D.N.Y. May 19, 2015) (hereinafter, "May 19 Tr.").) As this Court observed at the hearing on May 19, 2015, this was a consequence of Tavares's actions and not the JPLs: "I remember you[, Mr. Cunningham,] telling me distinctly at the discovery conference that you would not be going forward on any relief other than recognition and that therefore would curtail the discovery. So I'm not going to continue the discretionary relief which terminates today." (May 19 Tr. 8:16-20.)

26.     The timing of the filing of this Chapter 15 case was no ploy or coincidence. It was filed on May 18, 2015, contemporaneously with a request for a temporary restraining order to ensure that there would be no lapse in protection for Finance's assets. Due to the decision of the JPLs to seek sanction from the BVI Court, file this Chapter 15 case and request a temporary restraining order, the JPLs were able to obtain from this Court a temporary restraining order (which remains in effect) protecting Finance from actions in the U.S. (Order Granting Provisional Relief [Docket No. 14]; Order Adjourning Hearings and Extending Provisional Relief [Docket No. 31]; Second Order Adjourning Hearings and Extending Provisional Relief [Docket No. 50].) Meanwhile, the assets of the other debtors in the Tavares Chapter 15 Cases continue to lack protection in the United States because the OAS Group has failed to file a motion for such relief (despite the Court's explicit statement that it could do so). (May 19 Tr. 187:5-7) The JPLs' successful protection of Finance's assets should be lauded, not criticized.[6]

27.     Finally, the OAS Group has characterized the JPLs' discovery requests as duplicative of the requests of Aurelius and Alden in the Tavares Chapter 15 Cases. (Objection



¶ 60.)   Once again, this could not be farther from the truth. ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████   The JPLs' discovery requests were not an attempt to further the request of Aurelius,

but rather were an additional step taken by the JPLs to carry out their duties and obligations to

investigate Finance's affairs and maintain the value of its assets.   That the JPLs are resolute in

seeking information regarding Finance is evidence that they take their duties seriously, and not

that they acted in bad faith.

## ARGUMENT

I.    **Finance's Center of Main Interests is in the British Virgin Islands**

28.    As the OAS Group correctly urged when pursuing the Tavares Chapter 15 Cases,

Chapter 15 recognition is a straightforward "check-the-box" exercise.   (Tavares Ch. 15 Reply

¶ 4).[7]  Section 1517 of the Bankruptcy Code imposes only three requirements for recognition:

- The foreign proceeding is a foreign main or foreign nonmain proceeding;

- The foreign representative is a person or body; and

- The petition for recognition meets the procedural requirements of Bankruptcy
  Code section 1515.

See 11 U.S.C. § 1517(a).   The only additional requirement, which is not in dispute in this case, is

that the foreign debtor meet the requirements of Bankruptcy Code section 109(a).   See

Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet), 737 F.3d 238, 247 (2d Cir.

2013).   Where, as here, those "formulaic" requirements are satisfied, Chapter 15 recognition is

---

[7]  See Petitioner's Omnibus Reply to Objections to Recognition, In re OAS S.A., No. 15-10937-smb (Bankr. S.D.N.Y. May 18, 2015), (the "Tavares Ch. 15 Reply"), ECF No. 64.

mandatory. <u>See</u>, <u>e.g.</u>, <u>In re Millard</u>, 501 B.R. 644, 653-54 (Bankr. S.D.N.Y. 2013) ("section

1517(a) imposes a mandatory requirement . . . for recognition when its requirements are met.");

<u>In re ABC Learning Centres Ltd.</u>, 728 F.3d 301, 306 (3d Cir. 2013) ("Mandatory recognition

when an insolvency proceeding meets the criteria fosters comity and predictability . . . .").

29.    The Objection contains a blizzard of outrageous and unfounded accusations

regarding the JPLs' motives, a seemingly unending stream of "facts" regarding parties *other* than

Finance and the JPLs, and too many distortions and outright falsehoods to fully catalogue. Yet

the Objection challenges the fulfillment of the "check-the-box" recognition process on only a

single point: the location of Finance's COMI.[8]    As demonstrated by the Petition and its

supporting documents, and the comprehensive discovery provided by the JPLs, as of the date that

this Chapter 15 case was commenced, Finance's COMI was in the BVI. Consequently, the BVI

Proceeding must be recognized as a foreign main proceeding.

A.    Finance's COMI is Determined as of the
     Date this Chapter 15 Case was Commenced

30.    A "debtor's COMI is determined as of the time of the filing of the Chapter 15

petition." <u>Morning Mist Holdings Ltd</u>. v. <u>Krys</u> (<u>In re Fairfield Sentry Ltd</u>.), 714 F.3d 127, 133

(2d. Cir. 2013). Indeed, the OAS Group made precisely this point when seeking recognition in

the Tavares Chapter 15 Cases. (Tavares Ch. 15 Reply ¶ 58 (citing <u>Fairfield</u>, 714 F.3d at 137).)

To guard against bad faith manipulation of COMI, a court may also consider events during "the

---

[8]  The OAS Group makes much of the fact that the BVI Proceeding is currently provisional in
nature.    However, the definition of foreign proceeding specifically encompasses interim
proceedings. <u>See</u> 11 U.S.C. § 101(23). Moreover, the Provisional Liquidation Order remains in
force in the BVI (Lowe Dep. 120:14-16) and fully enforceable in the U.S. notwithstanding the
Directors' pending challenges. <u>See</u> <u>Bickerton</u> v. <u>Bozel S.A.</u> (<u>In re Bozel S.A.</u>), 434 B.R. 108,
117-18 (Bankr. S.D.N.Y. 2010) ("As a matter of comity, unless and until the [order of the BVI
Court] is set aside by the [BVI Court] or reversed by a higher BVI court, the Court will
recognize the [order of the BVI Court] as it is issued by a court of a competent jurisdiction.").

time period between the initiation of the foreign liquidation proceeding and the filing of the

Chapter 15 petition." <u>Fairfield</u>, 714 F.3d at 133.  However, "there is no support for [a]

contention that a debtor's entire operational history should be considered." <u>Id.</u> at 138; <u>see also</u> <u>In</u>

<u>re Betcorp Ltd.</u>, 400 B.R. 266, 291 (Bankr. D. Nev. 2009) ("Giving consideration to a debtor's

operational history increases the possibility of competing main proceedings, thus defeating the

purpose of using the COMI construct.").  Here, Finance's COMI was certainly in the BVI as of

the date of the Chapter 15 filing, and was not manipulated.

      B.     The OAS Group has Not Rebutted the
               <u>Presumption that Finance's COMI is in the BVI</u>

    31.    A debtor's COMI is presumed to be located at its registered office. <u>See</u> 11 U.S.C.

§ 1516(c); <u>see also</u> <u>Fairfield</u>, 714 F.3d at 133 (finding that the Bankruptcy Code establishes a

presumption that the COMI is at the debtor's registered office); <u>In re Suntech Power Holdings</u>

<u>Co., Ltd.</u>, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) ("<u>Suntech</u>").  As set forth above, Finance's

registered office is in the BVI, where it is also incorporated.  (Ex. 1-2.)  Accordingly, Finance's

COMI is presumptively in the BVI, where the BVI Proceeding is pending.  That "presumption

imposes on the party against whom it is directed the burden of going forward with evidence to

rebut or meet the presumption . . . ." <u>In re Millennium Global Emerging Credit Master Fund</u>

<u>Ltd.</u>, 458 B.R. 63, 76 (Bankr. S.D.N.Y. 2011) (citing Fed. R. Evid. 301).  To rebut the

presumption, a party must proffer evidence that "could support a reasonable jury finding of 'the

nonexistence of the presumed fact.'" <u>Id.</u> (quoting <u>ITC Ltd.</u> v. <u>Punchgini, Inc.</u>, 482 F.3d 135, 149

(2d Cir.2007)).  Thus, a party "seeking to rebut a statutory presumption must present 'enough

evidence . . . to withstand a motion for summary judgment . . . ." <u>Id.</u> (quoting <u>McCann</u> v.

<u>Newman Irrevocable Trust</u>, 458 F.3d 281, 288 (3d Cir. 2006)).

    32.    The OAS Group has not rebutted the statutory presumption that Finance's COMI

15

is in the BVI.  The OAS Group has failed to proffer evidence that could support a reasonable finding that Finance's COMI is not in the BVI.  Instead, the OAS Group has simply asserted, without being able to identify specific conduct, that all operations and management and other activities of Finance have been directed exclusively from Brazil (Objection ¶ 72; ███████████ ████████████)  The OAS Group further asserts, also without citation or support, that "all decisions concerning [Finance's] sole business activities (the [BVI] Notes) were made exclusively in Brazil."  (Objection ¶ 73.)  These self-serving assertions fail to rebut the presumption that Finance's COMI is in BVI for numerous reasons.  First, the OAS Group's suggestion that prior to the JPLs' appointment there were ever operations, management and other decisions made with respect to Finance beyond issuance of the BVI Notes directly contradicts its admission that "Finance operated strictly as a shell or 'letterbox' company for the OAS Group, with the sole function of financing and issuing the Notes."  (Objection ¶ 73).  The reason that the OAS Group is unable to provide evidence or even concrete examples of such decisions or "other activities" taking place in Brazil is ████████████████████████████ ████████████████████████████████████████████

33.     Second, the OAS Group's assertions are wholly unsupported.  ███████████ ████████████████████████████████████████████ ████████████████████████████████████

34.     Third, the issuance of the BVI Notes and the subsequent distribution of the proceeds of those issuances to Investments (another BVI company) occurred in 2013 and 2014. (Ex. 4, JPL_0003743; Ex. 5, JPL_0004105; ████████████████████████████ ████████████████████████ Verified Petition ¶ 13.)  The actions cited by the OAS Group occurred almost a full year before the commencement of the BVI Proceeding.

16

Yet the Second Circuit could not have been more clear that "there is no support for [a] contention that a debtor's entire operational history should be considered." Fairfield, 714 F.3d at 137. At most, the Court may consider events between the commencement of the BVI Proceeding and the Petition Date. See id. at 133. The OAS Group's purported facts fall well outside even this expanded time period that the Second Circuit has declared relevant in the face of allegations of bad-faith COMI manipulation. See id. at 138. Thus, the OAS Group has not produced evidence that could support a reasonable finding that Finance's COMI is not in the BVI.

35.    Finally, the OAS Group contends that the Directors' purported ongoing involvement in the Brazilian Proceedings requires a finding that Finance's COMI is in Brazil. (Objection ¶ 74.) This assertion shares one of the faults identified above: there is no evidence that anyone (other than the JPLs) with authority to act on behalf of *Finance*—as opposed to other members of the OAS Group—is involved in the Brazilian Proceeding. As discussed in greater detail below, the BVI Court expressly divested the Directors of all authority to take any step in the Brazilian Proceeding or any related proceedings. (Provisional Liquidation Order ¶ 4(a).) Consequently, even if the OAS Group could show that the Directors are participating in negotiations surrounding the Brazilian Proceedings, they are certainly not doing so as directors of Finance. For all of these reasons, the OAS Group has failed to rebut the presumption that Finance's COMI is in the BVI.

C.    Objective, Readily Ascertainable Facts
Confirm that Finance's COMI is in the BVI

i.    *All Fairfield Factors Point to the BVI or Away from Brazil*

36.    Even if the OAS Group could overcome the presumption that Finance's COMI is located in the BVI, readily ascertainable and objective facts establish that Finance's COMI is in

17

the BVI. "The factors that a court may consider in this analysis are not limited and may include the debtor's liquidation activities." Fairfield, 714 F.3d at 138; see also Suntech, 520 B.R. at 416 (citing Fairfield, 714 F.3d at 137) ("COMI analysis permits consideration of any relevant activities, including liquidation activities and administrative functions."). In evaluating a foreign debtor's COMI, a court may consider, among other things, the location of the debtor's headquarters, managers, primary assets, and creditors, as well as the jurisdiction whose law would apply to most disputes. Fairfield, at 137 (quoting In re SPhinX, Ltd., 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)). Every one of these factors either points strongly to the BVI, or indicates a jurisdiction other than Brazil.

37.    As an initial matter, more than a month prior to the Petition Date, the BVI Court appointed the JPLs as Finance's joint provisional liquidators. (Provisional Liquidation Order ¶ 1.) In so doing, the BVI Court instructed the JPLs to, among other things, take possession of Finance's assets and records and maintain the value of those assets. (Provisional Liquidation Order ¶¶ 3-4.) Immediately upon their appointment and consistent with the BVI Court's directions, the JPLs asserted their control over Finance's affairs and centralized control of the company in the BVI. As previously set forth in the Verified Petition—and unrebutted by the OAS Group—actions taken by the JPLs as of the Petition Date included:

- Promptly and repeatedly informing the Directors of the suspension of their powers (Verified Petition ¶ 45; ▓▓▓▓▓▓);

- Promptly and repeatedly seeking to obtain Finance's books and records (Verified Petition ¶ 45; ▓▓▓▓▓▓);

- Identifying a potential Finance bank account and informing the relevant bank of the appointment of the JPLs and their resulting right to control the account (Verified Petition ¶ 45; ▓▓▓▓▓▓▓▓▓▓▓▓);

- Retaining counsel in the BVI, the United States and Brazil to protect and advance Finance's interests (Verified Petition ¶ 46; ▓▓▓▓▓▓▓▓▓▓▓);

- Terminating outstanding powers of attorney, including of the Directors (Verified Petition ¶ 46, Ex. I; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮);

- Informing Tavares that he was divested of authority, instructing him to refrain from further action on behalf of Finance, and formally terminating his power of attorney (Verified Petition ¶¶ 47-49, Ex. K, Ex. L.; ▮▮▮▮▮);

- Informing Finance's creditors of the JPLs' appointment and consulting with all of Finance's significant stakeholders (Verified Petition ¶¶ 50-51; ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮);

- Establishing a website (http://www.oasbvi.com) to provide information to creditors regarding Finance and the BVI Proceeding and posting, among other things, certain reports to creditors at that address (Verified Petition ¶ 52; ▮▮▮▮▮);

- Soliciting expressions of interest in participating in a BVI-based *ad hoc* creditor committee for Finance (Verified Petition ¶ 53; ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮);

- Investigating the affairs of Finance, submitting two separate reports regarding those investigations to the BVI Court and posting those reports to the provisional liquidation website (Verified Petition ¶ 55, Ex. N, Ex. O);[9]

- Establishing a bank account in the name of Finance in the BVI, to be used to hold recoveries and make distributions to creditors once the estate begins to recover assets (Verified Petition ¶ 56; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮);

- Investigating potential claims Finance may possess (Verified Petition ¶ 56; ▮▮▮▮▮▮▮▮▮▮▮▮);

- Investigating the tax implications of the BVI Proceeding (Verified Petition ¶ 56; ▮▮▮▮▮▮▮▮▮▮);

- Instructing Brazilian counsel to file an application to effectively remove Finance as a debtor in the Brazilian Proceeding and instead allow Finance to participate as a creditor (Verified Petition ¶ 58, Ex. P; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮);

- Instructing Brazilian counsel to object to the list of creditors filed in the Brazilian Proceedings, which improperly failed to treat Finance as a creditor (Verified Petition ¶ 59); and

---

[9] Since the Petition Date, a third report has been completed, submitted to the BVI Court and posted to the website. (Ex. 61.)

- Participating in the Tavares Chapter 15 Cases and ultimately filing a notice of withdrawal of the petition commencing the Tavares Chapter 15 Case pertaining to Finance. (Verified Petition ¶¶ 60-62.)

████████████████████████████████████████████████████████████

████████████████████████████ It is undisputed that the JPLs performed each of these actions from the BVI and pursuant to the authority vested in them by order of the BVI Court. (Provisional Liquidation Order ¶¶ 3-4; ████████████████████████████) These facts alone easily demonstrate that Finance's COMI was in the BVI at all relevant times. See Fairfield, 714 F.3d at 138.

38.     Indeed, the facts in this case compare very favorably with the facts in Suntech, in which a company actually shifted its COMI (which is not required here) to an offshore jurisdiction solely as a result of the actions of provisional liquidators. There, COMI was found to have shifted to the Cayman Islands despite the fact that the company had a physical headquarters and was being actively managed from China until immediately prior to the commencement of the provisional liquidation. See Suntech 520 B.R. at 417-20. Moreover, that COMI shift was accomplished despite the fact that, under Cayman Islands law and the facts of that case, Suntech's directors retained certain authority to manage the company's day-to-day affairs principally from China. Suntech, 520 B.R. at 417.

39.     In this instance, Finance was a pure shell company that never had a headquarters prior to the JPLs' appointment.   (Verified Petition ¶ 16.)   Now Finance is effectively headquartered at the JPLs' offices in the BVI.   (Verified Petition ¶ 43.)   ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ Now Finance is actively managed from the BVI by the JPLs.   (Verified Petition ¶ 43; ████████████████)   Moreover, here, unlike in Suntech, and as explained in greater detail below, the Directors retain no authority to manage the

20

day-to-day affairs of Finance, and possess only a residual power to challenge the JPLs'

appointment. (Provisional Liquidation Order ¶ 4; ███████████████; Thorp Dec. ¶¶ 6-7, 22.)

In short, there was far less to bind Finance to any jurisdiction outside the BVI than there was to

bind <u>Suntech</u> to China, and what few connections there were have been severed in the ordinary

course of the JPLs' provisional liquidation activities.  Consequently, JPLs' liquidation activities

mandate a finding that Finance's COMI is in the BVI.[10]

40.    The other factors cited by <u>Fairfield</u> as being worthy of consideration in the COMI

analysis either likewise point to the BVI, or otherwise strongly point away from Brazil.  It is

undisputed that Finance's primary asset is an approximately $943 million receivable from

Investments.[11]    Investments is a BVI company.    (Verified Petition ¶ 9; Ex. 3; Ex. 4,

JPL_0003868; Ex. 5, JPL_0004228.)  Consequently, as a matter of U.S. law, that receivable is

located in the BVI.  See <u>In re Bd. of Dirs. Hopewell Int'l Ins. Ltd.</u>, 238 B.R. 25, 48 (Bankr.

S.D.N.Y. 1999), <u>aff'd</u>, 275 B.R. 699 (S.D.N.Y. 2002) ("<u>Hopewell</u>") ("The location of intangible

personal property interests such as accounts receivable is the situs of the account debtor or the

party whose obligation it is to perform under the contract.").  Common law applicable in the BVI

yields the same result. <u>See, e.g.,</u> <u>In re Maudslay Sons & Field</u> [1990] 1 Ch. 602 (Eng.).

---

[10]    Throughout the Objection, the OAS Group inappropriately urges this Court to rely on the
bankruptcy court decision in <u>In re Bear Stearns High-Grade Structured Credit Strategies Master
Fund, Ltd.</u>, 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007) for the proposition that Finance's COMI
is not in the BVI, where its registered office is located.  In <u>Bear Stearns</u>, however, the court (a)
did not consider the location of the debtor's liquidation activities and (b) relied on the fact that
the debtor's assets and operations lay in the U.S. rather than in the jurisdiction of its
incorporation.  <u>Id.</u> at 130.    Properly understood, <u>Bear Stearns</u> supports recognition in this
instance because it rejected the location of the debtor's directors as being particularly meaningful
as to COMI. <u>Id.</u> at 130 n.9.

[11]    The nature of the receivable, but not its existence or approximate amount, appears to be
disputed by the OAS Group.  JPLs believe that the receivable is a loan, ████████████████████
███████████████████████████████████████████████████████████████

41.    The next factor—location of creditors—does not clearly point to the BVI, but does point strongly away from Brazil.  As previously noted by the JPLs, ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮, the sole purpose of Finance was to raise funds outside of Brazil, in the international capital markets.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮    Indeed, the purpose of incorporating Finance in the BVI was to raise funds that could not legally be raised in Brazil.  (Ex. 4, JPL_0003747; Ex. 5, JPL_0004109.)   Consequently, the offering memoranda made crystal clear that the BVI Notes were to be sold and traded exclusively outside of Brazil, and were not to be sold to members of the Brazilian public:

- "The notes have not been and will not be issued nor placed, distributed, offered or negotiated in the Brazilian capital markets."  (Ex. 4, JPL_0003745; Ex. 5, JPL_0004108.)

- "The issuance of the notes and the notes have not been nor will be registered with the Brazilian Securities Commission (Comissão de Valores Mobiliários), or the CVM." (Ex. 4, JPL_0003745; Ex. 5, JPL_0004198.)

- "Any public offering or distribution, as defined under Brazilian laws and regulations, of the notes in Brazil is not legal . . . ." (Ex. 4, JPL_0003745; Ex. 5, JPL_0004108.)

- "Documents relating to the offering of the notes, as well as information contained therein, may not be supplied to the public in Brazil (as the offering of the notes is not a public offering of securities in Brazil), nor be used in connection with any offer for subscription or sale of the notes to the public in Brazil." (Ex. 4, JPL_0003745; Ex. 5, JPL_0004108.)

- "The notes will not be offered or sold in Brazil, except in circumstances which do not constitute a public offering, placement, distribution or trading of securities in the Brazilian capital markets regulated by Brazilian legislation." (Ex. 4, JPL_0003745; Ex. 5, JPL_0004108.)

- **"THE NOTES (AND RELATED GUARANTEES) ARE NOT BEING OFFERED IN BRAZIL."** (Ex. 4, JPL_0003746; Ex. 5, JPL_0004109) (emphasis in original).

42.    Accordingly, while the JPLs continue to possess imperfect information regarding the location of individual beneficial holders of the BVI Notes, all available evidence strongly

22

indicates that creditors are not centered in Brazil. Moreover, Deutsche Bank Trust Company Americas, a non-Brazilian entity, acts as the BVI Notes Trustee. (Ex. 4, JPL_0003775; Ex. 5, JPL_0004137.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Consequently, even if the location of creditors does not strongly point towards the BVI, it strongly indicates that Brazil is *not* Finance's COMI.

43.     The final factor—the jurisdiction whose law would apply to most disputes— points first to the BVI, secondarily to New York, and not at all to Brazil. Because Finance is a BVI-incorporated company, it is governed by the general provisions of the BVI Business Companies Act 2004 (and other BVI legislation). (Thorp. Dec. ¶ 30.) Indeed, even in a suit commenced in New York (or elsewhere in the United States), disputes regarding the powers of Finance, the powers of the Directors, or the relationship between Finance and its Directors would be governed by BVI law pursuant to the internal affairs doctrine. See Edgar v. MITE Corp., 457 U.S. 624, 645 (1982). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ New York law governs most issues with respect to the BVI Notes. (Ex. 4, JPL_0003905; Ex. 5, JPL_0004256.) However, certain issues related to the BVI Notes are also governed by BVI law. For example, if there is a discrepancy between the register of BVI Notes holders kept by the registrar, and the corresponding register kept by Finance, the register kept by Finance "shall prevail for BVI law purposes." (Ex. 33, JPL_0002132; Ex. 34, 17.)

44.     Most relevant in this context, however, the BVI Indentures specifically provide

23

that "'Bankruptcy Law' means the Brazilian Bankruptcy law *or any similar BVI law (with*

*respect to the Issuer)* or any similar foreign law, as applicable, for the relief of debtors." (Ex.

33, JPL_0002109 (emphasis added); Ex. 34, 2 (emphasis added).) "'Issuer' means OAS Finance

Limited . . . ." (Ex. 33, JPL_0002118; Ex. 34, 9.) Consequently, there can be no doubt that all

parties—whether creditors or the OAS Group—were on full notice that BVI Law was expected

to govern any dispute concerning the bankruptcy or insolvency of Finance. Indeed, the language

of the BVI Indentures makes clear that Finance is unlike the OAS Group specifically with

respect to the likely location of any bankruptcy proceedings. The OAS Group's reliance on

language in the offering memoranda addressing the possibility that the OAS Group might

become subject to bankruptcy proceedings in Brazil (Objection ¶ 41), while utterly ignoring the

fact that the indentures themselves make clear that insolvency proceedings for Finance would

instead likely occur in the BVI, is staggeringly disingenuous.

      45.    In sum, the JPLs' enormous efforts since their appointment, undertaken pursuant

to orders of the BVI Court, are more than sufficient to establish that Finance's COMI is in the

BVI under the test set forth in Fairfield and applied in Suntech. Moreover, the other factors

identified in Fairfield as being potentially relevant to a foreign debtor's COMI—location of

primary assets (BVI), location of creditors (outside of Brazil), and law governing most disputes

(BVI)—cement the case that Finance's COMI is in the BVI, regardless of where the COMI of

other members of the OAS Group might be. Indeed, these factors pointed to Finance's COMI

being in the BVI, and outside Brazil, since the moment the BVI Notes were issued and the

proceeds of that issuance were loaned on to Investments.

      ii.    *Finance's COMI is Not in Brazil*

      46.    Despite overwhelming evidence that Finance's COMI is in the BVI, the OAS

Group would have this Court believe that Finance's COMI is in Brazil—███████████████

24

████████████████████████████████████████████████████████████████

████████████████████    To that end, the OAS Group deploys a two-part gambit: (1) conflate

Finance with the wider OAS Group and (2) ignore the plain terms of the Provisional Liquidation

Orders in an effort to convince the Court that the Directors retain sweeping power over Finance.

Neither approach has any merit.

(a)    The Objection Improperly Conflates the OAS<br>Group's Actions with Finance's Actions

47.    The Bankruptcy Code's requirements are to be evaluated on an individual debtor

basis.  See In re Tribune Co., 464 B.R. 126, 183 (Bankr. D. Del. 2011).  Eligibility to be a

Chapter 15 debtor is therefore evaluated based on the attributes of the individual debtor, not the

attributes of a group of companies of which a debtor happens to be a member.  See, e.g., In In re

Global Ocean Carriers Ltd., 251 B.R. 31, 37 (Bankr. D. Del. 2000) (citing Bank of Am. v. World

of English, 23 B.R. 1015, 1019-20 (N.D. Ga. 1982)) ("The test [for eligibility] must be applied to

each debtor.").  Indeed, in the context of Chapter 15, the only relevant debtor is the debtor that is

subject to the foreign proceeding—here the BVI Proceeding.  See 11 U.S.C. § 1502(1); H.R.

Rep. No. 109-31, at 107 (2005) (debtor, as used in Chapter 15, means "the same debtor as in the

foreign proceeding.").

48.    Although the OAS Group does not dispute that only Finance's COMI is relevant

here, it nevertheless repeatedly attempts to distract the Court with references to other members of

the OAS Group.[12]  For example, the OAS Group suggests that Finance's COMI is in Brazil

because the offering memoranda for the BVI Notes states that the *OAS Group* is principally

---

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████

25

located in Brazil. (Objection ¶ 75.) While it is true that certain members of the OAS Group are Brazil-based, that fact says nothing about Finance. With equally clumsy sleight-of-hand, the OAS Group notes that the first page of the offering memoranda for the BVI Notes states that the Guarantors are incorporated in Brazil. (Id.) The OAS Group ignores that the cover pages of the BVI Notes offering memoranda *also* state—above the statements regarding the Guarantors—that **Finance** is "incorporated under the laws of the British Virgin Islands" (Ex. 4, JPL_0003743) or is "a business company incorporated under the laws of the British Virgin Islands." (Ex. 5, JPL_0004105.) Likewise, the OAS Group draws the Court's attention to the risk factors portion of the offering memoranda, which identify a potential Brazilian bankruptcy of the wider OAS Group as a significant risk factor. (Objection ¶ 76.) Yet amazingly, the OAS Group fails to acknowledge that the indentures themselves—when discussing Finance specifically rather than the OAS Group more broadly—state that applicable bankruptcy law would likely be BVI insolvency law. (Ex. 33, JPL_0002109; Ex. 34, 2). In short, every COMI inference that the OAS Group asks this Court to draw by looking at the OAS Group is easily refuted merely by examining the facts as they pertain to Finance, the only relevant entity.

49.    Nor is the OAS Group's repeated reference to the fact that Aurelius delivered a notice of acceleration with respect to certain of the BVI Notes to the OAS Group's headquarters in Brazil—rather than to Finance *via* Trident in the BVI—relevant to COMI. It merely shows that Aurelius can read the relevant BVI Indenture, which requires that notices be sent to OAS S.A. (not Finance), with copies to Investimentos and Construtora. (Ex. 33, JPL_0002193.) That under the BVI Indentures notices are not even to be sent to Finance further demonstrates that, prior to the JPLs' appointment, **nobody** was meaningfully managing Finance. Indeed, Aurelius's notice is not addressed to any director of Finance. (Ex. 65; ██████████████████) In any

event, that notice was sent on February 3, 2015 (Objection ¶ 77), well prior to the time period for evaluating COMI, and is therefore irrelevant.  See Fairfield, 714 F.3d at 138.

>           (b)     The Directors Retain No Authority to
>                   Attempt to Reorganize Finance in Brazil

50.     Remarkably, the OAS Group argues that Finance's COMI is in Brazil because the Directors are purportedly engaged in the Brazilian Proceedings.  (Objection ¶¶ 89-93.)  That contention is meritless.  The JPLs' appointment expressly divested the Directors of all authority to manage Finance, leaving them with residual authority only to challenge the JPLs' appointment in the BVI.  (Thorp Dec. ¶ 31.; Provisional Liquidation Order ¶¶ 3-4.)  In response, the OAS Group relies on the declaration of Thomas Lowe, an English Queen's Counsel, for the proposition that the Directors retain power to prosecute the Brazilian Proceedings despite the existence of the BVI Proceeding (Objection ¶¶ 89-91.)   The Lowe Declaration does not withstand even the barest scrutiny.  First, Lowe's contention that the Directors should have been permitted to retain power to prosecute the Brazilian Proceeding on behalf of Finance is entirely a theoretical exercise in English and Australian law, rather than BVI law.  (Lowe Dec. ¶¶ 21-26. 34-38.)  Lowe completely fails to address the terms of the governing Provisional Liquidation Order that was *actually* entered in this case.  In particular, that order explicitly provides that the JPLs' powers "include the power to . . . take any appropriate step in judicial recovery proceedings or any related proceedings in Brazil to which the Company is a party . . . *to the exclusion of the powers of the directors of the Company*."  (Provisional Liquidation Order ¶ 4(a) (emphasis added).)  Indeed, the power to act on behalf of Finance with respect to the Brazilian Proceeding (and any related proceedings in Brazil) is the first specifically enumerated power that the Provisional Liquidation Order strips from the Directors and transfers to the JPLs.  (Id.)  This makes perfect sense—it would have been entirely ineffective for the BVI Court to

strip the Directors of virtually all power to act on behalf of Finance, save for the peculiar exception of the power to ignore the BVI Court's rulings and proceed with a contradictory insolvency proceeding in a different jurisdiction.

51.    Accordingly, the Lowe Declaration is nothing more than an assertion that the Provisional Liquidation Order was wrongly issued.    But this Court has consistently held that it does not second guess or act as a "super appellate court" for decisions reached by foreign tribunals.   See In re Cozumel Caribe, S.A. de C.V., 508 B.R. 330, 337 (Bankr. S.D.N.Y. 2014); In re Rede Energia S.A., 515 B.R. 69, 100 (Bankr. S.D.N.Y. 2014); In re Gerova Fin. Grp., Ltd., 482 B.R. 86, 93 (Bankr. S.D.N.Y. 2012); Hopewell, 238 B.R. at 58.   If the OAS Group wishes to challenge the Provisional Liquidation Order, it is free to do so in the BVI Court.   Indeed, the OAS Group is raising such challenges in the BVI Court, thus far without success.   (Verified Petition ¶¶ 63-66; ████████████)

52.    Second, none of the cases cited in the Lowe Declaration stand for the proposition that directors of a company subject to a provisional liquidation order retain any power to pursue alternative restructurings in different jurisdictions.   Rather, as explained in detail by Andrew Thorp, each of the cases stands for the unremarkable proposition that, in certain circumstances, directors may apply to commence alternative insolvency proceedings in lieu of liquidation in the jurisdiction in which the provisional liquidation is pending.   (Supp. Thorp Dec. ¶¶ 15-19, 24-26.) This power is nothing more than an aspect of such directors' right to challenge a provisional liquidation order, as the acceptance of such an application would generally result in the discharge of the provisional liquidators.   See, e.g., Object Design Inc. v. Object Design Australia Pty. Ltd., (1997) 77 FCR 60 (Austl.).   None of the cases suggest that directors are free to circumvent provisional liquidation proceedings by pursuing in a different jurisdiction an antithetical

restructuring designed to moot the provisional liquidation.

53.     Third, the Australian cases relied upon by the OAS Group—which Mr. Lowe

suggests would be given the "highest respect" by the BVI Court (Lowe Dec. ¶ 12)—are no

longer valid even in Australia. (Supp. Thorp Dec. ¶¶ 20-21.) At the time those cases were

decided, Australian law permitted application for the appointment of an administrator while a

company was in provisional liquidation, but not once full liquidation proceedings were

underway. (Supp. Thorp Dec. ¶¶ 20-21.) However, the relevant Australian statutes were

subsequently amended, and now specifically preclude appointment of an administrator "if a

person holds an appointment as liquidator, or provisional liquidator, of the company." (Supp.

Thorp Dec. ¶ 21 (quoting Australian Corporations Act 2001 (Cth) § 436A(2)).) Thus, the cases

relied upon by Lowe are no longer persuasive even in their home jurisdiction.[13]

54.     Finally, even if everything said in the Lowe Declaration were correct—which it is

not—and even if this Court were to overrule or second guess the Provisional Liquidation

Order—which it cannot and should not—the OAS Group has failed to show that the Directors

are purporting to do anything of consequence on behalf of Finance in Brazil. To the contrary,

[blacked out text]

[blacked out text]

[blacked out text]

[blacked out text] Because there are no

---

[13] Lowe makes much of the fact that the Provisional Liquidation Order was entered on an *ex parte* basis. There is nothing remarkable about a provisional liquidation being commenced through an *ex parte* application. [blacked out text]

[blacked out text]

facts that are "readily ascertainable" by third parties that Finance is being controlled from Brazil, and certainly no facts that outweigh the very substantial efforts of the JPLs' to make creditors and other stakeholders aware of their appointment, Finance's COMI cannot be in Brazil.

## II.    Finance's COMI was Not Manipulated, in Bad Faith or Otherwise

55.    Left with no basis to challenge the fact that the JPLs have been actively managing Finance's affairs from the BVI, and no evidence that any management activities took place in Brazil during the relevant period, the OAS Group resorts to flinging mud. ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

### A.    JPLs' Centralization of Control of Finance in the BVI was a
### Standard Practice Done in Accordance with the Provisional Liquidation Order

56.    JPLs' actions, taken pursuant to their duties and obligations under the Provisional Liquidation Order and BVI law, were not a bad-faith manipulation of Finance's COMI.  As this Court has made clear, a foreign representative does not manipulate COMI in bad faith by taking actions consistent with their duties as provisional liquidators.  See Suntech, 520 B.R. at 404 ("[T]hey did not manipulate the Debtor's COMI; the activities they undertook that had the effect of establishing the Debtor's COMI in the Cayman Islands were consistent with their duties as provisional liquidators in the Foreign Proceeding.").  The Second Circuit would surely not have authorized lower courts to consider liquidation activities when analyzing COMI if any change in COMI as a result of such activities would necessarily be disregarded as bad-faith manipulation. See Fairfield, 714 F.3d at 137. ████████████████████████████

30

███████████████████████████████████████████████████

████████████████████████████████████████ Indeed, it is hard to see how the

JPLs' could have fulfilled their Court-ordered duties without acting exactly as they have. The

OAS Group's suggestion that the JPLs' activities were motivated by a bad-faith desire to

manipulate COMI is thus utterly unsupported.

B.    The Objection is a Poorly Disguised Attack on the BVI Court

57.    Unable to show that the JPLs are acting other than in accordance with the

directions of the BVI Court, the OAS Group resorts to attacking the merits of the Provisional

Liquidation order itself. In particular, the OAS Group claims that the actions of the JPLs

pursuant to the Provisional Liquidation Order should be disregarded because "the OAS Group

asserts that the entire BVI liquidation proceeding was commenced by Aurelius and Alden to

manipulate COMI . . . ." (Objection ¶ 85 (emphasis in original).) As an initial matter, if the

OAS Group truly believed that Aurelius and Alden were masterminding a multijurisdictional

conspiracy to manipulate COMI, it undoubtedly would have sought discovery from Aurelius and

Alden on that point. It did not. But the true flaw in the OAS Group's logic is that the BVI

Proceeding is not simply the result of Aurelius and Alden applying for commencement of

provisional liquidation proceedings—it is the result of the BVI Court considering that application

and determining, using its independent judgment, to place Finance into provisional liquidation

and appoint the JPLs.[14] (Provisional Liquidation Order.) Accordingly, the OAS Group's claim

that the BVI Proceeding itself constitutes COMI manipulation is properly understood as a

---

[14] The Provisional Liquidation Order has now been in full force and effect for more than two
months, giving the BVI Court ample opportunity to reconsider its entry. Indeed, the BVI Court
has, as it deemed appropriate, modified the Provisional Liquidation Order in very minor respects.
(Thorp Decl. ¶ 15.) In so doing, the BVI Court left the overwhelming majority of the
Provisional Liquidation Order unaltered.

baseless allegation that the BVI Court itself is complicit in manipulating Finance's COMI.

58.    Even if the OAS Group believes that the BVI Court erred, this Court is not the proper forum for challenging the Provisional Liquidation Order. If there is any ironclad principle in this Court's Chapter 15 jurisprudence, it is that a "U.S. bankruptcy court is not required to make an independent determination about the propriety of individual acts of a foreign court." In re Cozumel Caribe, S.A. de C.V., 508 B.R. at 337. To the contrary, "it is not appropriate for this Court . . . to second-guess the findings of the foreign court." In re Rede Energia S.A., 515 B.R. at 100. Rather, "it was for the [foreign] Court to decide whether the petition should be sustained, and it is not for this Court to second-guess the issue in connection with a petition for recognition." In re Gerova Fin. Grp., Ltd., 482 B.R. at 93. With the BVI Court having made its decision, "this is not the proper forum for a belated and disguised appeal." Hopewell, 238 B.R. at 58. All challenges to the BVI Court's order are properly addressed in the BVI. Indeed, the OAS Group *is* pursuing such challenges before the BVI Court, ███████████ ███████████████████████████████████████████████████ This Court should decline the OAS Group's demand to preempt the BVI Court.

C.    The OAS Group's Outrageous Allegations that the
       JPLs Act as Aurelius's Puppets are Patently False

59.    In their desperation to block recognition of the BVI Proceeding, the OAS Group has adopted the crudest of approaches: continually repeat a falsehood in the hopes that the Court will decide it is true. ███████████████████████████████████████████ ██████████████████████████████████████████

60.    ██████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

32

and the JPLs in fact have always acted as independent fiduciaries aiming to protect the interests

of all creditors of Finance.

61.    Second, there is nothing nefarious in the fact that the JPLs did not wish to allow

Tavares, at the April 17 Hearing, to continue to purport to act for Finance in seeking provisional

relief. (Objection ¶ 48).   Rather, the JPLs objected because their appointment divested Tavares

of authority to act for or on behalf of Finance.  (Apr. 17 Tr. 37:22-25;

) At the April 17 Hearing, the JPLs made clear that they took no

issue with the relief sought, only the authority of the movant:

> MR. ROSENBLATT: Your Honor, I understand in a vacuum there's certainly an
> argument that the relief they're seeking is not harmful to the company. I
> absolutely acknowledge that. I think it's more of an issue of given that our clients
> now control the OAS Finance and given that the -- there's now a concurrent
> liquidation proceeding pending in the BVI, we just think it would not be
> appropriate to grant relief that would advance the recognition of the Brazilian
> proceeding or to suggest either implicitly or otherwise that anybody other than the
> joint liquidators are authorized to act on behalf of OAS Finance.

(Apr. 17 Tr. at 37:3-13.)





_____

[15] As counsel for the JPLs clarified for the Court during the April 17 Hearing, "[d]espite the fact that creditors' petition to place Finance into provisional liquidation, as the provisional liquidators, our clients do not represent any particular creditor. They represent the interest of all creditors as a whole." (Apr. 17 Tr. 38:12-16.)



65.    Ultimately, that certain of the JPLs' positions are, in the words of the OAS Group, "suspiciously similar to those of Aurelius and Alden" (Objection ¶ 47) is due entirely to the OAS Group's willful contempt of the Provisional Liquidation Order and the needs of Finance's creditors in general. Tavares continued to purport to exercise authority over Finance despite the Provisional Liquidation Order. It should come as no surprise that both the officeholders appointed under the Provisional Liquidation Order and the creditors who petitioned for the Provisional Liquidation Order would find that unacceptable.

The JPLs and creditors alike had an interest in obtaining that information. Finally, the OAS Group's suggestion that the JPLs conspired with Aurelius to leave Finance's assets unprotected rings hollow. As a result of the JPLs' efforts, Finance's assets are currently protected (Order Granting Provisional Relief [Docket No. 14]; Order Adjourning Hearings and Extending Provisional Relief [Docket No. 31]; Second Order Adjourning Hearings and Extending Provisional Relief [Docket No. 50]), while the actions of the OAS Group have left the assets of the debtors in the Tavares Chapter 15 Cases unprotected for more than one month. (May 19 Tr. 8:16-20, 186:20-187:7.) Indeed, if protection of Finance's assets is truly what motivates the OAS Group, it need only withdraw the Objection. That the OAS Group stands alone—utterly without the support of the creditors it is supposedly acting to

protect—in accusing the JPLs of wrongdoing and objecting to recognition speaks volumes.

## III.    Public Policy Supports Recognition of the BVI Proceeding

66.    Curiously, the OAS Group's final argument is that recognition of the Petition "violates the stated purpose of Chapter 15." Noticeably absent is any reference to the relevant statute—Bankruptcy Code section 1506—or the appropriate standard for objecting on public policy grounds: *manifestly contrary* to the public policy of the United States. As the Petition is entirely consistent with the policies underlying Chapter 15 and the Bankruptcy Code more broadly, the OAS Group cannot meet this standard.

67.    Bankruptcy Code section 1506 creates an exception to actions otherwise required by Chapter 15 if, and only if, such actions "would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. "Section 1506 does not create an exception for any action under Chapter 15 that may conflict with public policy, but only an action that is 'manifestly contrary.'" Fairfield, 714 F.3d at 139. Moreover, "[t]he word 'manifestly' in international usage restricts the public policy exception to *the most fundamental policies of the United States*." Fairfield, 714 F.3d at 139 (quoting H.R. Rep. No. 109-31, at 109) (emphasis and alteration in original). Accordingly, section 1506's public policy exception can only be invoked under exceptional circumstances and must be applied sparingly. See In re Millard, 501 B.R. at 651; In re Rede Energia S.A., 515 B.R. at 92.

68.    Unable to satisfy the "manifestly contrary" standard, the OAS Group advances a weaker, and legally unsupported, argument that the Petition "violates the stated purpose of Chapter 15." The OAS Group's argument that creditors should not be permitted to pursue recognition of involuntary proceedings fails to meet even the lesser standard that they have set for themselves. To the contrary, public policy supports granting recognition

69.    First, the Bankruptcy Code permits creditors to commence involuntary

37

bankruptcy proceedings, see 11 U.S.C. § 303, and recognizes that involuntary proceedings are often well-suited to "protect[ing] the interests and desires of the creditors as a whole." In re C.W. Mining Co., 636 F.3d 1257, 1264-65 (10th Cir. 2011) (internal quotation omitted); see also H.R. Rep. No. 95-595, at 322 (1977) (The Bankruptcy Code "permits involuntary cases in order that creditors may realize on their assets through reorganization as well as through liquidation."); S. Rep. No. 95-989, at 33 (1979) (same). Nothing in Chapter 15 suggests that Congress intended to limit recognition when creditors pursue that same right abroad. To the contrary, this Court regularly recognizes "involuntary" foreign proceedings, and has specifically rejected the assertion that recognition of such proceedings violates public policy. See, e.g., In re Genova Fin. Grp., Ltd., 482 B.R. at 94-96 (holding that recognition of a foreign proceeding commenced by a single creditor was not manifestly contrary to U.S. public policy). Moreover, Chapter 15 is intended to foster recognition of proceedings that "protect[] the interests of creditors," along with other interested parties. 11 U.S.C. § 1501(a)(3). ████████████████████████

████████████████████████████████████████████████████

████████████████████████████ Finance's Creditors apparently agree that the JPLs are fulfilling those duties, as none stand with the OAS Group in impugning the JPLs' integrity or challenging recognition of the BVI Proceeding.

70.    Second, Chapter 15 specifically contemplates the occurrence of multiple foreign proceedings, and contains an entire section devoted to "Coordination of more than 1 foreign proceeding." See 11 U.S.C. § 1530. The OAS Group's suggestion that the existence of multiple proceedings concerning Finance is contrary to Chapter 15 is thus belied by the statute itself.

71.    Finally, the OAS Group rehashes its wild claims that there is a grand conspiracy between the JPLs and Aurelius to manipulate COMI, and that Finance, a BVI registered

company with no business activities in Brazil, is inextricably linked to its indirect parent in Brazil such that its COMI is in Brazil.  For the reasons addressed above, these arguments are unsupported.  The OAS Group is likewise incorrect that recognition of the BVI Proceeding would subvert principles of comity.  Chapter 15 is intended to promote comity for a foreign representative, the foreign proceeding, and the foreign court, not indirect equity holders seeking to thwart recognition.  See 11 U.S.C. §§ 1501(b)(1), 1525-1527.  The OAS Group's invocation of comity is particularly ironic given that, in the same breath, the OAS Group insists that this Court should ignore the Provisional Liquidation Order, a valid and enforceable BVI Court order.  This demand is a distraction from the true issues governing recognition and is simply improper as a matter of law.  See In re Bozel S.A., 434 B.R. at 117-18.

72.    In short, certain creditors of Finance decided that their interests could be best protected in a proceeding overseen by independent fiduciaries acting for the collective benefit of Finance's creditors.  Those creditors took steps to protect their interests by commencing the BVI Proceeding.  No creditor has challenged that proceeding in the BVI or objected to recognition here.  That the OAS Group has a fundamental disagreement with creditors' desire to have an independent fiduciary installed (as equity holders in involuntary bankruptcy cases so often do) does not provide a basis to deny recognition of the BVI Proceeding.  This Court should follow the ample precedent in this district recognizing BVI insolvency proceedings and grant recognition to the BVI Proceeding as a foreign main proceeding.

## CONCLUSION

For the foregoing reasons, the JPLs respectfully request that this Court grant the relief requested by the Petition.

Dated:  New York, New York
          June 27, 2015

**CHADBOURNE & PARKE LLP**

By: /s/ Andrew Rosenblatt
      Howard Seife
      Andrew Rosenblatt
      Marc D. Ashley
      Eric Daucher
      1301 Avenue of the Americas
      New York, New York 10019
      (212) 408-5100

      *Counsel for the Joint Provisional Liquidators*