WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Gregory M. Starner
Mark P. Franke

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
John K. Cunningham
Richard S. Kebrdle (admitted *pro hac vice*)

*Attorneys for OAS S.A.*

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Susheel Kirpalani
Michael Carlinsky
Benjamin Finestone

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | )    Case No. 15-11304 (SMB) |
| OAS FINANCE LIMITED (in provisional | ) |
| liquidation), | ) |
| | ) |
|      Debtor in a Foreign Proceeding. | )    Chapter 15 |
| | ) |

<u>**OAS S.A.'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**</u>

TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE:

       In connection with the petition for recognition [Docket No. 2] (the "JPL Petition")

in the above-captioned chapter 15 case (the "JPL Chapter 15 Case") filed by joint provisional

liquidators Marcus Allender Wide and Mark T. McDonald (the "JPLs") with respect to the

provisional liquidation proceeding (the "BVI Provisional Liquidation") of OAS Finance Limited

("OAS Finance")[1] before the Eastern Caribbean Supreme Court, High Court of Justice –

Commercial Division, British Virgin Islands (the "BVI Court"), OAS S.A. ("OAS" and,

collectively with its subsidiaries, the "OAS Group") and the evidentiary hearing conducted by

the Court on the JPL Petition on July 1, 2015 (the "Recognition Hearing"), by and through its

undersigned counsel, respectfully submits these proposed findings of fact and conclusions of law

with respect to its objection to recognition of the BVI Provisional Liquidation of OAS Finance as

a "foreign main proceeding" under sections 1515-1517 of title 11 of the United States Code, 11

U.S.C. §§ 101 et seq. (the "Bankruptcy Code"):

### PROPOSED FINDINGS OF FACT[2]

A.    **OAS Finance and the OAS Group**

1.    OAS Finance is part of the OAS Group.  The OAS Group consists of

infrastructure companies that focus on heavy engineering and equity investments in

infrastructure projects located in and outside Brazil, and provides a range of services that

includes public concessions, construction, engineering, planning, execution and works

management for the transportation, power, sanitation, infrastructure and real estate industries,

providing services in 19 countries in Latin America, the Caribbean and Africa.  See Offering

Memorandum for the 2021 Notes at 2, 5-7, 102 [OASX 2];[3] see also Offering Memorandum for

---

[1]    On April 15, 2015, Renato Fermiano Tavares, as proposed foreign representative, filed with this Court chapter 15 petitions for OAS Finance (the "Tavares Chapter 15 Petition") and certain of its affiliates (collectively, the "OAS Chapter 15 Petitions") in jointly administered chapter 15 case no. 15-10937 (SMB) (the "OAS Chapter 15 Cases").  The OAS Chapter 15 Petitions have all been granted with the exception of the Tavares Chapter 15 Petition, which remains pending.

[2]    Any of the findings of fact contained herein shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law contained herein shall constitute a conclusion of law even if it is stated as a finding of fact.

[3]    "OASX" refers to OAS' exhibits received in evidence at the Recognition Hearing.  "PX" refers to exhibits proffered by the JPLs.  Citations to deposition transcripts refer to the designated versions of such transcripts.

Americas 90664167

the Perpetual Notes at 1 [OASX 3] (each as defined below). Its principal operating activities are organized into two major divisions: engineering, which engages in heavy civil engineering and construction projects, and investments, which is focused on private investments in infrastructure and public and private services concessions. OASX 2 at 5-7.

2.      OAS Finance is a wholly owned subsidiary of OAS Investments Limited (a BVI entity). JPL Petition at ¶¶ 9, 11. In turn, OAS Investments Limited is wholly owned by OAS. Id. at ¶ 10. OAS Finance is incorporated in the BVI and maintains its registered office at Trident Trust Company (B.V.I.) Limited, Trident Chambers, P.O. Box 146, Road Town, Tortola, British Virgin Islands. Id. at ¶ 9. However, OAS Finance has never had a physical office in the BVI. See OASX 82 at 104:3-13; Wide Dep. 13:20-14:5, June 18, 2015 [OASX 6]. Until the recent activities of the JPLs in the BVI, all decision making for OAS Finance was made from São Paulo, Brazil, where the shareholders and directors of OAS Finance (the "OAS Directors") reside and direct actions. See OASX 6 at 12:10-13, 44:4-7; Hr'g Tr. at 143:20-145:10. There is no evidence of the OAS Directors ever traveling to the BVI or making any decisions from the BVI. See OASX 6 at 13:3-6; Hr'g Tr. at 144:23-25.

3.      From its inception and like its Austrian counterpart OAS Investments GmbH,[4] OAS Finance's principal corporate purpose is the financing of the operations of the OAS Group. Hr'g Tr. 180:3-8, 143:19-24, July 1, 2015 ("Hr'g Tr."); Tavares Dep. 35:22-36:6; 70:22-71:5, 97:22-25, June 25, 2015 [OASX 82]; Forssell Dep. 43:7-13, June 16, 2015 [OASX 38]. Specifically, OAS Finance's narrow function in the OAS Group was confined to the issuance and servicing of two series of notes governed by New York law. JPL Petition at ¶¶ 11-

---

[4]      As set forth in the Court's Memorandum Decision Recognizing Debtors' Brazilian Bankruptcy Proceedings as Foreign Main Proceedings, In re OAS S.A., Case No. 15-10937, 2015 WL 4197076 (Bankr. S.D.N.Y. July 13, 2015) (the "Memorandum Decision") entered in the OAS Chapter 15 Cases, OAS Investments GmbH is a substantially similar special purpose financing vehicle for the OAS Group.

Americas 90664167

12.  OAS Finance issued (i) certain 8.875% perpetual notes (the "Perpetual Notes") in the aggregate principal amount of US$500,000,000 and (ii) certain 8.00% senior notes due in 2021 (the "2021 Notes" and, collectively with the Perpetual Notes, the "Finance Notes") in the aggregate principal amount of US$400,000,000.  Id. at ¶ 12.  Both series of Finance Notes were guaranteed by OAS Group entities Construtora OAS S.A. ("Construtora OAS") and OAS.[5]  See generally 2021 Notes Indenture [OASX 84]; Perpetual Notes Indenture [OASX 83].  The Finance Notes are general, unsecured obligations of OAS Finance and each of the guarantees rank pari passu with other unsecured obligations of the guarantors.  See generally id.

4.      There is no evidence that OAS Finance's decision to issue the Finance Notes took place in the BVI.  See OASX 6 at 12:10-16; OASX 82 at 162:7-163:15.  Further, all key expenditures and policy decisions for OAS Finance were made by staff located in São Paulo, Brazil.  See OASX 82 at 59:12-61:15; 61:23-62-20; 63:3-64:2.  For example, there is no dispute that transfers of the proceeds of the Finance Notes were actions directed by the OAS Group and the OAS Directors from Brazil, not the BVI.  See id.

5.      There is no evidence that the proceeds of the Finance Notes were used in or intended to be used in the BVI.  See OASX 6 at 9:19-10:2, 11:8-16.  Having issued the Finance Notes, OAS Finance had no other business except to pay them off.  See Hr'g Tr. at 47:23-48:19; OASX 82 at 82:16-84:15; OASX 6 at 12:10-14:15.  Indeed, OAS Finance's principal creditors, the holders of the Finance Notes (the "Finance Noteholders"), could not possibly believe that OAS Finance was a financing vehicle for any purpose other than to fund the operations of the OAS Group.  See OASX 6 at 10:12-11:16.

---

[5]      The Finance Notes were originally also guaranteed by OAS Investimentos S.A.  OAS Investimentos S.A. was merged into OAS on December 26, 2014 (the "Merger").  On March 5, 2015, Aurelius and Alden (each as defined below) filed an action in Brazil seeking annulment of the Merger.  As of the date hereof, the effects of the Merger have been stayed.

4

6.      Notwithstanding recent activities by the JPLs in connection with the BVI

Provisional Liquidation, the actual center of main interests ("COMI") for OAS Finance remains

in Brazil, not the BVI.  The only bank account of OAS Finance located in the BVI is the one the

JPLs created for the purpose of centralizing the functions of OAS Finance in the BVI after their

appointment.  Hr'g Tr. at 59:19-23; 194:16-195:2; OASX 6 at 67:3, 73:5-18; 74:3-19.  There is

no evidence that any creditor of OAS Finance has traveled to the BVI to consult with the JPLs,

notwithstanding the JPLs' assertion that all provisional liquidation activities have been

"centered" in the BVI.  Hr'g Tr. at 88:3-89:12; OASX 6 at 53:21-54:18, 65:4-66:6.  Moreover,

the JPLs themselves—the only BVI nexus—are *provisional* rather than final liquidators, and the

BVI Provisional Liquidation is admittedly wholly dependent on continued funding by its

sponsors, Aurelius Investment, LLC (with its affiliates, "Aurelius") and Alden Global Adfero

BPI Fund, Ltd. (with its affiliates, "Alden").  See Hr'g Tr. at 77:10-21.  There is no dispute that

prior to their appointment on April 16, 2015, the JPLs were not administering OAS Finance's

affairs in the BVI.  See Hr'g Tr. at 97:20-98:17, 145:1-10.

**B.      Creditor Actions Against OAS Finance and the OAS Group**

7.      Since early 2015, Aurelius and Alden have commenced various actions

against OAS Finance and other members of the OAS Group.

8.      On January 2, 2015, OAS Finance failed to make a scheduled interest

payment on the 2021 Notes.  On February 3, 2015, after the payment obligation had remained

unpaid for 30 days, Aurelius, a purported holder of 2021 Notes, delivered a "Notice of

Acceleration" to OAS Finance and the guarantors of the 2021 Notes at the OAS Group's São

Paulo, Brazil headquarters.  See Notice of Acceleration [OASX 85].  Aurelius claimed to hold

5

over 25% of the 2021 Notes and purported to declare the full outstanding balance of the 2021

Notes immediately due and payable.  Id.

9.    The next day, on February 4, 2015, Aurelius commenced litigation (the

"Aurelius Action") by filing a verified complaint and an ex parte Application for Order of

Attachment under Article 62 of the New York State Civil Practice Law and Rules against OAS

Finance, OAS, Construtora OAS, and OAS Investimentos S.A. (together, the "State Actions

Defendants") in the Supreme Court of the State of New York, County of New York (the "New

York State Court").  See Complaint, Aurelius Inv., LLC v. OAS Fin., Index No. 650312/2015

(N.Y. Sup. Ct. Feb. 4, 2015) [Docket No. 2] [OASX 9]; Memorandum of Law in Support of

Plaintiff's Ex Parte Application for Order of Attachment, Aurelius Inv., LLC v. OAS Fin., Index

No. 650312/2015 (N.Y. Sup. Ct. Feb. 13, 2015) [Docket No. 10] ("Ex Parte Attachment Brief")

[OASX 10].

10.    Aurelius sought, on an ex parte basis, prejudgment attachment in the

amount of $109,933,802.22 for alleged principal and accrued interest due under the 2021 Notes.

OASX 10 at 1, 7.  Aurelius argued that the New York State Court had jurisdiction to, and should,

attach not only the State Actions Defendants' property within New York State, but also all of

their intangible property, wherever located.  Id. at 11-17.

11.    On February 9, 2015, the New York State Court issued the requested ex

parte order of attachment.  Order of Attachment, Aurelius Inv., LLC v. OAS Fin., Index No.

650312/2015 (N.Y. Sup. Ct. Feb. 4, 2015) [Docket No. 4] [OASX 11].  The Sheriff of the City of

New York was ordered to levy within his jurisdiction any property of any State Actions

Defendant to secure and satisfy the sum.  Id. at 2.  The State Actions Defendants were also

Americas 90664167

prohibited from "selling, assigning, transferring or paying over to any person other than the

Sheriff" any property or debt covered by the order.  Id. at 4.

12.     On February 18, 2015, a nearly identical lawsuit (the "Alden Action" and,

together with the Aurelius Action, the "State Actions") was filed against the State Actions

Defendants by Alden.  See Complaint, Alden Global Adfero BPI Fund, Ltd. v. OAS Fin. Ltd.,

Index No. 650480/2015 (N.Y. Sup. Ct. Feb. 18, 2015) [Docket No. 2] [OASX 12].[6]

13.     The State Actions have both been assigned to Justice Lawrence K. Marks

and are proceeding on the same schedule.  See Tr. of May 4, 2015 Hr'g, Aurelius Inv., LLC v.

OAS Fin., Index No. 650312/2015 (N.Y. Sup. Ct. May 26, 2015) [Docket No. 127] [OASX 14].

A hearing on the attachment motions took place on May 4, 2015.  See id.  Justice Marks did not

rule on the attachment motions at the hearing, but noted that he was inclined to deny such

motions and indicated a desire to see how things would unfold in the pending bankruptcy

proceedings.  Id. at 57:11-58:7.  These attachment motions are still pending.[7]

14.     Aurelius, through its affiliate Huxley Capital Corporation ("Huxley"),

filed an additional action against certain of OAS Finance's affiliates in the United States District

Court for the Southern District of New York on March 5, 2015 (the "Huxley Action" and,

together with the State Actions, the "U.S. Actions").  Complaint and Jury Demand, Huxley

---

[6]     Alden is represented by the same law firm representing Aurelius, relies on the same alleged default and
acceleration as Aurelius, and has moved for an order of attachment identical to that sought by Aurelius (other than
the sum sought to be attached).  See id.; Memorandum of Law in Support of Plaintiffs' Motion for Order of
Attachment on Notice, Alden Global Adfero BPI Fund, Ltd. v. OAS Fin. Ltd., Index No. 650480/2015 (N.Y. Sup.
Ct. Feb. 18, 2015) [Docket No. 15] [OASX 13].

[7]     Aurelius and Alden have also moved for summary judgment in the State Actions.  Plaintiff's Memorandum
of Law in Support of Motion for Summary Judgment, Aurelius Inv., LLC v. OAS Fin. Ltd., Index No. 650312/2015
(N.Y. Sup. Ct. Mar. 30, 2015) [Docket No. 76] [OASX 15]; Plaintiffs' Memorandum of Law in Support of Motion
for Summary Judgment, Alden Global Adfero BPI Fund, Ltd. v. OAS Fin. Ltd., Index No. 650480/2015 (N.Y. Sup.
Ct. Mar. 30, 2015) [Docket No. 62] [OASX 16].  These motions have been fully briefed and oral argument was
scheduled for June 8, 2015.  On June 2, 2015, Justice Marks adjourned oral argument on the pending summary
judgment motions.  No new date for the oral argument has been scheduled.

Capital Corp. v. OAS S.A., Case No. 15-cv-01637 (GHW) (S.D.N.Y. Mar. 5, 2015) [Docket No.

1] [OASX 17].  The Huxley Action seeks to set aside as alleged fraudulent conveyances the

following corporate actions (the "Contested Transactions"), all of which took place in Brazil

between Brazilian OAS Group entities: (1) the transfer of assets from Construtora OAS to OAS

Engenharia e Construção S.A. on December 1, 2014; (2) the transfer of shares in Investimentos e

Participações em Infraestrutura S.A. from OAS Investimentos to OAS Infraestrutura S.A. on

December 26, 2014; and (3) the December 26, 2014 Merger.  Id. at ¶¶ 8-10.  The Huxley Action

was assigned to United States District Judge Gregory H. Woods. [8]

     **C.**      **OAS Group Bankruptcy Proceedings**

       *i.*   *The Brazilian Bankruptcy Proceedings*

     15.     On March 31, 2015, OAS together with certain of its affiliates, including

OAS Finance (collectively, the "Brazilian Debtors") commenced reorganization proceedings in

Brazil (the "Brazilian Bankruptcy Proceedings") in the First Specialized Bankruptcy Court of

São Paulo (the "Brazilian Bankruptcy Court") pursuant to Brazilian Federal Law No. 11.101 of

February 9, 2005 (the "Brazilian Bankruptcy Law").  On April 1, 2015, the Brazilian Bankruptcy

Court issued a decision and order (the "Approval Order") approving the continuation of the

Brazilian Bankruptcy Proceedings.  Decision, R.S.T.J., No. 1030812-77.2015.8.26.0100,

1.4.2015 (Braz. Apr. 1, 2015) [OASX 21].

     16.     In issuing its order, the Brazilian Bankruptcy Court determined that all of

the Brazilian Debtors included in the joint petition for relief under the Brazilian Bankruptcy Law

---

[8]       In addition to the U.S. Actions, Aurelius and Alden are also participating in the Brazilian Bankruptcy
Proceedings (as defined below) and have filed papers, including appeals, with the Brazilian Bankruptcy Court (as
defined below) seeking various forms of relief.  See Second Affidavit of Renato Fermiano Tavares [OASX 91] ¶¶
79-83 (detailing certain of the actions taken by Aurelius and Alden in the Brazilian Bankruptcy Proceedings).
Further, Aurelius and Alden have taken other legal actions in Brazil against the OAS Group outside of the Brazilian
Bankruptcy Proceedings.  See id. at ¶ 77.

were part of the OAS Group, were fully controlled by parent company OAS, and that OAS

Finance (and its sister special purpose financing vehicle incorporated in Austria, OAS

Investments GmbH) "operate exclusively as instruments for acquiring resources abroad, with no

operational role." Id. at 3329.  The court expressly found that OAS Finance, although organized

under the laws of and maintaining its registered office in a foreign jurisdiction, had its "principal

center of activities (COMI – Center of Main Interest)" in Brazil.  Id.

       17.     On June 19, 2015, the Brazilian Debtors filed a plan of reorganization with

the Brazilian Bankruptcy Court.  OASX 102; Hr'g Tr. at 86:15-18.  This plan was submitted on

behalf of all of the Brazilian Debtors, including OAS Finance.  OASX 102; Hr'g Tr. at 86:25-25-

87:1.  Prior to filing this plan on June 19, 2015, certain of the Finance Noteholders (including

Aurelius and Alden) and the OAS Group traded term sheets representing restructuring

negotiations among the parties.  Hr'g Tr. at 87:2-4.  Notwithstanding that such restructuring term

sheets were exchanged between Finance Noteholders and the OAS Group and made public, see

Hr'g Tr. at 199:18-25, the JPLs were not aware that such term sheets had been passed among the

parties.  See id. at 87:2-5; 199:13-25.

     *ii.   The OAS Chapter 15 Cases*

       18.     On April 15, 2015, Mr. Tavares, as the foreign representative of the

Brazilian Debtors, commenced the OAS Chapter 15 Cases for the Brazilian Bankruptcy

Proceedings of OAS, Construtora OAS, OAS Investments GmbH and OAS Finance

(collectively, the "OAS Debtors").  Tavares also filed a Motion for Provisional Relief Pursuant

to Section 1519 of the Bankruptcy Code (the "OAS Provisional Relief Motion").  Mr. Tavares

sought from this Court, among other relief, (i) recognition of the Brazilian Bankruptcy

Proceedings as foreign main proceedings, as that term is defined in section 1502(4) of the

9

Bankruptcy Code, and (ii) provisional relief under section 1519 of the Bankruptcy Code

imposing the automatic stay of section 362 of the Bankruptcy Code with respect to the OAS

Debtors for the purpose of maintaining the status quo until the Court ruled on recognition.

19.     Following a hearing before this Court on April 17, 2015 (the "April 17

Provisional Relief Hearing"), the Court granted the OAS Provisional Relief Motion in part and

enjoined all creditors, including Aurelius and Alden, from, among other things, taking any action

to seize, attach, obtain or perfect any lien or other security interest in, or otherwise to improve

their claims against, or interfere with, any property of the Brazilian Debtors within the territorial

jurisdiction of the United States.  This relief was formalized in an order of the Court dated April

30, 2015 (the "April 17 Stay Order").

20.     On April 24, 2015, Aurelius and Alden filed a set of document requests

(the "April 24 Document Requests") [OASX 22], in connection with the OAS Chapter 15

Petitions.  As co-counsel to Mr. Tavares informed this Court by letter dated May 14, 2015, these

requests were intended to gain information that concerned the Contested Transactions subject to

the Huxley Action.  May 14, 2015 Letter to Chambers, In re: OAS S.A., Case No. 15-10937

(SMB) (Bankr. S.D.N.Y.) [Docket No. 52] [OASX 23].  Indeed, the April 24 Document

Requests made use of language directly corresponding and overlapping with discovery requests

in the Huxley Action.  See, e.g., Plaintiff's First Set of Document Requests to Defendants,

Huxley Capital Corp. v. OAS S.A., Case No. 15-cv-01637 (GHW) (S.D.N.Y.) (served April 27,

2015) [OASX 18].

21.     Following a hearing on these discovery requests on May 7, 2015 (the

"May 7 Discovery Hearing"), Mr. Tavares turned over certain of the requested documents to

Aurelius and Alden.  Mr. Tavares also made the production available to the JPLs' U.S. counsel,

Americas 90664167

Chadbourne & Parke LLP ("Chadbourne"), on an "attorneys' eyes only" basis.  Notably,

however, the Court directed that Mr. Tavares need not, and accordingly Mr. Tavares did not,

produce documents pursuant to the majority of requests issued by Aurelius and Alden, including

their requests for documents not related to recognition of the Brazilian Bankruptcy Proceedings.

See Letter of Susheel Kirpalani, Ex. B, In re OAS S.A., No. 15-10937 (SMB) (Bankr. S.D.N.Y.

May 4, 2015) [Docket No. 39] [OASX 24] (showing approximately 30 categories of document

requests that were related to the Contested Transactions and not to chapter 15 recognition).

           22.     On May 19, 2015, the Court held a hearing concerning the OAS Chapter

15 Petitions in respect of OAS, Construtora OAS and OAS Investments GmbH, but not OAS

Finance.  On July 13, 2015, the Court entered its Memorandum Decision granting recognition to

the Brazilian Bankruptcy Proceedings of such OAS Debtors as foreign main proceedings.

### D.      The BVI Provisional Liquidation

           23.     On April 8, 2015, approximately one week after the commencement of the

Brazilian Bankruptcy Proceedings and denial of Aurelius and Alden's objections thereto by the

Brazilian Bankruptcy Court, Mr. Andrew Miller of Aurelius contacted the JPLs to discuss

"options" with respect to OAS Finance.  Hr'g Tr. at 15:22-16:1, 90:19-25; JPL_0001834 [OASX

63].  The JPLs had no prior knowledge of OAS Finance; in particular, they did not know that

OAS Finance had filed plenary reorganization proceedings in Brazil, and Aurelius did not inform

this fact to them.  Hr'g Tr. at 90:19-91:17.  Prior to their appointment, the JPLs were in contact

with no creditors of OAS Finance other than Aurelius and Alden.  Id. at 98:14-17.  Further, the

JPLs did not know that the interests of Aurelius and Alden and other creditors varied or could be

at odds, nor that Aurelius was seeking to attach assets of the OAS Group for its benefit alone.  Id.

at 42:12-24, 98:18-23; OASX 6 at 105:22-106:12.  In the course of their initial conversations

Americas 90664167

with Aurelius and Alden, the JPLs were advised by Aurelius' BVI counsel.  Hr'g Tr. at 26:6-14,

72:23-25, 73:2-8, 96:23-99:3; OASX 6 at 14:4-22.

24.     Following their initial contact, the JPLs began to actively explore OAS

Finance "options" in collaboration with Aurelius and Alden.  Notably, Mr. Wide proposed that

Aurelius and Alden consider, among other actions, (i) seeking the appointment of provisional

liquidators in the BVI and (ii) filing a motion with the Brazilian Bankruptcy Court seeking to

exclude OAS Finance and OAS Investments Limited from the Brazilian Bankruptcy

Proceedings.[9]  Hr'g Tr. at 90:23-91:5, 92:3-6, 92:21-93:10.

25.     It is clear from the communications between the JPLs and Aurelius and

Alden that one of the benefits of taking such actions was to obtain leverage in negotiations with

the OAS Group.  Specifically, the JPLs highlight and acknowledge that such actions could put

pressure on the OAS Group and create "an opportunity to negotiate an early settlement."  PX 91

at 292 ("We understand that we are not engaged to provide advice at this point, but wanted to

give you our preliminary thoughts given what appears to be the need for quick action and

perhaps ***an opportunity to negotiate an early settlement***.") (emphasis added).  Indeed, The JPLs

continued to openly advise Aurelius and Alden on the "need to put pressure" on the Brazilian

Bankruptcy Court and on the OAS Group."[10]

---

[9]      As explained below (and apparently unbeknownst to Mr. Wide), this relief had already been sought by
Aurelius and Alden in the Brazilian Bankruptcy Proceedings and rejected by the Brazilian Bankruptcy Court.

[10]     Id. at 291.  ("OAS has being [sic] successful in holding a single reorganization proceeding for all
companies of the economic group, what could injure bond holders as some companies have more debts than
assets.  Creditors need to put pressure on the court and on the company which can be done through a number of
procedures: (i) application for substitution of management of the company[,] appointment of a receiver, (ii) creditors
committee to supervise the internal investigations of the company regarding the corruption scheme, (iii)
precautionary measures to freeze assets of the shareholders and beneficial owners of the company, as well as family
members.  Stronger applications have to be filed to split the reorganization proceedings of each company, thus
protecting the rights of creditors.  Hopefully, this is useful information and we look forward to the opportunity to
work with you.").

12

26.     Rather than pursue further options and relief directly from the Brazilian

Bankruptcy Court in the Brazilian Bankruptcy Proceedings, however, Aurelius, Alden and the

JPLs focused their attention squarely on the provisional liquidation of OAS Finance in the BVI

and began negotiating a financing arrangement by Aurelius and Alden for Marcus Wide and

Mark McDonald to serve as JPLs for OAS Finance.  Id. at 287-88.

27.     On April 16, 2015, just one day after the filing of the OAS Chapter 15

Petitions, Aurelius and Alden in collaboration with the JPLs then commenced the BVI

Provisional Liquidation as part of what they deemed a "race to court," requesting from the BVI

Court the immediate appointment of provisional liquidators in respect of OAS Finance and

affiliate OAS Investments Limited on an ex parte basis.[11]  See JPL_0000465 [OASX 25]; Hr'g

Tr. at 93:11-15, 107:19-109:6, 114:14-115:12; JPL Petition at ¶ 36.  Counsel to Aurelius, who

was at that time also advising the JPLs, deemed an "emergency" the possibility of the OAS

Debtors obtaining a stay from this Court in the OAS Chapter 15 Cases.  See OASX 25; Hr'g Tr.

at 107:19-109:6; JPL Petition at ¶ 36.

28.     The JPLs conducted no independent investigation of the allegations in the

provisional liquidation application; instead, they relied on the information provided by Aurelius

and Alden.  See OASX 6 at 101:7-22; Hr'g Tr. at 58:4-6, 68:10-20,105:5-107:6.  Based upon

evidence that Aurelius and Alden submitted on an ex parte basis, the BVI Court on that same

day, April 16, 2015, entered an order (the "Appointment Order") appointing the JPLs.[12]  The

---

[11]     The fact that the BVI Provisional Liquidation, unlike the U.S. Actions, was commenced immediately after
the Brazilian Bankruptcy Proceedings were commenced even though, presumably, it could have been commenced at
any point after the OAS Group missed the interest payment on the 2021 Notes in January, is indicative that the BVI
Provisional Liquidation was intended as a collateral attack on the Brazilian Bankruptcy Proceedings.

[12]     It is important to note that under BVI law, OAS Finance is in provisional liquidation, with no final
"winding-up" order (upon which statutory liquidation commences) having been entered by the BVI Court.  Lowe
Decl. ¶ 31 [OASX 95]; Hr'g Tr. at 210:2-211:4.  The winding up of OAS Finance in the BVI has not commenced,

13

JPLs and their counsel admit that such appointment following the initiation of a foreign

bankruptcy proceeding for the same entity is highly irregular.  See OASX 6 at 84:11-85:9.

29.    Many of the allegations made by Aurelius and Alden in the ex parte

submissions to the BVI Court (and, therefore, presumably on which the BVI Court relied in

making its determination to enter the Appointment Order) were untrue or misleading, including:

- the Brazilian Debtors had applied for and obtained substantive consolidation;[13]

- substantive consolidation in the Brazilian Bankruptcy Proceedings is a violation of Brazilian law;[14]

- directors and executives of the OAS Group implicated in the Petrobras scandal remained in control of the OAS Group;[15]

- the only material assets of OAS Finance are alleged intercompany claims against OAS Investments Limited and such alleged assets are the only source of repayment of obligations under the Finance Notes;[16] and

---

and will not commence unless and until the JPLs are appointed as final liquidators, rather than as provisional liquidators.  Id.; Hr'g Tr. at 88:3-8, 156:2-5; OASX 6 at 6:3-8, 69:19-22. Indeed, the JPLs admit that they have undertaken no liquidation activities and that they do not have authority to undertake them. Hr'g Tr. at 87:24-25; 88:3-6.

[13]    See Affidavit of Eleanor Chan (the "Chan Affidavit") [OASX 26] at ¶ 67; Affidavit of Brazilian counsel to Aurelius and Alden (the "Carpenter Affidavit") [OASX 27] at ¶ 21.  See also Memorandum Decision at *16 (Bankr. S.D.N.Y. July 13, 2015) ("Aurelius and Alden concede that substantive consolidation has not been 'definitively granted . . . .'").

[14]    See Chan Affidavit [OASX 26] at ¶65; Carpenter Affidavit [OASX 27] at ¶ 21.  See also Memorandum Decision at *16 (noting that a Brazilian appellate court found that the Approval Order had not ordered substantive consolidation and that in time it will be possible to "become better acquainted with the facts and the relationship between the companies and their creditors in order to reach a sound decision" to determine whether substantive consolidation is appropriate).

[15]    See Chan Affidavit [OASX 26] at ¶78; Note of Ex Parte Hearing [OASX 50] at 5.  See also Memorandum Decision at *13 ("Those involved in the Petrobras scandal have been arrested and removed from their management of the OAS Debtors.").

[16]    This allegation is contradicted by the offering memoranda for the Finance Notes and joint, several and unconditional guarantees under the Finance Notes' indentures demonstrating that the creditworthiness relied upon by creditors of OAS Finance was that of OAS and its operating subsidiaries, where all value available to satisfy claims of OAS Finance lies.  See, e.g., Offering Memorandum for the 2021 Notes [OASX 2] at 42 ("We are organized under the laws of Brazil and a majority of our assets are located in Brazil. . . ."); id. at 111 ("We have not included any financial statements of OAS Finance Limited in this offering memorandum."); id. at 121 ("As of the Closing Date, the Subsidiary Guarantors are the following Subsidiaries of the Company: Construtora OAS Ltda. and

14

- emergency ex parte relief was required because the OAS Group could use the OAS Chapter 15 Cases to stay actions in the BVI.[17]

30.     These misrepresentations and misleading statements in obtaining the Appointment Order constitute further evidence of Aurelius and Alden's motivations in commencing the BVI Provisional Liquidation as a collateral attack on the Brazilian Bankruptcy Proceedings and the OAS Chapter 15 Case for OAS Finance.[18]

31.     On April 24, 2015, BVI counsel for the OAS Directors submitted pleadings to the BVI Court (the "Objection to JPL Appointment") challenging (i) the propriety of the appointment of the JPLs and (ii) the unusual and impermissible scope of the powers granted to them by the BVI Court, and on April 29, 2015, made oral submissions regarding the same. See Objection to JPL Appointment [OASX 29].  After written and oral submissions by the OAS Directors, the board of directors of OAS Finance, Aurelius and Alden, it is unknown when the BVI Court will rule on the Objection to JPL Appointment.

32.     On May 21, 2015, the OAS Directors submitted an application (the "OAS Stay Application") seeking, among other things, (i) a stay on the JPLs' powers and (ii) an order recognizing the Brazilian Bankruptcy Proceedings as the main proceedings entitled to assistance

---

OAS Investimentos S.A. As of and for the three-month period ended March 31, 2014, the Company and the Subsidiary Guarantors generated 91.2% of the Company's consolidated net revenue and 71.5% of the Company's consolidated combined total assets."); id. at ii ("In this offering memorandum, except where otherwise specified or the context otherwise requires, 'we,' 'us,' 'our,' 'OAS,' 'OAS Group' and the 'Company' refer to OAS S.A. and its subsidiaries. References to the 'issuer' are to OAS Finance Limited."); see also Offering Memorandum for the Perpetual Notes [OASX 3] at 41, 109, 119, and ii (containing identical or nearly identical statements).

[17]     In the OAS Provisional Relief Motion, Mr. Tavares only sought relief within the territorial jurisdiction of the United States, OAS Provisional Relief Motion at ¶ 11.a., which is all that is available under sections 1519 and 1520 of the Bankruptcy Code, so it is unclear on what good faith basis Aurelius and Alden made such an assertion.

[18]     The remedy of provisional liquidation in the BVI is "a very draconian remedy.  It's referred to . . . as the . . . nuclear weapon . . . and it is obtained . . . by a creditor . . . persuading [the court] that there's going to be some terrible dissipation of assets." Hr'g Tr. at 210:11-16.  The misrepresentations and misleading statements by Aurelius and Alden demonstrated a willingness to represent untrue statements as facts in order to persuade the BVI Court to deploy this nuclear weapon.  Further, the Court understands that in seeking ex parte relief from the BVI Court, Aurelius and Alden had an obligation of "full and frank" disclosure, Note of Ex Parte Hearing [OASX 50] at 2 ("We are ex-parte and we are required to make full and frank disclosure.").

Americas 90664167

as a matter of comity.  See OAS Stay Application [OASX 31].  A hearing before the BVI Court

on the OAS Stay Application was held from July 6, 2015 to July 8, 2015, but the BVI Court has

not yet issued its ruling.

      33.    Pending the resolution of the Objection to JPL Appointment, the OAS

Stay Application and the appointment of final liquidators by the BVI Court pursuant to a

winding-up order, the OAS Directors retain certain residual authority with respect to OAS

Finance, including the authority to contest the Appointment Order and the actions of the JPLs.

See Hr'g Tr. at 192:4-22, 237:14-238:2, 242:9-243:9.

      34.    Since their appointment, the JPLs have attempted to shift the location of

OAS Finance's administration to the BVI, including:

- purporting (but failing, under BVI Law, see Declaration of Thomas William Lowe [Docket No. 35] [OASX 95] (the "Lowe Declaration") ¶ 36) to suspend the power of the OAS Directors such that the entity would then be controlled solely from the BVI;

- attempting to move OAS Finance's books and records to the BVI;

- asserting control over the foreign bank account(s) of OAS Finance; and

- establishing the first and only BVI bank account in OAS Finance's name.

JPL Petition at ¶¶ 45, 56.

      35.    The JPLs admit that these limited administrative steps taken during the

period between their appointment on April 16, 2015 and the date they filed the JPL Petition on

May 18, 2015 were intended to "centralize control of [OAS Finance] in the BVI."  Memorandum

of Law in Support of Verified Petition under Chapter 15 of the Bankruptcy Code for Recognition

of a Foreign Main Proceeding, and for Related Provisional Relief [Docket No. 3] (the

"Memorandum of Law") at ¶ 42; JPL Petition at ¶¶ 44; see also id. at ¶ 46 (asserting that "there

16

can be no argument that OAS Finance's affairs are currently being administered anywhere

except in the BVI").

36.     At the July 1, 2015 hearing before this Court, the Court requested that the

parties request clarification on whether the BVI Court intended for the Appointment Order to

divest the OAS Directors of all powers except to challenge the appointment of the JPLs and the

entry of a final winding-up order.  Hr'g Tr. at 234:4-6.  Both the OAS Directors and the JPLs

have requested such clarification from the BVI Court, which has informed the parties that it will

render its ruling shortly.

**E.     The JPLs' Participation in the Brazilian Bankruptcy Proceeedings**

37.     At the April 17 Provisional Relief Hearing before this Court, counsel for

the JPLs opposed the status quo stay for OAS Finance requested by Mr. Tavares.  April 17

Provisional Relief Hr'g Tr. at 36:15-37:13 [OASX 33]; see also OASX 6 at 39:2-12.  This Court

and certain other creditors questioned such a position, as the goal of any fiduciary for OAS

Finance should be to preserve the status quo in the United States to protect assets from being

seized and attached by creditors (like Aurelius and Alden).  OASX 33 at 48:16-49:1 (counsel for

the Ad Hoc Group of U.S. Noteholders commenting on conflicting position that the JPLs would

oppose a stay that does nothing but preserve the status quo, which would seem to advance the

JPLs' stated objectives to protect OAS Finance's assets).   Indeed, the Appointment Order

expressly requires the JPLs to only take those actions which are necessary and appropriate to

preserve the value of the assets of OAS Finance.  JPL 0005171-76 [OASX 96] at ¶ 3.  It is

unclear to the Court why the JPLs opposed the temporary status quo stay, as its only effect was

to preserve any value of U.S. assets of OAS Finance.  OASX 95 at ¶ 37.  Notably, as detailed

below, on advice of their U.S. counsel, the JPLs themselves originally <u>supported</u> the status quo

17

stay sought by Mr. Tavares, and still admit that such stays are generally beneficial and in line

with their duty to preserve assets.  See OASX 6 41:22-43:19; Hr'g Tr. at 42:25-43-13, 108:15-

109:6, 127:24-128:16, 132:20-23, 134:15-17.

38.    In fact, the JPLs' U.S. counsel, Chadbourne, recommended that the JPLs

support the status quo stay, advising the JPLs to focus on protecting assets in the U.S., and the

JPLs thought the advice reasonable given that a stay protects the assets of OAS Finance.  See

Hr'g Tr. at 126:13-128:16.  Yet Aurelius opposed this advice, calling Charbourne's advice "bad"

and "counterproductive" in correspondence with the JPLs, and going so far as attempting to

convince the JPLs to hire new counsel.  See Hr'g Tr. at 80:2-81:17, 129:23-130:11;

JPL_0005082 [OASX 34]; JPL_0001030 at 31 [OASX 35]; JP_0001055 [OASX 36].  Further,

Aurelius and Alden's U.S. counsel, Dechert LLP, also emailed the JPLs, suggesting the positions

the JPLs should take at the April 17 Provisional Relief Hearing with respect to the status quo

stay.  See Hr'g Tr. at 39:17-40:2, 40:23-41:3, 129:23-130.  Chadbourne was not copied on this

correspondence.  See id. at 38:11-39:1.  After these email exchanges, Aurelius, Dechert LLP and

the JPLs participated in a conference call addressing the issue, in which Chadbourne did not

participate.  Id. at 41:4-11, 130:2-131:5.

39.    Ignoring the advice of their own U.S. counsel, the JPLs agreed with

Aurelius and ultimately decided to oppose the OAS Provisional Relief Motion before this Court.

See OASX 6 at 120:22-123:11; Hr'g Tr. at 131:8-18, 132:13-18, 137:12-24; OASX 35.  This

change of heart was based on the information and directions given to the JPLs by Aurelius.  See

McDonald Dep. at 120:23-121:16, June 17, 2015 [OASX 4].

40.    One of the JPLs – Mr. McDonald – understood and has admitted that the

relief sought in the OAS Provisional Relief Motion would have hindered Aurelius' attempts to

attach OAS Group assets.  Hr'g Tr. at 127:24-128:16.  The other JPL, Mr. Wide, did not even

know that Aurelius was seeking to attach assets of OAS Finance and was advancing litigation in

pursuit of a monetary judgment against OAS Finance for hundreds of millions of dollars.  <u>See</u>

OASX 6 at 105:11-106:12; 110:20-113:17; 123:5-17; 123:24-124:15.  He now concedes that

Aurelius was conflicted in seeking a liquidation concurrently with its own U.S.-filed actions, <u>id.</u>,

but did not understand that at the time when, weighing his own counsel's advice against that of

Aurelius, he chose to take instruction from the latter.  <u>See id.</u> at 116:8-122:11; 123:5-17; 123:24-

124:15.  The JPLs recognize that actions by Aurelius to attach assets create potential conflicts of

interest among the creditors of OAS Finance.  Hr'g Tr. at 129:7-18; OASX 6 at 104:14-106:12;

110:20-113:17.

        41.      On April 28, 2015, the JPLs attempted to exclude OAS Finance and OAS

Investments Limited from the ongoing Brazilian Bankruptcy Proceedings.  The JPLs discussed

this tactic with Aurelius, but not with any other creditors of OAS Finance.  OASX 4 at 149:11-

150:11.  In an order denying the "inappropriate" request of the JPLs (the "Brazil Reaffirmation

Order"), the Brazilian Bankruptcy Court noted that under Brazilian Bankruptcy Law, a debtor

may only withdraw from an ongoing, judicially-supervised proceeding with the authorization of

its creditors.  Brazil Reaffirmation Order [OASX 37 (original and English translation)] at 17668.

Further, the Brazilian Bankruptcy Court found that reorganization had been properly commenced

in Brazil and that the JPLs, who were not appointed at the time, therefore "must respect" the

Brazilian Bankruptcy Proceedings.  <u>Id.</u>  It reiterated that "applying the general principles of the

UNCITRAL Model Law, there is no doubt that the COMI (Center of Main Interests) is Brazil."

<u>Id.</u>  Further, the JPLs never sought and had no authorization from the BVI Court to attempt to

exclude OAS Finance from the Brazilian Bankruptcy Proceedings, despite having expressly

Americas 90664167

sought authorization from the BVI Court with respect to filing the JPL Chapter 15 Case.  See

OASX 6 at 141:4-142:20.

42.     On or around May 10, 2015, Mr. Tavares proposed to the JPLs that they

agree to support the continuance of the temporary stay ordered by this Court on April 17, 2015,

while seeking to defer a ruling on the Tavares Chapter 15 Petition pending the resolution of the

OAS Directors' challenges to the JPLs' appointment in the BVI.  OASX 91 at ¶ 103.  Although

they had previously instructed their counsel to maintain the status quo by working with Mr.

Tavares' U.S. counsel to agree to an extension of the stay imposed by this Court on April 17,

2015 and that was protecting OAS Finance's U.S. assets, see Second JPL Report (as defined

below) at ¶ 22 [OASX 40], the JPLs instead purported to revoke Mr. Tavares' authority to go

forward with the Tavares Chapter 15 Petition, see OASX 92, JPL0000769-77, and then sought

(and subsequently obtained) ex parte authorization from the BVI Court to commence their own

chapter 15 case for OAS Finance by wrongly alleging that Mr. Tavares had decided to abandon

the Tavares Chapter 15 Petition.  OASX 41 at 1.

43.     On May 15, 2015, the JPLs sought to "withdraw" the Tavares Chapter 15

Petition.  See Notice of Withdrawal of Petition Commencing OAS Finance Limited Chapter 15

Case and Objection to Recognition of Purported Foreign Proceeding, In re OAS S.A., Case No.

15-10937 (SMB) [Docket No. 57] (the "Withdrawal Notice") at ¶¶ 1, 4, 18.  On the same day,

the JPLs appeared ex parte before the BVI Court seeking emergency authorization to file a

chapter 15 petition in this Court on behalf of OAS Finance so that the JPLs could allegedly

protect the interests of OAS Finance, which the BVI Court approved on May 18, 2015.  JPL

Petition at ¶ 41.

20

44.    Three days later, on May 18, 2015, the JPLs filed the JPL Petition seeking

recognition of the BVI Provisional Liquidation as a foreign main proceeding, thus commencing

the JPL Chapter 15 Case.  The JPLs also sought provisional relief similar to that approved by the

Court with respect to the OAS Chapter 15 Cases; this time Aurelius and Alden did not oppose

such relief.

45.    The JPLs have allegedly filed their own chapter 15 petition for two

reasons: (1) to stay proceedings against OAS Finance; and (2) to obtain the benefits of U.S.-

based discovery.  See OASX 6 at 4:21-5:3; 51:19-52:6; Hr'g Tr. at 85:4-10.  The JPLs admit that

discovery obtained through chapter 15 may be used to further claims in the Brazilian Bankruptcy

Proceedings.  See OASX 6 at 7:19-8:3.

46.    Indeed, consistent with the broad discovery sought by Aurelius and Alden

in the OAS Chapter 15 Cases, the JPLs immediately issued discovery in the JPL Chapter 15 Case

under Rule 2004 of the Federal Rules of Bankruptcy Procedure, seeking on shortened notice to

compel White & Case, as U.S. counsel to Mr. Tavares, to turn over an extraordinary range of

documents related to OAS Finance and its affiliates.  See Motion for Leave to Conduct

Discovery Pursuant to 11 U.S.C. §§ 105(a), 1519(a)(4), 1521(a)(4) and 1521(a)(7)  and Rule

2004 of the Federal Rules of Bankruptcy Procedure [Docket No. 21].  Notably, the JPLs

requested documentation from White & Case on the same Contested Transactions that Huxley,

and then Aurelius and Alden, had already sought and failed to obtain from this Court in the OAS

Chapter 15 Cases.  Id., Ex. B.  The Court denied the motion, while also asking counsel for the

JPLs no less than four times why the JPLs sought discovery in the United States regarding

transactions related to Brazilian entities that occurred in Brazil.  June 4, 2015 Conference Tr. at

4:20-21; 5:12-18; 6:6-7; 7:10-12 [PX 62].

21

47.     Moreover, the JPLs have taken inconsistent positions before the multiple courts involved.  As previously noted, in their second report to the BVI Court (the "Second JPL Report" [OASX 40]), filed on May 12, 2015, the JPLs represented to the BVI Court that they had instructed their U.S. counsel to cooperate with Mr. Tavares, and had actually agreed to support the continuation of the April 17 Stay Order by this Court and refrain from filing their own chapter 15 petition because this would "maintain the status quo, and not commit [the JPLs] to the considerable expense of [filing a new chapter 15 petition]."  OASX 40 at ¶ 22.

48.     The JPLs then abruptly changed course, deciding to file the JPL Petition after obtaining authority to do so through an <u>ex parte</u> application to the BVI Court.  The JPLs, however, did not inform the BVI Court that it was the JPLs who intended to withdraw the Tavares Chapter 15 Petition, which the JPLs purported to do so by filing their Withdrawal Notice on May 15, 2015.  In addition, the JPLs failed to disclose to the Court that they intended to bring about this situation by revoking Mr. Tavares' authority on the day before they appeared before the BVI Court <u>ex parte</u> and by directing him not to pursue recognition or to take further action.

49.     Further, the JPLs failed to disclose to the BVI Court that counsel to Mr. Tavares had proposed to the JPLs that they agree to an extension of the then-in-force provisional relief order obtained by Mr. Tavares on April 17, 2015 in exchange for Mr. Tavares' commitment to not go forward with recognition of the Tavares Chapter 15 Petition until the ongoing litigation in the BVI Provisional Liquidation had been resolved.  <u>See</u> Second Affidavit of Renato Fermiano Tavares at ¶ 103 [OASX 91].   Therefore, there was no emergent need to file the JPL Petition, given an alternative cost-effective and efficient path forward that would have preserved the JPLs' rights while granting OAS Finance the protection the JPLs indicated could only be obtained by commencing this case.

22

50.     Aurelius and Alden's control over the JPLs and this proceeding is evidenced by the fact that they are fully funding all of the JPLs activities.  Hr'g Tr. at 71:24-72:5, 73:2-6, 103:14-104:11.  Indeed, this funding arrangement has been formalized in an engagement letter which provides the JPLs a potential 10% bonus pay and provides Aurelius with a 15% interest rate on their loan.  JPL_0001829 [OASX 65], Hr'g Tr. at 73:7-12, 74:8-19, 100:8-10, 101:25-102:5, 104:9-11.  No fiduciaries for OAS Finance were present when this agreement was negotiated, see Hr'g Tr. at 100:8-101:23, and neither the JPLs nor Aurelius sought to negotiate these bonus or interest rate terms.  See id. at 100:8-102:19.  More specifically, the JPLs did not seek to negotiate Aurelius' interest rate down at all, and in exchange, Aurelius did not seek to negotiate down the JPLs' bonus rate.  See id.; OASX 6 at 93:6-94:14, 95:16-20.

51.     Neither of these terms was negotiated at arms-length.  See OASX 4 at 43:13-47:12, 48:21-49:2.  To undertake any significant action as provisional liquidators, the JPLs must first seek Aurelius' approval of and commitment to funding such action.  See OASX 6 at 33:15-25; 36:22-38:5, 38:17-25, 80:12-19; Hr'g Tr. at 139:13-25.  The JPLs consult with Aurelius to obtain such approval on a month-to-month basis.  See OASX 6 at 34:25-35:17.  The JPLs believed that Aurelius would likely not have funded their supporting recognition of the Brazilian Bankruptcy Proceedings of OAS and Construtora OAS S.A. as foreign main proceedings (such recognition having the effect of staying Aurelius' attempts to attach OAS assets and obtain monetary judgments).  OASX 4 at 156:20-157:15.  The JPLs submit their invoices directly to Aurelius.  Hr'g Tr. at 73:2-6; see JPL_0000900 [OASX 42]; OASX 6 99:7-9.  The details of this financing arrangement have not been disclosed to the BVI Court, and the BVI Court does not know that the JPLs' funding may soon run out.  OASX 4 at 147:6-16.  The JPLs

23

admit that they communicate with Aurelius regularly, and certainly more than with any other

creditor.  See OASX 6 at 72:11-24; Hr'g Tr. at 139:5-12.  They justify this imbalance by noting

that they must consult with Aurelius with regards to fees and likely expenditures due to their

funding arrangement with Aurelius.  Hr'g Tr. at 139:13-25.

52.    Following their appointment, the JPLs continued to be advised by

Aurelius' counsel and to act at Aurelius' direction.  See OASX 6 at 104:4-22.  Aurelius' counsel

drafted an affidavit for one of the JPLs, Mr. McDonald (which Mr. McDonald signed and swore

before submitting to the BVI Court seeking appointment) and drafted letters to other parties for

the JPLs to send as their own.  See JPL_0000279 [OASX 43]; JPL_0000282 [OASX 44];

JPL_0002360 [OASX 45]; JPL_0002361 [OASX 46]; JPL0001058 [OASX 47]; Hr'g Tr. at

35:16-20, 109:12-110:22, 1148-13, 122:2-7.  Aurelius' counsel spoke for the JPLs in applying

for provisional liquidation on behalf of OAS Investments Limited, which request was made

orally to the BVI Court in chambers.  See JPL_0000958 [OASX 48].  This conflicted

representation was never disclosed to the BVI Court.  See OASX 6 at 105:3-106:4.  It was not

until around ten days later that the JPLs retained independent BVI counsel.  See Hr'g Tr. at

30:24-31:3; OASX 6 at 109:8-110:15, 110:20-113:17; see also JPL_0001822 [OASX 49].

**F.    Expert Evidence on BVI Law**

53.    Expert evidence was put on by each side through declarations and live

testimony on the scope of the OAS Directors' residual authority to continue the restructuring

negotiations related to OAS Finance's obligations under the Finance Notes and to prosecute the

Brazilian Bankruptcy Proceedings in respect of OAS Finance.  The Petitioners submitted the

Declaration of Andrew Thorp [Docket No. 7] [PX 109, OASX 52] (the "Thorp Declaration")

contemporaneously with the JPL Petition on May 18, 2015, and OAS submitted the Lowe

24

Declaration contemporaneously with its objection to the JPL Petition on June 21, 2015.  The

Petitioners then submitted the Reply Declaration of Andrew Thorp [Docket No. 55] [PX 112,

OASX 103] (the "Thorp Reply Declaration" and, together with the Thorp Declaration, the

"Thorp Declarations") contemporaneously with their reply to the objection on June 27, 2015.

54.    Both Mr. Thorp and Mr. Lowe were present for live testimony at the July

1, 2015 hearing.  For the reasons set out below, the Court will give greater weight to the

testimony offered by Mr. Lowe than that offered by Mr. Thorpe and, consequently, will adopt

Mr. Lowe's reading of the Appointment Order and the legal authority applicable to provisional

liquidations in the BVI.

55.    Mr. Thorp is a partner at the law firm of Harneys Westwood & Riegels

("Harneys").  Thorp Decl. ¶ 1 [PX 109, OASX 52].  Further, in the English and related

commonwealth or English territorial legal systems, it is a split profession with two tiers of legal

practitioners, barristers and solicitors.  Hr'g Tr. at 208:4-6.  Mr. Thorp is a solicitor.  Hr'g Tr. at

179:16-20.

56.    Mr. Lowe is a barrister and is a Queen's Counsel.  Hr'g Tr. at 208:7-8, 13-

15.  The title of Queen's Counsel is conferred on older barristers with significant experience that

enables them to obtain this esteemed qualification.  Hr'g Tr. at 208:18-20.  Not all barristers are

conferred the title of Queen's Counsel.  Hr'g Tr. at 208:16-18.  Mr. Lowe is one of the very few

English Queen's Counsel to have been generally admitted to practice in the BVI.  Lowe Decl. ¶ 6

[PX 195, OASX 95].  Comparatively, based on their qualifications alone, the Court finds that the

testimony Mr. Lowe is entitled to greater weight than that of Mr. Thorp.

57.    Based on the evidence in the record on each respective expert's

experience, the Court similarly finds that the testimony of Mr. Lowe is entitled to greater weight

than that of Mr. Thorp.  While a significant proportion of each expert's experience involves

corporate insolvency, the evidence in the record suggests that Mr. Lowe has more experience

with corporate insolvency matters involving cross border elements.  See Lowe Decl. ¶ 5 [PX

195, OASX 95]; Hr'g Tr. at 208:9-11.  Further, with respect to the specific issue here, whether

the OAS Directors can continue to prosecute parallel reorganization proceedings in respect of

OAS Finance in Brazil notwithstanding that it is in provisional liquidations in the BVI, Mr.

Lowe demonstrated familiarity with examples of cases where there were parallel provisional

liquidations and reorganization proceedings in another jurisdiction, while Mr. Thorp was not

familiar with them at all.  Compare Hr'g Tr. at 220:19-25-221-1-7 with 198:5-25-199:1-7.

Indeed, prior to submitting his initial declaration, Mr. Thorp was not familiar with the seminal

case out of England setting forth the test by which courts determine whether a specific power is

retained by directors of companies in provisional liquidation.  Hr'g Tr. at 189:18-21.  Moreover,

Mr. Thorp demonstrated that he had an incomplete understanding of that case, including for

instance that the facts of that case involved the directors of a company in liquidation not only

seeking the discharge of the provisional liquidators, as Mr. Thorp characterized it, but also other

interlocutory relief, as Mr. Lowe clarified.  Compare Hr'g Tr. at 172:9-21 with Hr'g Tr. at 213:4-

12, 213:19-25.

58.    To interpret and apply a BVI statute, one must first look to case law in the

BVI and, if none is available, one must turn to English case law and case law from other

authoritative commonwealth jurisdictions, such as Australia.  Lowe Decl. ¶¶ 10, 12 [PX 195,

OASX 95]; Hr'g Tr. at 189:2-10; 209:2-8.  There is no case law out of the BVI courts

interpreting the issue of the scope of the authority that remains with the directors of a company

in provisional liquidation in the BVI.  Thorp Decl. ¶ 32 [PX 109, OASX 52]; Hr'g Tr. at 191:25-

26

192:1-3.  Accordingly, one must look to English law to determine the scope of the OAS

Directors' authority.  Harneys, however, specializes in the law of offshore jurisdictions of the

Cayman Islands, BVI, Cypress, and Anguilla, Hr'g Tr. at 162:19-21, and it does not provide

advice on English law.  Hr'g Tr. at 178:15-16.  Mr. Lowe is admitted to practice in England and

Wales and the BVI, as well as other jurisdictions.  Lowe Decl. ¶¶ 5-6 [PX 195, OASX 95]; Hr'g

Tr. at 208:22-25-209:1.  He is a member of a chambers based in London and retains his right to

appear in the courts of England.  Hr'g Tr. at 207:24; Lowe Decl., Annex 1 [PX 195, OASX 95].

The Court therefore finds that Mr. Lowe's testimony on matters of English law are entitled to

greater weight than that of Mr. Thorp.

       59.    Mr. Thorp equivocated in the written testimony he proffered in the Thorp

Declarations.  In the Thorp Declaration, he stated that, pursuant to section 175 of the BVI

Insolvency Act, upon the appointment of the JPLs, the OAS Directors were divested of all

authority over OAS Finance save for the limited ability to object to the BVI Provisional

Liquidation proceedings. Thorp Decl. ¶ 32 [PX 109, OASX 52]; Hr'g Tr. at 190:4-20.   Mr.

Lowe pointed out in the Lowe Declaration that section 175 of the BVI Insolvency Act does not

apply in provisional liquidation proceedings and there is no analogous provision applicable in

provisional liquidation.  Lowe Decl. ¶¶ 31-32 [PX 195, OASX 95].  In response, Mr. Thorp

changed his testimony, stating that section 175 "is of little relevance."  Reply Thorp Decl. ¶ 32

[PX 112, OASX 103]; Hr'g Tr. at 199:11-20.    Therefore, the Court finds that Mr. Thorp's

equivocation further demonstrates that his testimony is entitled to little weight.  In contrast, Mr.

Lowe's testimony is entitled to considerable weight and, as set out below, the Court adopts his

testimony as credible and persuasive on the issues of BVI law at issue in this case.

## PROPOSED CONCLUSIONS OF LAW

60.     Based on the findings of fact set forth above, OAS proposes that the Court

adopt the following conclusions of law:

## I.    LEGAL STANDARD FOR RECOGNITION
OF A FOREIGN MAIN PROCEEDING

61.     Section 1517(a) of the Bankruptcy Code provides that, after notice and a

hearing, the Court shall enter an order recognizing a foreign proceeding as a foreign main

proceeding if "(1) such foreign proceeding . . . is a foreign main proceeding . . . within the

meaning of section 1502 [of the Bankruptcy Code]; (2) the foreign representative applying for

recognition is a person or body; and (3) the petition meets the requirements of section 1515 [of

the Bankruptcy Code]." 11 U.S.C. § 1517(a); see also Memorandum Decision at *6; In re

Overnight & Control Comm'n of Avánzit, S.A., 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008)

(quoting 11 U.S.C. § 1517(a)).

62.     The authority of the JPLs to act as foreign representatives of the BVI

Provisional Liquidation and the satisfaction of the requirements in section 1515 of the

Bankruptcy Code are not at issue here.  Further, OAS has not argued that the BVI Provisional

Liquidation is not a foreign proceeding as defined in section 101(23) of the Bankruptcy Code.

At the Recognition Hearing, the parties acknowledged and agreed that the controlling issues at

bar are COMI and COMI manipulation regarding OAS Finance.  Hr'g Tr. at 5:9-15.  To grant the

JPL Petition and thereby recognize  the BVI Provisional Liquidation under sections 1517(a)(1)

and (b)(1) as a "foreign main proceeding," the Court must find that the COMI of OAS Finance is

the BVI and was not the product of COMI manipulation.

28

## II.    THE JPL CHAPTER 15 PETITION IS DENIED

63.    For the reasons set forth below, the Court finds that the COMI of OAS

Finance is Brazil, and the JPL Petition is therefore denied.  Additionally, as set forth herein, the

Court finds that any placing of COMI of OAS Finance in the BVI as a result of the liquidation

activities of the JPLs after their appointment was the product of improper COMI manipulation,

which itself constitutes additional grounds for denial of the JPL Petition.

64.    The Court concludes that the BVI Provisional Liquidation is not a "foreign

main proceeding" because the JPLs have not demonstrated that OAS Finance's COMI is in the

BVI.[19]  To determine whether a foreign proceeding is a foreign main proceeding, the court must

decide "where the debtor [has] its 'center of main interests' within the meaning of Chapter 15 of

the Bankruptcy Code . . . ."  Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.),

714 F.3d 127, 129 (2d Cir. 2013).  The Second Circuit has held that COMI is to be determined at

or around "the time of the Chapter 15 petition, subject to an inquiry into prepetition actions to

determine whether the process has been manipulated."  Id. at 130.  As the bankruptcy court in

Fairfield Sentry warned, "[i]n any proceeding for foreign recognition, of great concern to the

[c]ourt is the potential for mischief and COMI manipulation."  In re Fairfield Sentry Ltd., 440

B.R. 60, 65 (Bankr. S.D.N.Y. 2010).

65.    The JPLs argue that the BVI Provisional Liquidation should be recognized

as a foreign main proceeding because OAS Finance's COMI was the BVI as of the date of filing

the JPL Petition on May 18, 2015.  JPL Petition at ¶ 4.  The Court disagrees.  The record does

not support a finding that OAS Finance conducted any operations in the BVI prior to the

appointment of the JPLs.  In accordance with Second Circuit authority (discussed below), this

---

[19]    The JPLs have not sought, in the alternative, recognition of the BVI Liquidation Proceeding as a "foreign nonmain proceeding" under section 1517(a)(1) and (b)(2) of the Bankruptcy Code.

Americas 90664167

Court will disregard the attempts by the JPLs and their sponsors (Aurelius and Alden) to shift the

actual COMI of OAS Finance from Brazil to the BVI.  The appointment of, and all actions taken

by, the JPLs since their appointment on April 16, 2015 flowed from Aurelius' and Alden's

improper attempts to collaterally attack the OAS Group's Brazilian Bankruptcy Proceedings and

to undermine the Tavares Chapter 15 Petition for OAS Finance – which had been filed with this

Court by Mr. Tavares just one day prior to the commencement of the BVI Provisional

Liquidation by Aurelius and Alden.

### A.    OAS Finance's COMI is in Brazil

66.    The party seeking recognition bears the burden of establishing by a

preponderance of the evidence where the COMI lies for the foreign debtor.  In re Gerova Fin.

Grp., Ltd., 482 B.R. 86, 90-91 (Bankr. S.D.N.Y. 2012) ("It is the petitioner's burden to establish

by a preponderance of the evidence that the debtor's [COMI] is the location of the foreign

proceedings . . .") (citing In re Fairfield Sentry Ltd., No. 10 Civ. 7311(GBD), 2011 WL

4357421, at *3 (S.D.N.Y. Sept. 15, 2011); In re Bear Stearns High-Grade Structured Credit

Strategies Master Fund, Ltd., 389 B.R. 325, 335 (S.D.N.Y. 2008)).  Although the Bankruptcy

Code neither defines nor provides a conclusive test for determining the location of a debtor's

COMI, it does establish a rebuttable presumption that "[i]n the absence of evidence to the

contrary, the debtor's registered office . . . is presumed to be [its COMI]."  See 11 U.S.C. §

1516(c).  "'Registered office' is the term used in the Model Law to refer to the place of

incorporation or the equivalent for an entity that is not a natural person."  H.R. REP. NO. 109-31,

pt. 1, at 113 (2005).  This rule is "designed to make recognition as simple and expedient as

possible" in cases where the facts are not controversial, rather than to establish a conclusive

Americas 90664167

presumption.  Id. at 112-13.  Thus, the court in In re Bear Stearns cautioned against treating the

presumption as ironclad:

> This presumption "permits and encourages fast action in cases
> where speed may be essential, while leaving the debtor's true
> 'center' open to dispute in cases where the facts are more
> doubtful." . . . This presumption is not a preferred alternative
> where there is a separation between a corporation's jurisdiction of
> incorporation and its real seat.  Chapter 15 changed the Model Law
> standard that established the presumption in "the absence of proof
> to the contrary," to a presumption in "the absence of evidence to
> the contrary."  The legislative history explains that the word
> "proof" was changed to "evidence" to make it clearer using United
> States terminology that the ultimate burden is on the foreign
> representative. . . .  "Whatever may be the proper interpretation of
> the EU Regulation, the Model Law and Chapter 15 give limited
> weight to the presumption of jurisdiction of incorporation as the
> COMI."

In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122, 128

(Bankr. S.D.N.Y. 2007) (citations omitted) (emphasis added); see also In re Tri-Cont'l Exch.

Ltd., 349 B.R. 627, 634-35 (Bankr. E.D. Cal. 2006) (similar view).  Accordingly, where any

"evidence to the contrary" is presented, the presumption has no role to play.  Collins v. Oilsands

Quest Inc., 484 B.R. 593, 595 (S.D.N.Y. 2012).

       67.     Here, although OAS Finance maintains its registered office in the BVI,

OAS has presented evidence that the COMI for OAS Finance currently is and has always been in

Brazil.  Accordingly, the Court may not rely on the registered-office presumption in this case and

therefore must consider all relevant evidence in determining the COMI of OAS Finance.

       68.     The Second Circuit has held that "[t]he relevant principle [for determining

a debtor's COMI] is that the COMI lies where the debtor conducts its regular business, so that

the place is ascertainable by third parties. . . .  Among other factors that may be considered are

the location of headquarters, decision-makers, assets, creditors, and the law applicable to most

disputes." <u>Fairfield Sentry</u>, 714 F.3d at 130; <u>see also</u> <u>Bondi v. Bank of Am., N.A. (In re</u>

<u>Eurofood IFSC Ltd.)</u>, 2006 E.C.R. I-03813, 2006 WL 1142304, at ¶¶ 33-35 (E.C.J. May 2, 2006)

(stating that the center of a debtor's main interests must be identified with criteria that are: (1)

"objective" and (2) "ascertainable by third parties," and that the statutory presumption that it be

identified with the debtor's registered office could be rebutted if the debtor's registered office

was nothing more than a "letterbox" company not carrying out any business in the location in

which its registered office is situated); <u>In re Stanford Int'l Bank Ltd.</u>, [2010] EWCA (Civ) 137,

[53]-[56] (Eng.) (following <u>Eurofood</u> and holding that the presumption that registered office is

COMI can be rebutted by factors that are objective and ascertainable by third parties).

> 69.    Courts have commonly employed two tests, the "nerve center" test and the

"place of operations" test to determine a corporation's principal place of business:

> The "nerve center" test defines the principal place of business as
> "the nerve center from which [a corporation] radiates out to its
> constituent parts and from which its officers direct, control and
> coordinate all activities without regard to locale, in the furtherance
> of the corporate objective."  Under this test, courts "focus on those
> factors that identify the place where the corporation's overall
> policy originates."  The other test has been labeled the "place of
> operations" or "locus of operations" test.  There, the effort is to
> identify the place in which a corporation conducts its principal
> operations.  Courts generally apply the "nerve center" test when a
> corporation's operations are geographically widespread, and the
> "locus of operations" test when a corporation is centralized.

<u>Phoenix Four, Inc. v. Strategic Res. Corp.</u>, 446 F. Supp. 2d 205, 214-15 (S.D.N.Y. 2006)

(citations omitted).  Neither test is dispositive, and the determination of COMI is to be decided

by the court based upon the facts and circumstances of each case.

> 70.    Courts have emphasized the flexibility of the COMI determination.  The

Second Circuit in <u>Fairfield Sentry</u> noted that "[t]he absence of a statutory definition for a term

that is not self-defining signifies that the text is open-ended, and invites development by courts,

depending on facts presented, without prescription or limitation."  714 F.3d at 138.  Moreover,

> the case law makes it clear that judges should not be "straightjacketed by the formal requirements of each test," but rather should adapt the tests to the facts of each case.  A flexible approach is appropriate where the facts do not fall neatly within the parameters of either the "nerve center" or the "locus of operations" analysis.

Phoenix Four, 446 F. Supp. at 215 (citations omitted).  Several courts have noted that the

location of those who actually manage the debtor "conceivably could be the headquarters of a

holding company."  Bear Stearns, 389 B.R. at 336 (quoting In re SPhinX, Ltd., 351 B.R. 103,

117 (Bankr. S.D.N.Y. 2006), aff'd, 371 B.R. 10 (S.D.N.Y. 2007)); accord In re Basis Yield

Alpha Fund (Master), 381 B.R. 37, 47 (Bankr. S.D.N.Y. 2008).

      71.     Applying this flexible test for COMI, the Court finds that the COMI of

OAS Finance was at all times in Brazil, not the BVI.  With the exception of the limited activities

conducted by the JPLs since the Appointment Order, all activities of OAS Finance have been

directed by the OAS Group headquarters from Brazil, where the OAS Directors reside.

See, e.g., supra ¶ 2; OASX 82 at 45:8-19.  Even after the appointment of the JPLs in the BVI

Provisional Liquidation, the reorganization of OAS Finance has continued in Brazil in the

Brazilian Bankruptcy Proceedings.  Additionally, the OAS Directors are still directing the

defense against the JPLs' appointment from São Paulo, Brazil.  See OASX 82 at 122:4-123:12.

      72.     As recognized by the JPLs, OAS Finance is a special-purpose financing

vehicle for the OAS Group based in Brazil, operating strictly as a shell or "letterbox" company,

with the sole function of issuing the Finance Notes.  JPL Petition at ¶ 16 ("OAS Finance was a

true shell company . . . .");  OASX 82 at 35:22-36:6; 70:22-71:5.  While OAS Finance maintains

its registered office in the BVI (as required under local law), it conducted no business, owned no

assets and had no employees in the BVI.  See Hr'g Tr. at 47:23-48:19; OASX  6 at 12:10-14:15.

Its two directors, Mr. Barreto (Chief Financial Officer of OAS S.A.), OASX 82 at 24:21-25:9,

and Mr. Tourhino (Chief Financial Officer of Construtores OAS S.A.), OASX 82 at 12:4-12:15,

at all relevant times are – and have been – located and residing in Brazil.  It had no suppliers in

the BVI, and the only contractor providing OAS Finance with ongoing services in the BVI was

its domicile agent, Trident Trust Company Ltd.   See OASX 82 98-2-8.

73.    Additionally, all decisions concerning its sole business activity (the

issuance of the Finance Notes), see OASX 82 at 59:12-61:15; 61:23-62-20; 63:3-64:2, including

the restructuring of the Finance Notes in the Brazilian Bankruptcy Proceedings, were made

exclusively in Brazil.  Substantially all negotiations regarding the Brazilian Bankruptcy

Proceedings—including the restructuring of the Finance Notes—have been directed from Brazil

by the OAS Group.  See OASX 82 at 126:2- 126: 22.  OAS Finance does not have obligations

owing to any creditors located in the BVI, except to the extent that any beneficial holders of the

Finance Notes happen to be from the BVI.  The guarantors whose assets would be looked to for

satisfaction of the Finance Notes are OAS S.A. (the ultimate parent of the OAS Group), OAS

Investimentos S.A. and Construtora OAS S.A. – all Brazilian entities located in Brazil.[20]

74.    Moreover, OAS Finance (along with the other nine Brazilian Debtors)

filed a joint plan of reorganization in the Brazilian Bankruptcy Proceedings on June 19, 2015—

and all restructuring negotiations between the OAS Group and its creditors (including the

Finance Noteholders) have occurred in Brazil or in New York, not in the BVI.  See OASX 82 at

124:4-126:22; 154:3-6; 176:4-23; 185:25-186:21; 187:7-189:14.  And every creditor meeting has

---

[20]    On July 13, 2015, this Court found that the only source of repayment for the notes issued by OAS
Finance's Austrian counterpart, OAS Investments GmbH, was the value available from these Brazilian guarantors
and that in a functional sense the guarantors were really the principal obligors under such notes.  Memorandum
Decision at *14.

concerned a prospective reorganization of the OAS Group in the Brazilian Bankruptcy

Proceedings and not in the BVI Provisional Liquidation.  See OASX 82 at 185:25-186:21; 187:7-

189:14.

75.    Perhaps most significantly, all Finance Noteholders were notified and had

the reasonable expectation as creditors that OAS Finance's COMI is in Brazil.  The offering

memoranda for the Finance Notes show that the OAS Group, which includes OAS Finance, was

principally located in and headquartered in Brazil.  In fact, the first page of each offering

memorandum clearly states that the joint and several guarantors of the Finance Notes—the

entities (unlike the shell issuer) that actually own the assets providing the credit support for the

Finance Notes—are incorporated in Brazil.  See OASX 2; OASX 3; Memorandum Decision at

*14.[21]  Further, each offering memorandum clearly provides that:

- "we," "us," and "our," as used in the memorandum, reference OAS and its
  subsidiaries (which includes OAS Finance), thereby making it clear that OAS
  Finance is part of the OAS Group, which is managed and located in Brazil, see
  OASX 2 at ii ("'[W]e,' 'us,' [and] 'our,' . . . refer to OAS S.A. and its
  subsidiaries."); OASX 3 at ii (same);

- OAS Finance is a special purpose vehicle and is wholly owned by the OAS
  Group, see OASX 2 at 111 ("OAS Finance Limited is a special purpose finance
  company and our wholly-owned subsidiary . . . ."); OASX 3 at 109 (same);
  Memorandum Decision at *14;

- all of the OAS Directors reside in Brazil and conduct all their business from
  Brazil; see OASX 2 at 42 ("The issuer has been organized under the laws of
  British Virgin Islands.  All of its directors and our officers and certain advisors
  named herein reside in Brazil. Substantially all of its assets and those of these
  other persons are located outside the United States."); OASX 3 at 41 (same);
  Memorandum Decision at *14; and

- all of the directors and executive officers for each of the guarantors of the Finance
  Notes reside in Brazil; see OASX 2 at 42 ("[The Guarantors] are organized under

---

[21]    The offering memoranda published in connection with the Finance Notes are in substance identical to those
published in connection with the notes issued by OAS Investments GmbH, OAS Finance's sister special purpose
financing vehicle incorporated in Austria.

the laws of Brazil and a majority of our assets are located in Brazil.  In addition,
each of [the Guarantors'] controlling shareholders, all of our executive officers
and certain advisors named herein reside in Brazil."); OASX 3 at 41 (same);
Memorandum Decision at *14.

76.    Further, the offering memoranda for the Finance Notes fully informed

prospective noteholders that any potential reorganization of OAS Finance and/or the guarantors

of the Finance Notes would be in Brazil:  "If we are unable to pay our indebtedness, including

our obligations under the guarantees, then we may become subject to bankruptcy proceedings in

Brazil."  OASX 2 at 43; OASX 3 at 42; Memorandum Decision at *15.  The fact that OAS

Finance's interests lay centrally in Brazil is repeatedly iterated in the offering memoranda, and

consequently creditors have always been on clear notice that OAS Finance's COMI is in Brazil.

77.    The indentures governing the Finance Notes (the "Indentures") also make

clear that OAS Finance's COMI is in Brazil.  The notice provisions of the Indentures require that

any notices concerning the Finance Notes be sent to the OAS Group's headquarters in Brazil, not

to the letterbox in the BVI.  See OASX 84 § 13.01(1)(a); OASX 83 § 12.01(1)(a); Memorandum

Decision at *14 (referencing the substantially identical provision in the indentures governing the

notes issued by OAS Investments GmbH).  In fact, Aurelius sent its February 3, 2015 notice of

acceleration regarding the 2021 Notes to the OAS Group's headquarters in São Paulo—not to the

BVI address of OAS Finance.  See OASX 85 at 1.  The Indentures also allow for the issuer to be

replaced by certain entities of the OAS Group under certain conditions without the consent of

any holder of the Finance Notes—with the consequence that OAS Finance could be replaced as

issuer by a company organized under the laws of Brazil or any other jurisdiction other than the

BVI.  See OASX 84 § 4.27; OASX 83 § 4.22.  Further, it is highly improbable that any holders

of the Finance Notes believed repayment of the Finance Notes was based on the assets or

36

creditworthiness of OAS Finance in the BVI.[22]   Rather, the offering memorandum for the

Finance Notes makes clear such payments would come from the assets and creditworthiness of

the OAS Group in Brazil and includes no separate financial information for OAS Finance.  See

Offering Memorandum for the 2021 Notes [OASX 2] at 111 ("We have not included any

financial statements of OAS Finance Limited in this offering memorandum."); Offering

Memorandum for the Perpetual Notes [OASX 3] at 109 (same).

78.    Finally, in determining COMI—as with all matters involving the

interpretation of chapter 15—this court will "consider [chapter 15's] international origin, and the

need to promote an application of [chapter 15] that is consistent with the application of similar

statutes adopted by foreign jurisdictions."  11 U.S.C. § 1508.  In this regard, the Court notes that

the Brazilian Bankruptcy Court confirmed in its Approval Order and recently reiterated in the

Brazil Reaffirmation Order (which was entered after the JPLs were appointed in the BVI) that

the COMI of OAS Finance is and always has been in Brazil.  See OASX 21 at 3329; OASX 37

at 17668.  The Brazilian Bankruptcy Court justified finding COMI in Brazil for each of the

Brazilian Debtors, including OAS Finance, on the rationale that the objectives of insolvency law

could be better achieved by reorganizing a particular debtor under the same restructuring regime

as its debtor affiliates who are part of "the same economic group."  OASX 21 at 3329.  This

reasoning aligns with the chapter 15 goals of a "fair and efficient administration of cross-border

insolvencies," protection of the "interests of all creditors and other interested entities, including

the debtor," "protection and maximization of . . . value," and "facilitation of the rescue of

financially troubled businesses."  11 U.S.C. § 1501(a)(3)-(5).  Where the "financially troubled

---

[22]    OAS Finance's only asset appears to be a receivable against OAS Investments Limited, another limited purpose vehicle incorporated in the BVI.  OAS Investments Limited is merely a "conduit for the distribution of financing proceeds to the ultimate beneficiaries of that financing . . . and lacks the means to repay [OAS Finance] unless its own OAS Group borrowers repay [it]."  Memorandum Decision at *14.

business" is spread among multiple, economically integrated legal entities, as is the case with

respect to the OAS Group, it makes sense to restructure them together, as is commonly done in

chapter 11 cases involving related entities.  Even the JPLs recognize that OAS Finance's

purported principal assets, alleged receivables against OAS Investments Limited, are subject to

the Brazilian Bankruptcy Proceedings.  See JPL Petition at ¶¶ 13, 59 (explaining that the JPLs

took action to ensure that intercompany payables owed to OAS Finance by affiliate OAS

Investments Limited were included in the Brazilian Bankruptcy Proceedings).  Accordingly, for

the reasons discussed above, the Court finds the COMI for OAS Finance is in Brazil.

**B.     The BVI Provisional Liquidation Does Not Change OAS Finance's COMI**

79.     The JPLs argue that the limited administrative acts they have undertaken

since their appointment have "centralized" OAS Finance's administration in the BVI.  For the

reasons set out below, this Court will disregard such action for purposes of determining COMI,

as they flowed from Aurelius and Alden's improper motivation for commencing the BVI

Provisional Liquidation.  Further, at least initially, the JPLs were subject to the control of and

were taking directions from Aurelius and Alden.  The evidence presented is sufficient to show

that the commencement of the BVI Provisional Liquidation was intended to derail the Brazilian

Bankruptcy Proceedings and that all actions taken by the JPLs, which flowed from this improper

collateral attack on such proceedings, should be disregarded.[23]

---

[23]     As the United States Supreme Court has recognized, "it is for the court of first instance to determine the
question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by
a higher court, its orders based on its decision are to be respected."  Celotex v. Edwards, 514 U.S. 300, 313 (1995)
(quoting Walker v. Birmingham, 388 U.S. 307, 314 (1967)).  In Celotex, the United States Bankruptcy Court for the
Middle District of Florida had issued an injunction prohibiting judgment creditors from proceeding against sureties
without the bankruptcy court's permission.  Id. at 301-03.  Certain creditors then filed a motion in the United States
District Court for the Northern District of Texas seeking permission to execute against a surety on a bond.  Id. at
303.  The District Court granted the motion and the Fifth Circuit affirmed.  Id. at 304-05.  The Supreme Court
reversed, finding that the creditors should have challenged the injunction in the Florida bankruptcy court rather than
collaterally attacking it in the Texas federal courts and thereby "seriously undercutting the orderly process of the
law."  Id. at 313.

38

80.    The appointment of the JPLs and their subsequent activities have not

shifted the COMI of OAS Finance for purposes of chapter 15 recognition.  These steps included:

- the purported suspension of the power of the OAS Directors such that OAS Finance would be controlled solely from the BVI;

- attempting to move OAS Finance's minimal books and records to the BVI;

- the assertion of control over the foreign bank account(s) of OAS Finance; and

- the establishment of a new bank account in the BVI in OAS Finance's name.

See JPL Petition at ¶¶ 45, 56.

81.    While the COMI analysis looks to the facts as of the date of the chapter 15

petition, controlling case law in this Circuit specifically recognizes that courts will consider

prepetition actions to ensure COMI was not manipulated.  Specifically, as stated by the Second

Circuit in Fairfield Sentry:

> [A] debtor's COMI should be determined based on its activities at or around the time the Chapter 15 petition is filed . . . .  [But] a court may consider the period between the commencement of the foreign insolvency proceeding and the filing of the chapter 15 petition to ensure that a debtor has not manipulated its COMI in bad faith.

714 F.3d at 137 (emphasis added); see also In re Suntech Power Co., Ltd., 520 B.R. 399, 416

(Bankr. S.D.N.Y. 2014) (same).

82.    The bankruptcy court in Fairfield Sentry found that, under the facts of that

case, the evidence "[did] not support a finding of an opportunistic shift of the [d]ebtors' COMI

or any biased activity or motivation to distort factors to establish a COMI in the BVI."  440 B.R.

at 66.  That is not the case here.  As detailed in the facts above, this Court has been provided with

ample evidence to find that the filing of the BVI Provisional Liquidation, the limited actions

taken by the JPLs to date and the JPL Petition constituted attempts to manipulate OAS Finance's

Americas 90664167

COMI.  Indeed, the JPLs admit that they took such actions as opening a bank account in OAS

Finance's name and purporting to divest the OAS Directors of control in order to "centraliz[e] in

the BVI all administration of OAS Finance," JPL Petition at ¶ 44, and to preclude any argument

"that OAS Finance's affairs are currently being administered anywhere except in the BVI."  Id.

at ¶ 46.

      83.    Thus, the actions of the JPLs are the product of COMI manipulation and

this Court will ignore them for purposes of determining the COMI of OAS Finance.

      84.    Although the JPLs rely heavily on Suntech to support a finding of COMI

in the BVI, that case is clearly distinguishable.  In Suntech, a former competitor and contingent

creditor of a Cayman Island debtor objected to a chapter 15 petition for recognition of a Cayman

Islands liquidation as a foreign main proceeding, on the basis that the debtor had intentionally

manipulated its COMI to garner chapter 15 recognition of that liquidation as a foreign main

proceeding.  Suntech, 520 B.R. at 403-04; Objection of the Solyndra Residual Trust to Chapter

15 Petition of Suntech Power at  ¶¶ 8-10, 22, In re Suntech, Case No. 14-10383 (SMB) [Docket

No. 22].  The Suntech debtor had filed its chapter 15 case approximately three months after

beginning its liquidation, which had been commenced in accordance with a settlement agreement

with noteholders to withdraw an involuntary chapter 7 proceeding filed in New York and

reorganize the company in the Cayman Islands.  See Suntech, 520 B.R. at 405, 8-10.  The

contingent creditor, however, argued that the debtor's COMI was in China up until the Cayman

liquidation, and that the actions taken upon commencement of that liquidation—which included

changing the debtor's formal address, moving its principal offices, bringing its stock certificates

and shareholder registries to the Cayman Islands, and centralizing management in the Cayman

Islands—were an attempt to move COMI from China to the Cayman Islands.  See id. at 418.

Americas 90664167

85.    The <u>Suntech</u> court found that these actions did not constitute COMI

manipulation because they were "consistent with the [liquidators'] duties" and, accordingly, the

liquidators "would have taken these actions even if they had never intended to file a chapter 15

case." <u>Id.</u> at 419-20.  It therefore held that all actions of the <u>Suntech</u> provisional liquidators

"were taken in furtherance of the JPLs duties under the Appointment Order <u>and were not

intended to transfer the Debtor's COMI from China or anywhere else even if they had that effect</u>.

As a result, the Court concludes that the JPLs did not manipulate the Debtor's COMI in bad

faith."  <u>Id.</u> at 420 (emphasis added).  As further support for its holding, the court noted that the

debtor and its largest creditor group in negotiations deliberately had chosen the Cayman Islands

as the forum most convenient to all parties.  <u>See</u> <u>id.</u> at 418-19.

86.    The present case differs from <u>Suntech</u> in all relevant respects.  First, unlike

the objection to recognition raised in <u>Suntech</u>, OAS' objection is not premised solely on certain

centralizing actions taken by the liquidators to assist in their proceedings; rather, OAS asserts

that the entire BVI Provisional Liquidation was commenced to disrupt the centralized

restructuring of the OAS Group ongoing in the Brazilian Bankruptcy Proceedings and to prevent

Mr. Tavares from obtaining recognition of the Brazilian Bankruptcy Proceeding in respect of

OAS Finance. The effect of the commencement of the BVI Provisional Liquidation was to give

Aurelius and Alden (and the JPLs who, at least initially, were acting under their control and

direction) ammunition to argue that the COMI of OAS Finance was not in Brazil, but in the BVI.

Therefore, whether the actions taken by the JPLs were completely consistent with their duties or

actions they would have taken as a matter of course in any typical provisional liquidation is not

determinative.  The actions of Alden and Aurelius in commencing the BVI Provisional

Liquidation were not taken to fulfill a duty and their effort runs directly contrary to the principles

Americas 90664167

of centralization and coordination that underpins and animates the cross-border insolvency

procedures in the UNCITRAL Model Law for Cross-Border Insolvencies and chapter 15 of the

Bankruptcy Code.   To the contrary, Aurelius and Alden's actions were litigation tactics

calculated to challenge both the Brazilian Bankruptcy Proceedings and the Tavares Chapter 15

Petition.   Such actions constitute a clear example of the type of COMI manipulation that

undermines the statutory purpose of chapter 15.

       87.     Further, the JPLs admit that they took all the actions set out in the JPL

Petition for the express purpose of "centralizing" the administration of OAS Finance's affairs in

the BVI such that "there can be no argument" that COMI is anywhere other than in the BVI.  As

such, the Court finds that these actions were "intended to transfer the Debtor's COMI" from

Brazil to the BVI and therefore hold that such actions constitute COMI manipulation.  <u>Suntech</u>,

520 B.R. at 420.

       88.     Second, <u>Suntech</u> featured a chapter 15 petition filed three months after

liquidation proceedings had commenced in the Cayman Islands, making it unlikely that the

liquidation proceeding was part of a calculated plan to gain control over related litigation (and

indeed, no such allegations were made).  The accelerated timeline in the present case is evidence

of that very calculation.  So too is the timing of the liquidation application—Aurelius and Alden

petitioned for appointment of the JPLs just <u>one day</u> after commencement of the OAS Chapter 15

Cases.  In fact, Aurelius and Alden made clear to the BVI Court that they filed this request in

response to the OAS Chapter 15 Petitions.  OASX 50 at 5 ("It is important we explain . . . the . . .

urgency [of commencing the BVI Provisional Liquidation].  This in a large part is because of the

Chapter 15 filing . . . . [Aurelius and Alden] are concerned because [Aurelius and Alden] are in

42

New York [the chapter 15] . . . may be an attempt to stop proceedings being brought in BVI.").[24]

The evidence indicates that Aurelius and Alden communicated with the JPLs prior to the

commencement of the OAS Chapter 15 Cases in preparation for a planned commencement of the

BVI Provisional Liquidation to destabilize an otherwise centralized reorganization in Brazil.

Indeed, emails between the JPLs and counsel to Aurelius reference they planned a "race to court"

and sought an early morning "emergency hearing" with the BVI Court "so that we [that is, the

JPLs and Aurelius] can get in first."  See OASX 25; Hr'g Tr. at 107:19-109:6, 114:14-115:12;

JPL Petition at ¶ 36.

89.    Finally, in Suntech, both the debtor and its liquidators supported the

reorganization proceedings in the Cayman Islands and the U.S., while the objecting party was a

former competitor and merely contingent claimholder of the debtor litigating against it in a

separate matter.  520 B.R. at 405.  The debtor and its noteholders chose the Cayman Islands as

the place most convenient to them for an orderly restructuring.  Id. at 418 ("The Debtor was

incorporated in the Cayman Islands and the Cayman Islands employed a predictable, flexible and

cost effective method for dealing with restructuring.").  The chapter 15 petition and the choice to

proceed in the Cayman Islands was part of a consensual settlement between the debtor and

creditors holding approximately half of the outstanding claims against it.  See id. at 405.  In

contrast, the JPLs' competing chapter 15 case is aimed at disrupting orderly proceedings and

enabling Aurelius and Alden to pursue litigation claims in several different countries, with the

result of providing them with an advantage over other creditors—all in contravention of the

stated purposes of chapter 15.  See 11 U.S.C. § 1501 ("The purpose of this chapter is . . . to

---

[24]    Notably, Mr. Tavares did not seek any relief outside of the territorial jurisdiction of the United States in the
OAS Chapter 15 Cases.  Nor could he, as this Court recognized on April 17, 2015.  OASX 33 at 56:17-18 ("THE
COURT: . . . any injunction would be limited to the territory of the United States.").

provide . . . fair and efficient administration of cross-border insolvencies that protects the interests of all creditors . . . .").  And the BVI Provisional Liquidation is opposed by the entire OAS Group, as well as by OAS Finance's own OAS Directors.

90.    In sum, the evidence shows that the actions of Aurelius and Alden and the JPLs constitute manipulation of COMI under chapter 15.  Accordingly, this Court will disregard those actions in its COMI analysis.

### C.    The Most Significant Activities of OAS Finance are Still Conducted in Brazil

91.    In any event, however, such actions were insufficient to shift OAS Finance's COMI away from Brazil.  The JPLs have a limited role of "preserve and protect" under BVI law and have never negotiated with creditors regarding the liquidation of OAS Finance.  Contrary to the JPLs' assertion that they have "divested the OAS Directors of all authority over OAS Finance," JPL Petition at ¶ 16, that "no individual or entity outside of the BVI . . . have [sic] any remaining authority to act on behalf of OAS Finance," JPL Petition at ¶ 46, and that they, the JPLs, "are OAS Finance," PX 62 at 7:3 (emphasis added), the OAS Directors retain meaningful power with respect to OAS Finance.  OASX 95 at ¶ 36.  They have, under BVI law, sufficient authority to challenge on behalf of OAS Finance—and indeed are challenging, from Brazil—the provisional appointment of the JPLs.

92.    As noted above, the Court finds that the expert evidence put on by Mr. Lowe is credible and persuasive and adopts the views he sets out in his declaration and at the Recognition Hearing.  Questions of foreign law are questions of law, not fact.  Fed. R. Civ. Proc. 44.1; see Fed. R. Bankr. Proc. 9017 (providing that Rule 44.1 applies to cases under the Bankruptcy Code).  The Court adopts the positions set out in the Lowe Declaration and the testimony proffered by Mr. Lowe live at the Recognition Hearing.  Under applicable BVI law,

44

the OAS Directors retain the authority to challenge the appointment of the JPLs and actions

taken by the JPLs since their appointment.  OASX 95 at ¶ 36.  They further hold residual

authority to prosecute the Brazilian Bankruptcy Proceedings in respect of OAS Finance, to

prosecute the Tavares Chapter 15 Petition, and to delegate the authority for both to Mr. Tavares

as they see fit.  Id. at ¶ 37.

    93.  In accordance with this long-established common law, the OAS Directors

continue to exercise authority to protect the interests of OAS Finance—and they do so from

Brazil, as they have always done.  The OAS Directors still reside and perform all duties related

to OAS Finance in Brazil, and have mounted a vigorous defense of OAS Finance and OAS

Investments Limited before the BVI Court.  They have filed the Objection to JPL Appointment

and the OAS Stay Application in the BVI, as detailed above.  See OASX 29, OASX 31, OASX

32.  These applications seek the termination of the BVI Provisional Liquidation, discharge of the

JPLs, and a stay on the powers of the JPLs.  All strategy decisions and all directions related to

the defense of OAS Finance in the BVI have emanated from Brazil.

    94.  Further, the OAS Directors, through their U.S. counsel, continue to

vigorously defend against actions of Aurelius and Alden in the U.S.  See OASX 14.  To the

contrary, when the Court asked one of the JPLs – Mr. McDonald – whether the JPLs had taken

any steps to defend OAS Finance's interest in such actions, Mr. McDonald admitted that the

JPLs had not done so.[25]  See Hr'g Tr. at 124:16-125:9.  For example, the JPLs did not appear or

---

[25]  THE COURT: Let me ask a question. Are you aware that OAS Finance is a defendant in two lawsuits in New York?
THE WITNESS: Sorry, as a defendant?
THE COURT: Yes. There are two lawsuits pending in New York.
THE WITNESS: What specific lawsuits are those? I'm aware they're a plaintiff.
THE COURT: You're not aware of lawsuits pending in New York?
THE WITNESS: I'm aware of lawsuits pending where they're a plaintiff I believe.
MR. FINESTONE: He's focused on Aurelius and you're focused on Finance but --

in any way participate at the May 4, 2015 confirmation hearing on Aurelius and Alden's

attachment motions in the State Actions.   Had the OAS Directors and their counsel not appeared

and protected the interests of OAS Finance in such actions, Aurelius and Alden would have

presumably obtained default judgments against OAS Finance, to the detriment of OAS Finance

and its other creditors.

95.     Additionally, significant restructuring negotiations are ongoing among

representatives of the OAS Group entities, including OAS Finance, and the Finance Noteholders,

including Aurelius and Alden.  In person meetings have been held, and restructuring term sheets

have been passed between the OAS Group and the Finance Noteholders.  The JPLs have not

been invited, by either the OAS Group or the Finance Noteholders, to participate in these

negotiations and, as of the July 1, 2015, the JPLs were unaware of such negotiations and had not

seen the term sheets (even though they are part of the public record).   These negotiations are not

happening in the BVI and the Finance Noteholders are engaging directly with the representatives

of the OAS Group regarding a reorganization of the OAS Group in the Brazilian Bankruptcy

Proceedings, not the BVI Provisional Liquidation.

96.     For all the reasons set forth above, the COMI of OAS Finance remains in

Brazil—not in the BVI.  Even if the Court were to consider the actions of the JPLs after their

appointment, the Court finds that the COMI of OAS Finance has not shifted away from Brazil.

The restructuring of OAS Finance in the Brazilian Bankruptcy Proceedings continues to be

managed and directed from the OAS Group and the OAS Directors from Brazil pursuant to their

---

THE COURT: I'm asking about OAS Finance.
THE WITNESS: Oh, okay. Yes. Yes.
THE COURT: Okay. Have you taken any steps to protect OAS Finance's interest as a party defendant in
those lawsuits?
THE WITNESS: Not at this stage, no.

See Hr'g Tr. at 124:16-125:9.

residual authority under BVI law.  Thus, the BVI Provisional Liquidation fails to meet the

criteria of a foreign main proceeding, and the JPL Petition is accordingly denied.

## **CONCLUSION**

97.    Accordingly, for all of the foregoing reasons and pursuant to section 1517

of the Bankruptcy Code, the Court denies recognition of the BVI Provisional Liquidation in

respect of OAS Finance as a foreign main proceeding.

47

Dated:    New York, New York
          July 27, 2015

WHITE & CASE LLP

By: */s/ John K. Cunningham*
    Gregory M. Starner
    Mark P. Franke
    1155 Avenue of the Americas
    New York, New York 10036-2787
    Telephone: (212) 819-8200
    Facsimile: (212) 354-8113

    – and –

    Southeast Financial Center
    200 South Biscayne Blvd., Suite 4900
    Miami, Florida 33131
    Telephone: (305) 371-2700
    Facsimile:  (305) 358-5744
    John K. Cunningham
    Richard S. Kebrdle (admitted *pro hac vice*)

    – and –

    QUINN EMANUEL
    URQUHART & SULLIVAN, LLP
    51 Madison Avenue, 22nd Floor
    New York, New York 10010
    Telephone: (212) 849-7000
    Facsimile: (212) 849-7100
    Susheel Kirpalani
    Michael Carlinsky
    Benjamin Finestone

    *Attorneys for OAS S.A.*

Americas 90664167